IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DEMOCRACY NORTH CAROLINA; NORTH CAROLINA BLACK ALLIANCE; LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA;, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:23-CV-878 |
| ALAN HIRSCH, in his official capacity as Chair of the State Board of Elections, et al., | ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate; and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives, | ) ) ) ) ) ) ) ) | |
| Defendant-Intervenors. | ) ) | |

## MEMORANDUM ORDER

Before the court is a motion to intervene as Defendants by the Republican National Committee and North Carolina Republican Party ("Party Movants") and Brenda M. Eldridge and Virginia Ann Wasserberg ("Individual Movants") (collectively "Movants"). (Doc. 25.) Plaintiffs Democracy North Carolina, North Carolina Black Alliance, and League of Women Voters of North Carolina have

responded in opposition, (Doc. 36), and Movants have replied (Doc. 41). Movants seek to intervene as a matter of right or, in the alternative, permissively. (Doc. 26 at 5, 14.) For the reasons set forth below, the motion to intervene will be denied.

## I.    BACKGROUND

This action was filed on October 17, 2023. (Doc. 1.) Plaintiffs seek injunctive relief against enforcement of section 10(a) of Senate Bill 747, which became effective as Session Law 2023-140 on October 10, 2023, and makes changes to North Carolina's same-day registration system. (Id. at 41-42.) Plaintiffs have sued the North Carolina State Board of Elections and its officers and members in their official capacity. Two cases also pending before the court concern provisions of the same statute, including section 10(a): Voto Latino et al. v. Alan Hirsch et al., 1:23-cv-861 (filed Oct. 10, 2023) (hereinafter "Voto Latino"), and Democratic National Committee et al. v. North Carolina State Board of Elections et al., 1:23-cv-862 (filed Oct. 10, 2023) (hereinafter "Democratic National Committee").

On October 25, 2023, Philip E. Berger, in his official capacity as President *Pro Tempore* of the North Carolina Senate, and Timothy K. Moore, in his official capacity as Speaker of the North Carolina House of Representatives ("Legislative Intervenors"), moved to intervene. (Doc. 19.) On November 15, 2023, the court granted the unopposed motion for the same reasons

2

set out in the court's order granting Senator Berger and Speaker Moore intervention as of right at docket entry 47 in <u>Democratic National Committee</u>.  (Minute entry, November 15, 2023.)

Movants also sought to intervene in <u>Democratic National Committee</u> and <u>Voto Latino</u>, where the plaintiffs seek similar relief against section 10(a) and several other provisions of S.B. 747. (Doc. 28 in <u>Voto Latino</u>; Doc. 35 in <u>Democratic National Committee</u>.) The plaintiffs in those cases took no position on the motions, which the court granted to allow for permissive intervention. (Doc. 47 in <u>Democratic National Committee</u>; Minute Entry, November 15, 2023, in <u>Voto Latino</u>.)

The North Carolina Republican Party, the Republican National Committee, Brenda M. Eldridge, and Virginia Ann Wasserberg moved to intervene in this case on October 26, 2023.  (Doc. 25.)  The Individual Movants are registered Republican voters who "typically vote for Republican candidates, have served as poll observers in the past, and intend to do so in the future." (Doc. 26 at 3.) Wasserberg is also a "county Republican Party chairperson who appoints site-specific and county at-large elections observers." (<u>Id.</u> at 3-4.)

## II. ANALYSIS

### A.  Intervention as of Right

On timely motion, "[u]nder Rule 24(a)(2), a district court must permit intervention as a matter of right if the movant can

3

demonstrate '(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation.'" Stuart v. Huff, 706 F.3d 345, 349 (4th Cir. 2013) (quoting Teague v. Bakker, 931 F.2d 259, 260–61 (4th Cir. 1991)). To overcome the "minimal challenge" of showing inadequate representation, an intervenor who has the "same ultimate objective" as the present party must demonstrate "adversity of interest, collusion, or nonfeasance" to undo a presumption in favor of adequacy. Virginia v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976). Where the proposed intervenors' interests do not "overla[p] fully" with the existing party, there is no presumption of adequacy. Berger v. N.C. State Conf. NAACP, 142 S. Ct. 2191, 2205 (2022).

First, Movants' motion is timely, as it was filed just nine days after the commencement of this action. See Alt v. U.S. E.P.A., 758 F.3d 588, 591 (4th Cir. 2014) ("In order to properly determine whether a motion to intervene in a civil action is sufficiently timely, a trial court in this Circuit is obliged to assess three factors: first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." (citation omitted)).

