| | |
|---|---|
| DEMOCRACY NORTH CAROLINA; NORTH CAROLINA BLACK ALLIANCE; LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA,<br><br>*Plaintiffs,*<br><br>vs.<br><br>ALAN HIRSCH, in his official capacity as CHAIR OF THE STATE BOARD OF ELECTIONS; JEFF CARMON III, in his official capacity as SECRETARY OF THE STATE BOARD OF ELECTIONS; STACY EGGERS IV, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; KEVIN LEWIS, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; SIOBHAN O'DUFFY MILLEN, in her official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as EXECUTIVE DIRECTOR OF THE STATE BOARD OF ELECTIONS; NORTH CAROLINA STATE BOARD OF ELECTIONS,<br><br>*Defendants.* | **PLAINTIFFS' OPPOSED MOTION TO EXTEND DEADLINES** |

Plaintiffs Democracy North Carolina, North Carolina Black Alliance, and League of Women Voters of North Carolina (together, "Plaintiffs") respectfully request an extension of the current case schedule pursuant to Local Rule 6.1(a) and Local Rule 26.1(d). This extension is necessitated by several discovery issues that make adherence to current deadlines—including most notably the imminent May 1, 2024 expert deadline for opening reports—both impracticable and prejudicial to Plaintiffs. These timing issues arise despite Plaintiffs' diligent pursuit of these materials from the moment discovery opened in this case several months ago.

Three outstanding categories of discovery motivate the instant request.

First is outstanding voter data from the State Board of Elections. The parties all acknowledged in the Rule 26 Joint Report that certain voter data would be critical for examining the impact of the challenged provisions of Senate Bill 747 and, as a result, the parties built the discovery schedule around the anticipated production of that data from the State Board. Dkt. 43 at 3-5. Unfortunately, the production of the requested dataset has been delayed repeatedly, and Plaintiffs just received the requested data on April 19, less than two weeks before the opening expert report deadline. This has left Plaintiffs' experts with insufficient time to prepare their opening reports.

Second is the production of documents and deposition testimony from non-parties alleged to have played a role in the drafting and passage of Senate Bill 747. These non-parties previously made statements expressing animus toward young voters' democratic participation. Plaintiffs sought these materials by third-party subpoena in the opening month of discovery and then moved to compel compliance (or, in the alternative, to

approve alternative methods of service) on January 31, 2024. Dkt. 54. That motion remains under consideration with the Court and a disposition of that issue is necessary for Plaintiffs to obtain relevant documentary evidence to proceed with the depositions of critical witnesses in this matter.

Third is discovery from two non-party legislative sponsors of Senate Bill 747. It has been over 3 weeks since Plaintiffs requested available deposition dates for non-parties Senator Warren Daniel and Representative Grey Mills, and Plaintiffs continue to wait for a response. These individuals both agreed to waive legislative privilege and sit for depositions in exchange for limiting the scope of written and testimonial discovery as to them and other non-party legislators that Plaintiffs had otherwise planned to pursue. Plaintiffs have offered numerous scheduling accommodations to account for the demands of the recently-opened legislative short session. But, as further explained below, counsel for Legislative Defendants, who are representing the non-party legislators, have rejected each of those proposals.

Taken together, each of these issues is an impediment to Plaintiffs developing evidence in support of their affirmative case and each justifies an extension of the broader discovery period and time for trial. Plaintiffs have conferred with Defendants extensively on this request for an extension, proposing three different schedules catered to the specific concerns identified through the meet and confer process.

As of the time of this filing, however, the State Board Defendants are still considering the proposals and will communicate their position in a responsive brief. The

2

Case 1:23-cv-00878-TDS-JEP    Document 81    Filed 04/30/24    Page 3 of 18

Legislative Defendants oppose the Motion outright. Plaintiffs therefore seek relief from the Court through an extension of the discovery and trial schedule.

## STATEMENT OF FACTS

### I. Procedural Background and the Consent Discovery Extension

Plaintiffs filed their Complaint on October 17, 2023, seeking a declaratory judgment finding that Senate Bill 747 violates the First, Fourteenth and Twenty-Sixth Amendments, and a permanent injunction barring Defendants from effectuating certain provisions of S.B. 747. Dkt. 1. Specifically, Plaintiffs challenged S.B. 747's modification to the Same-Day Voter Registration process, which requires election officials to deny voter registrations and cancel ballots if the first notice used for mail verification pursuant to G.S. 163-82.7(c) is returned to a county board of elections as undeliverable before the close of business on the business day before canvass.