Second, Movants contend that they have a significant interest

4

in the litigation that would be impaired without their intervention. (Doc. 26 at 7.) Specifically, Movants point to their significant resource expenditures on conduct that the challenged statute regulates, and that the litigation could impact the electoral "competitive environment." (Id. at 7-10.) Plaintiffs do not appear to contest that the Party Movants have a significant interest in the litigation, (see Doc. 36 at 5 (focusing argument only on adequate representation)), but they do argue that, unlike the plaintiffs in Democratic National Committee, they "seek no relief related to poll observers" because they challenge only the section of the law that governs same-day voter registration, not the conduct of poll observers. (Id. at 4-5.) The court agrees with the Party Movants that they have a significant interest in the litigation. Cf. Thomas v. Andino, 335 F.R.D. 364, 370 (D.S.C. 2020) (observing political party's significant interest where party's candidates would be affected by change in election law). However, the Individual Movants do not, as their significant interest is cabined solely toward how the law affects poll observers. (Doc. 26 at 3-4.) On this basis, the Individual Movants' request to intervene as of right will be denied.

Third, Movants point to public opposition to the statute by the North Carolina Attorney General, whose office is responsible for defending the challenged statute, and argue that the State Board of Elections, as a neutral administrator, is unlikely to

represent Movants' political interests. (Id. at 11-12.) Movants also argue (1) the court should only consider whether "existing Defendants," not the Legislative Intervenors, adequately represent them, and (2) even if the court considers the Legislative Intervenors, that they inadequately represent their interests because they represent state interests and would be limited in their litigation strategy due to resource constraints. (Id. at 13.) Plaintiffs respond that the Party Movants share the same ultimate objectives as the Defendants and Legislative Intervenors. (Doc. 36 at 7.) They add that there is little risk that the Legislative Intervenors will prioritize certain provisions of S.B. 747 over others, as the suit focuses solely on section 10(a). (Id. at 7-8.)

Movants have not provided authority to show that the court cannot consider the Legislative Intervenors in analyzing the adequacy of representation. Movants quote Stuart, 706 F.3d at 349, which outlines the Fourth Circuit's adequacy of representation standard, as applying only to "existing defendants." (Doc. 26 at 13.) But the Stuart court was not deciding whether an existing defendant-intervenor could adequately represent a proposed intervenor. Stuart, 706 F.3d at 348-49. There is nothing in Stuart that suggests that district courts should be prevented from considering whether existing intervenors could adequately represent the interests of proposed intervenors.

Setting this issue aside, there is little doubt that, at a minimum, the Legislative Intervenors have the same "ultimate objective" as the Party Movants. (Compare Doc. 32 at 2 (demonstrating Legislative Intervenors' unequivocal support for challenged statute), with Doc. 26 at 2-3 (same for Movants)); Democracy N.C. v. N.C. State Board of Elections, 1:20-cv-457, 2020 WL 6591397, at *1 (June 24, 2020) (finding adequate representation where Senator Berger and Speaker Moore, in their respective official capacities, had already intervened and RNC and NCRP (among others) sought to intervene). Moreover, Movants contend that the Legislative Intervenors would devote "more focus" on "some provisions of S.B. 747 than others." (Doc. 26 at 13.) While this argument may have some merit in Voto Latino and Democratic National Committee, where many provisions are challenged, Plaintiffs here challenge only section 10(a).[1] Finally, the court is skeptical that the Legislative Intervenors, who have intervened in two other related cases concerning S.B. 747 and led their respective chambers in passing the statute through the General Assembly, will not zealously pursue an adequate defense of section 10(a). Democracy N.C., 2020 WL 6591397, at *1 (finding representation adequate where

---

[1] In reply, Movants list the instances in Plaintiffs' complaint that reference other provisions of S.B. 747, or the statute as a whole, as evidence that Plaintiffs' suit makes "sweeping allegations." (Doc. 41 at 3-4.) While these portions of the complaint contextualize Plaintiffs' allegations, the prayer for relief demonstrates that Plaintiffs only seek relief as to section 10(a). (Doc. 1 at 41-42.)

7

the legislative leaders that "enacted the rules in the first instance" had already intervened). Observing no "adversity of interest, collusion, or nonfeasance" adversely affecting Movants, the court thus finds that the Party Movants' interest is adequately protected and intervention as of right should be denied.[2] Westinghouse Elec. Corp., 542 F.2d at 216.