Legislative Defendants moved to intervene in the matter on October 25, 2023, Dkt. 19, and the motion was granted. Minute Entry 11/15/2023. On November 20, 2023, Plaintiffs submitted a Consent Motion for an Expedited Scheduling Conference, memorializing an agreement of the parties "to allow a reasonable amount of discovery to commence immediately" so as to aid in the swift prosecution of the case. Dkt. 37 at 3. On November 21, the Court granted the Motion and set an Initial Pretrial Conference for December 15, 2023. Text Order 11/21/23.

Plaintiffs served written discovery on Legislative Defendants and State Board Defendants promptly thereafter on November 30, 2023. The RFPs to the State Board included specific requests seeking voter data needed for Plaintiffs' expert analysis and

reports. (Loperfido Decl. ¶ 4, Ex. A at 10 (RFPs 12-15).) Plaintiffs also issued non-party subpoenas duces tecum on December 15 and 20, 2023, on two of the sponsors of Senate Bill 747—non-parties Sen. Daniel and Rep. Mills—and several other third-parties, including Cleta Mitchell and North Carolina Election Integrity Team (NCEIT), who, as alleged in the Complaint, Dkt. 1 at ¶¶ 39−41, were involved in the drafting and passage of S.B. 747 and made disparaging comments toward young voters' democratic participation. On December 22, 2023, Legislative Defendants served written discovery on the State Board, which overlapped substantially with many of the voter data requests made by Plaintiffs. (Loperfido Decl. ¶ 5, Ex. B.)

On December 12, 2023, the Court approved the parties' Joint Rule 26(f) Report. Dkt. 44 at 1. The parties' Joint Rule 26(f) Report contemplated discovery into the impacts of the challenged provisions of S.B. 747, including how many voters would be unable to vote under its provisions as compared to the previous same-day registration scheme. *See* Dkt. 43 at 3-4 (Plaintiffs and Legislative Defendants both seeking discovery on the impact of S.B. 747's same-day registration provisions). This discovery involves close examination of various North Carolina voting records which are held by the State Board Defendants. The parties' initial agreement anticipated making this data available to both Plaintiffs and Legislative Defendants at the end of January 2024. Had production been made in January, initial expert reports could have been prepared and served by March 15, 2024, the original expert deadline. Dkt. 43, 44. Due to unforeseen constraints on State Board staff, the need to successfully run and administer North Carolina's statewide primary election, and the work required to generate and furnish the data, the State Board advised Plaintiffs that that

4

they were unable to adhere to the initial deadline. Dkt. 62 at 2. The impact of that delay on the case schedule is discussed in more detail below.

On January 31, 2024, Plaintiffs filed a Motion to Compel Discovery and Authorizing Alternative Service of Subpoenas for Non-parties Cleta Mitchell and NCEIT, Dkt. 54. By way of that motion, Plaintiffs detailed their extensive attempts to serve Mitchell and NCEIT's registered agent in person and via USPS Certified Mail, through several process servers, and through the Moore County Sheriff beginning as early as December 15, 2023. *See generally,* Dkt. 55; Dkts. 56 to 56-16. Non-parties Mitchell and NCEIT opposed the motion on February 19, 2024, Dkt. 58, and Plaintiffs replied on February 26, 2024, Dkt. 61. That motion remains under consideration with the Court.

On March 14, 2024, with these developments in mind, Plaintiffs filed a Consent Motion for Extension of Time to Complete Discovery, citing the aforementioned data delays from the State Board of Elections as justification for extending the parties' original case schedule, as well as the preliminary injunction that was granted in two related cases, *Voto Latino, et al. v. Hirsch, et al.*, No. 1:23-cv-00861, and *Democratic National Committee, et al. v. North Carolina State Board of Elections, et al.*, No. 1:23-cv-862.[1]

On April 2, 2024, the Court denied Defendants' motions to dismiss, Dkt. 63, noting, most relevant to the instant Motion, that "Plaintiffs third claim raises novel issues in this circuit," and that the "court would benefit from a more developed factual record and

---

[1] Pursuant to the Court's Preliminary Injunction, the State Board Defendants issued Numbered Memo 2023-05 (updated Jan. 29, 2024), "establishing a process that provides a notice and opportunity to cure for same-day registrants" under S.B. 747. Dkt. 53 at 2; *see also* Dkt. 53-1 (furnishing a copy of Numbered Memo 2023-05).