## B. Permissive Intervention

Pursuant to Rule 24(b), the court "may permit" anyone who "has a claim or defense that shares with the main action a common question of law or fact" to intervene on a timely motion. Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Thus, where a movant seeks permissive intervention, the movant must satisfy three requirements: (1) the motion must be timely; (2) the claims must have a question of law or fact in common with the main action; and (3) intervention must not result in undue delay or prejudice to the existing parties. See Wright v. Krispy Kreme Doughnuts, Inc., 231 F.R.D. 475, 479 (M.D.N.C. 2005); Solo Cup Operating Corp. v. GGCV Energy LLC, Civil No. 12-3194, 2013 WL 2151503, at *2 (D. Md. May 15, 2013); Shanghai

---

[2] Even assuming Individual Movants have a protectable interest in the litigation, the reasoning precluding intervention as of right to Party Movants applies equally to Individual Movants, warranting denial of Individual Movants' request to intervene as of right.

_Meihao Elec., Inc. v. Leviton Mfg. Co._, 223 F.R.D. 386, 387 (D. Md. 2004). Trial courts are directed to construe Rule 24 liberally to allow intervention where appropriate. _Feller v. Brock_, 802 F.2d 722, 729 (4th Cir. 1986) (noting that "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process" (citations and internal quotation marks omitted)); _Capacchione v. Charlotte-Mecklenburg Bd. of Educ._, 179 F.R.D. 505, 507 (W.D.N.C. 1998) (same).

Movants argue in the alternative that the court should grant permissive intervention under Rule 24(b). Movants contend that their defense shares common questions of fact and law. (Doc. 26 at 14.) Movants further claim that intervention would achieve "parity" between the parties. (_Id._ at 13-14.) Plaintiffs respond that permitting intervention would result in "undue delay, inefficiencies, and prejudice to the Plaintiffs." (Doc. 36 at 12.) Moreover, Plaintiffs contend that Movants conflate their lawsuit with _Democratic National Committee_, where the Democratic National Committee and North Carolina Democratic Party are plaintiffs, and that invoking the need for parity would be misplaced here.

By all appearances, the Party Movants are correct that they would raise common questions of fact and law, as they seek to mount what appears to be a similar defense as that of the existing

9

Defendants and/or Legislative Intervenors. However, the Individual Movants, whose defenses to the provisions governing poll observers, are not common to the issues of fact and law in this case, which concerns same-day registration.

Even if all Movants would present defenses that would raise common questions of fact and law, the court nevertheless finds that allowing Movants to intervene could result in undue delay and prejudice to the existing parties. As noted above, the Movants' viewpoints are adequately represented in this lawsuit at least by the Legislative Intervenors if not also by the Defendants. Moreover, section 10(a) is already challenged in <u>Voto Latino</u> and <u>Democratic National Committee</u>, both pending before the undersigned, where Movants have already intervened and will presumably voice their positions on section 10(a). Movants have not shown that this lawsuit presents a unique legal claim that they could not already address as an intervenor in the related actions, or that the Legislative Intervenors could not adequately represent their interests in this suit. In fact, Movants' motion appears to be largely a carbon-copy of its motion in <u>Voto Latino</u> and <u>Democratic National Committee</u> and is not tailored to the specific allegations of this case. Furthermore, Movants have not demonstrated that this case presents a need to weigh parity between the parties, as Movants do not contend that Plaintiffs are equal

10

counterparts as the opposing political party.[3] (Doc. 26 at 14-15 (focusing parity argument on presence of the Democratic National Committee and North Carolina Democratic Party as plaintiffs).) Finally, while Movants have intervened in <u>Voto Latino</u> and <u>Democratic National Committee</u>, the existing parties here appear to be on a different timeline than in those cases. Whereas the court has scheduled briefing on motions for a preliminary injunction and resultingly delayed responsive pleadings in those cases, the parties here have a set an earlier schedule for responsive pleadings and have scheduled a pre-trial conference. (Doc. 40.) The court thus finds that adding Movants will produce cumulative arguments "without a corresponding benefit to existing litigants, the courts, or the process," <u>Stuart</u>, 706 F.3d at 355, and has the potential of creating "inefficiencies and undue delay of the resolution of these matters." <u>Democracy N.C.</u>, 2020 WL 6591397, at *3.

## III. CONCLUSION

For the reasons set forth above,

IT IS THEREFORE ORDERED that the Movants' motion to intervene

---

[3] Movants contend that "political parties are virtually always allowed to intervene" in election cases and cite a number of cases in support. (<u>See</u> Doc. 26 at 4, 4 n.3.) Nearly all of these cases involve either (1) a political party affiliate or party-aligned political action committee on the opposing side or (2) legislative intervenors on the same side. The court found these cases to be instructive when it granted permissive intervention to these same Movants in <u>Democratic National Committee</u> because Democratic Party affiliates are on the opposing side, but here such cases are distinguishable.

(Doc. 25) is DENIED.


                                          /s/   Thomas D. Schroeder
                                        United States District Judge
December 4, 2023