5

briefing" on that issue. *Id.* at 25-26. The consequence of that denial was that all three of Plaintiffs' claims were permitted to proceed towards trial and discovery would continue to be allowed as to each.

Two days later, on April 4, the Court granted the Consent Motion for Extension of Time for good cause shown, which moved the trial date to the September 2024 Civil Trial Calendar, and modified the Parties' Joint Rule 26(f) Report, as follows:

> a. The deadline for opening expert reports is May 1, 2024.
> b. The deadline for rebuttal expert reports is May 31, 2024.
> c. The deadline for reply to rebuttal expert reports is June 14, 2024.
> d. Fact depositions are to take place primarily in April and May 2024.
> e. The close of all discovery (fact and expert) is July 3, 2024.
> f. Summary judgment opening briefs shall be due 21 days from the close of discovery (July 24, 2024).
> g. Summary judgment response briefs, if any, shall be due August 14, 2024.
> h. Summary judgment reply briefs, if any, shall be due August 23, 2024.

Dkt. 69 at 2. Bench Trial is currently set for September 3, 2024. Dkt. 70. As described below, however, the additional delays make the current schedule impossible to meet.

II. *Correspondence Relating to Voter Data and Legislator Discovery*[2]

Though the parties believed that the requested discovery extension would give them appropriate time to consider and analyze the voter data produced in March 2024 before the upcoming May 2024 expert deadlines, data production issues began eating into their extended expert discovery period. On March 11, the very first business day after receiving

---

[2] Because the factual background pertaining to the non-party discovery directed to Cleta Mitchell and NCEIT is addressed at length in the discovery motion pending before this Court, Dkt. 56 et seq., Plaintiffs do not address it again at length here. But in brief, Plaintiffs are unable to schedule depositions and receive productions they may be entitled to from those non-parties at this time and that information is highly relevant to the question of legislative intent as it relates to Plaintiffs' age discrimination claim.

6

Case 1:23-cv-00878-TDS-JEP  Document 81  Filed 04/30/24  Page 7 of 18

the data production, Plaintiffs informed the State Board that its production lacked documentation defining the various data fields and variables (often referred to as a "data dictionary"). (Loperfido Decl. ¶ 6, Ex. C at 9-10.) Legislative Defendants "piggybacked" the concern by email two days later, on March 13. (*Id*. at 8-9.) That same evening, the State Board provided a partial response to the inquiry. (*Id*. at 6-7.) With that additional information, Plaintiffs were able to analyze the data they had in hand and discover a significant limitation on what had been produced—namely, that the State Board had failed to incorporate historical addresses into the data export when performing their query. Plaintiffs shared this concern with the State Board by email on March 26 (*id*. at 5-6), and the parties sent a series of emails back and forth over the next two days before conferring by telephone on April 1 to finalize a way forward that would not require Court intervention. (*Id*. at 1-4[3]; *see also* Loperfido Decl. ¶ 7, Ex. D at 8.) Though this conferral process, Plaintiffs were finally able to obtain the necessary data supplement, but not until April 19, 2024; it took the State Board 11 days to process the request and then an additional 7 days to correct an error in their processing and re-run the data export. (*Id.* at ¶ 7, Ex. D at 1-6.) This has left Plaintiffs' experts with 10 days, dramatically less time than originally planned to prepare their expert reports to meet the current May 1, 2024, deadline.

Plaintiffs began pursuing discovery of non-party legislator documents and depositions in November of 2023, first asking counsel for Legislative Defendants inquiring

---

[3] As is explained in detail in those emails, the "historical address data" was necessary to "test how S.B. 747's same-day registration scheme would have played out in recent elections" given that "preliminary examinations indicate that many voters who fail mail verification later successfully register, many of them at the same address where they initially failed." (*Id*. at 1-2.)

7

whether they would be serving as counsel for non-party legislators and able to accept service of a subpoena. (Loperfido Decl. ¶ 8, Ex. E at 6.) On December 5, 2023, Plaintiffs identified 8 non-party legislators by name whom they were considering pursuing. (*Id*. at 4.) On December 12, 2023, counsel for Legislative Defendants responded that "Representative Mills and Senator Daniel are prepared to waive their legislative privilege consistent with the parameters set forth in Judge Schroeder's opinion on legislative privilege in *NC NAACP v. McCrory*, 2015 WL 12683885 (M.D.N.C. Feb. 2, 2015)" but that "the remaining legislators do not agree to waive their privilege." (*Id*. at 3.) Plaintiffs responded December 18, 2023 with an agreement conditioned on "Senator Daniels and Representative Mills [being] willing to testify" while reserving certain other rights. (*Id*. at 2-3.) Counsel for Legislative Defendants confirmed that understanding by email December 19, 2023 and Plaintiffs issued subpoenas duces tecum the next day. (*Id*. at 1-2.)

Plaintiffs received document productions from Sen. Daniels and Rep. Mills on January 18, 2024, February 20, 2024, and a final production on April 11, 2024. A privilege log followed on April 24, 2024. On April 8, 2024, Plaintiffs emailed counsel requesting dates of availability for the two legislators in "the last week of April into the first half of May." (Loperfido Decl. ¶ 9, Ex. F at 1-2.) Plaintiffs sought those dates because of the agreement in the modified schedule that fact depositions would take place "primarily in April and May 2024" and because Plaintiffs correctly anticipated that the outstanding document productions for these witnesses would be resolved in advance of those dates. To date, however, no deposition dates have been provided for these witnesses.

8

### III. Correspondence Relating to the Current Extension Request

Plaintiffs contacted Defendants via email on April 24, 2024, to discuss a "further adjustment to our current schedule" given the "timing of the most recent data productions [on April 19]" and "opening expert reports due next week [on May 1]." (Loperfido Decl. ¶ 10, Ex. G at 13.) Legislative Defendants responded that "conferring on the data questions you raised is a good idea" (*id*. at 12), and the parties met via Zoom conference on April 25 at 3:30 PM to do so. During the call, all parties represented that they would consider adjustments to the current discovery schedule, with Legislative Defendants stating that they were having similar issues with the data from the State Board and saw the benefit of more time for expert reports. Plaintiffs agreed to circulate a scheduling proposal following the meeting, which they did. (*Id*. at 9-10.)

On April 26, 2024, the parties exchanged emails discussing the various scheduling options. (*Id*. at 5-9.) It was at this juncture that Legislative Defendants shifted from considering a modified schedule, to insisting upon a temporary stay of all proceedings. All told, from April 26 to April 29 Plaintiffs offered three different scheduling proposals to address each of the specific concerns Legislative Defendants identified, including allowing them sufficient time to perform certain discovery actions and limiting or delaying litigation expense until after the legislative session. (*Id*. at 2-9.) The first proposal was for a modest extension to the expert discovery deadlines to make Plaintiffs whole on the original allotment of time that the parties had agreed for opening and responsive reports (approximately 30 days), and made corresponding changes in the schedule to account for known conflicts raised by the defendants, including a federal voter ID trial beginning in

9

May, the General Assembly Legislative Short Session, and two federal redistricting trials scheduled for the end of 2024 and early 2025. (*Id.* at 9-10; *see also id.* at 5-8 (explaining the rationale for the first proposed schedule).)

Plaintiffs' second proposal included the same extension for expert discovery, but compressed the back end of the schedule in response to Legislative Defendants' contention that if Plaintiffs were no longer pursuing a pre-election trial, the matter should be stayed. (*Id.* at 6.) Plaintiffs oppose a stay and explained that the second proposal could only work if defendants made a firm commitment to meet certain outstanding discovery obligations. It became clear from correspondence that the second proposal was unrealistic. (*Id*. at 6).

The parties met again via Zoom on April 29 to discuss Plaintiffs' proposed schedules and Legislative Defendants' intent to move for a stay. Following that conferral, Plaintiffs offered a third proposal. (*Id*. at 4.) Plaintiffs proposed to push out a significant portion of the more time-intensive and costly litigation activities (i.e., experts, document review, and trial) to the Spring or Summer of 2025, but Plaintiffs would continue pursuing non-party discovery relating to the intent of the legislature by way of its pending Motion to Compel and the depositions of Sen. Daniel and Rep. Mills. Plaintiffs proposed to depose those legislators at a mutually agreeable time following the short session. (*Id*.)

As the email correspondence demonstrates, Legislative Defendants rejected each of these proposals for reasons that were internally inconsistent and shifted based on the proposal being considered, vacillating between insisting upon an immediate disposition on the merits and requiring a delay that will save resources. It appears that Legislative Defendants are unwilling to accept any of the proposed schedules and will insist upon a

10

complete stay of the case.[4] While Legislative Defendants continued to point to the possibility of impending legislative action as a basis for staying the case, they were unwilling to disclose any details on what form that legislative action might take or when it would occur.

With Legislative Defendants unwilling to negotiate a modified schedule, Plaintiffs brought this instant Motion.

## QUESTION PRESENTED

Does good cause exist to modify the case schedule and extend discovery deadlines, motions timing, and the setting of trial where Plaintiffs have diligently pursued discovery, where unforeseen data issues outside of Plaintiffs' control have caused delays in expert analysis, where discovery motions remain pending with the Court that require disposition before the Plaintiffs can conduct depositions and receive all discovery they are entitled to under law, and where Plaintiffs have made extensive efforts to meet and confer with Defendants to reach an agreement on a revised case schedule?

## ARGUMENT

Federal Rule of Civil Procedure 6(b) provides that a court "may, for good cause, extend the time" for a specific act "if a request is made[] before the original time or its extension expires." Local Rule 6.1(a) requires compliance with Federal Rule 6(b) and for

---

[4] On the day this Motion was due, Legislative Defendants finally offered a concession to address Plaintiffs' concern around expert reports, stating a willingness to agree to "an informal 2 week extension on the expert reports as a matter of professional courtesy." (*Id*. at 1.) This proposal, however, did not address Plaintiffs' broader discovery and schedule concerns nor did it address any of the capacity or resource concerns raised by either set of defendants in the prior week of conferrals.

11

Plaintiffs to "show prior consultation with opposing counsel and the views of opposing counsel." Local Rule 26.1(d) requires that any motion for an extension of the discovery period be made or presented prior to the expiration of the time within which discovery is required to be completed, must set forth good cause justifying the additional time, and will be granted or approved only upon a showing that the parties have diligently pursued discovery.

Good cause exists for the modification and extension of discovery and other deadlines when the party seeking an extension could not reasonably meet scheduled deadlines despite their diligence pursuing discovery. *Kinetic Concepts, Inc. v. Convatec, Inc.*, 2010 U.S. Dist. LEXIS 32940, at *8-18 (M.D.N.C. Apr. 2, 2010) (finding good cause where the party requesting extension pursued discovery but "delays as to fact discovery likely caused a cascading effect on the completion of expert discovery"). *See also Newton v. Locklear*, 2024 U.S. Dist. LEXIS 58373, at *14-15 (M.D.N.C. Feb. 23, 2024); *N. Carolina Mut. Life Ins. Co. v. Stamford Brook Capital, LLC*, 2020 U.S. Dist. LEXIS 263594, at *7 (M.D.N.C. Dec. 16, 2020); Fed. R. Civ. P. 16 advisory committee's note on 1983 amendments, subdivision (b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

There is ample cause to grant Plaintiffs' requested extension here. Plaintiffs have continued to diligently pursue discovery in this matter, and the need for extension here has arisen from discovery issues beyond control of Plaintiffs. The bulk of outstanding written and documentary discovery that Plaintiffs require are responsive to discovery requests

served at the very start of discovery and which the record shows Plaintiffs sought persistently and professionally.[5] Plaintiffs promptly raised any concerns about data productions with the State Board and worked diligently and in good faith to resolve those issues. The delays are not of Plaintiffs' making and Plaintiffs should not be hindered from developing the evidentiary record because of these delays, nor should they be required to create and produce a rushed expert report that will be subject to vigorous scrutiny by defendants. That is especially the case here where Legislative Defendants have benefited from Plaintiffs' pursuit of this data and related clarification and will not be forced, like Plaintiffs, to produce rushed rebuttal reports in a limited discovery window. Furthermore, in addition to accounting for these unforeseen delays in completing discovery, Plaintiffs' proposed modification of the case schedule and extension of the discovery period would allow the Parties to adduce evidence relating to the 2024 general election, providing the Court with additional evidence relevant to its consideration of this matter in the form of supplemental expert reports following that election.

Plaintiffs also acted promptly on the third-party discovery sought from Cleta Mitchell and NCEIT months ago, with subpoenas first issued in December 2023 and a motion to compel filed in January 2024. *See* Dkts. 55 to 56. In that motion, Plaintiffs describe in detail their extensive efforts to pursue that third-party discovery, *see id.*, but

---

[5] The record is replete with timely correspondence from Plaintiffs seeking discovery status updates and other clarifications from Defendants while also being respectful of other demands on defense counsel and their clients. *See, e.g.*, Loperfido Decl. ¶¶ 6-7, 9-10, Ex. C at 5-6, 9-10, 22-23, 25-26; Ex. D at 2, 6-7; Ex. F at 1-2, 6, 19-23, Ex. G at 2, 5-8.

Plaintiffs cannot take further action on that third-party discovery at this time as they are awaiting a disposition by the Court.

Finally, Plaintiffs worked diligently early in the case to negotiate a deal for documents and testimony from Senator Daniel and Rep. Mills and now simply request a mutually agreeable date so that they can proceed developing this critical intent evidence.

The extension requested below presents no prejudice to defendants. No defendant has identified a reason why the proposed extension would cause them harm. As to the State Board Defendants, any of the extensions would accommodate a two-week trial set to begin May 6 in *North Carolina NAACP, et al. v. Cooper, et al.*, 18-cv-01034 (M.D.N.C.). As to the Legislative Defendants, the modifications would accommodate the current legislative session and federal redistricting trials scheduled for late 2024 and early 2025. Plaintiffs understand that Legislative Defendants do not oppose this Motion based upon a belief that an extension of current deadlines would prejudice them. Instead, Legislative Defendants only oppose this motion because they intend to seek a permanent stay of all deadlines, which Plaintiffs would oppose as unsupported and as unduly prejudicial to their claims.

## **CONCLUSION**

In light of the above, and for good cause shown, Plaintiffs respectfully request that the Court modify the deadlines laid out in the ordered Joint 26(f) Report as follows:

a. The deadline for opening expert reports is May 31, 2024.

b. The deadline for rebuttal expert reports is July 1, 2024.

c. The deadline for reply to rebuttal expert reports is July 22, 2024.

d. Fact depositions are to take place primarily in May to July of 2024.

e. The close of all discovery (fact and expert), except for supplemental expert reports concerning the 2024 general election as provided below, is August 30, 2024.

f. Expert supplemental reports concerning the 2024 general election shall be due December 23, 2024.

g. Rebuttal reports to the expert supplemental reports concerning the 2024 general election shall be due January 17, 2025.

h. Summary judgment opening briefs shall be due January 24, 2025.

i. Summary judgment response briefs, if any, shall be due February 14, 2025.

j. Summary judgment reply briefs, if any, shall be due February 28, 2025.

k. Trial is requested for as soon as practicable after March 17, 2025.

Dated: April 30, 2024          Respectfully Submitted,

*/s/ Jeffrey Loperfido*

| | |
|---|---|
| Michael Dockterman<br>Maria O'Keeffe<br>Geneva C. Ramirez<br>Jamie Witte<br>STEPTOE & JOHNSON LLP<br>227 West Monroe Street, Suite 4700<br>Chicago, IL 60606<br>Telephone: (312) 577-1300<br>mdockterman@steptoe.com<br>mokeeffe@steptoe.com<br>gramirez@steptoe.com | Jeffrey Loperfido (State Bar #52939)<br>Christopher Shenton (State Bar #60442)<br>Hilary H. Klein (State Bar #53711)<br>Mitchell D. Brown (State Bar #56122)<br>Lily A. Talerman (State Bar #61131)<br>SOUTHERN COALITION FOR SOCIAL JUSTICE<br>5517 Durham-Chapel Hill Blvd.<br>Durham, NC 27707<br>Telephone: 919-794-4213<br>Facsimile: 919-908-1525<br>jeffloperfido@scsj.org<br>chrisshenton@scsj.org<br>hilaryhklein@scsj.org<br>mitchellbrown@scsj.org<br>lily@scsj.org<br><br>*Counsel for Plaintiffs* |

15

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d), I hereby certify that this brief contains 4167 words as counted by the word count feature of Microsoft Word.

*/s/ Jeffrey Loperfido*
Jeffrey Loperfido (State Bar #52939)

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all parties of record.

*/s/Jeffrey Loperfido*
Jeffrey Loperfido (State Bar #52939)