IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DEMOCRACY NORTH CAROLINA *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:23-cv-878-TDS-JEP |
| ALAN HIRSCH *et al.*, | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**NON-PARTY CLETA MITCHELL'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

Non-Party Cleta Mitchell hereby submits this brief in support of her motion for protective order filed September 24, 2024 (D.E. #96).

**NATURE OF MATTER BEFORE COURT**

Plaintiffs' lawsuit challenges one provision of a single piece of legislation, SB 747, which was recently enacted by the North Carolina General Assembly. The provision at issue concerns so-called "same day [voter] registration." (*See* D.E. #1: Pls.' Compl.) Cleta Mitchell is a prominent attorney and national election integrity advocate, who had an exceptionally limited role with respect to SB 747, namely meeting with a small group of state senators *once* to discuss a litany of *potential* changes to state election law. (*See* Ex. A: Decl. of Cleta Mitchell ("Mitchell Decl.") ¶¶ 2, 13-15). Nevertheless, plaintiffs seek to depose Ms. Mitchell about *any* of her advocacy work engaged in *anywhere* in the

Case 1:23-cv-00878-TDS-JEP   Document 97   Filed 09/24/24   Page 1 of 30

United States over a period of decades. While Ms. Mitchell has agreed to be deposed in this matter, the breadth of examination sought by plaintiffs exceeds that allowed by the Federal Rules of Civil Procedure for a non-party, like Ms. Mitchell, especially considering the First Amendment concerns raised by the wide-ranging inquisition sought by her ideological opponents. Therefore, she asks the Court for a protective order reasonably limiting the areas of examination in her deposition (or, alternatively, reasonably limiting the dissemination and use of any such testimony) and an award of reasonable fees related to bringing this motion.[1]

## STATEMENT OF FACTS

### Ms. Mitchell is a Prominent Election Law Attorney and Election Integrity Advocate

Cleta Mitchell is a leading expert in election law. Until recently, she was a partner and political law attorney in the Washington, D.C. office of Foley & Lardner LLP, where she was a member of the firm's Political Law Practice. (Mitchell Decl. ¶ 3). She has more than 40 years of experience in law, politics, and public policy, having practiced before the FEC, the ethics committees of the U.S. House and Senate, and similar state and local enforcement bodies and

_____

[1] The deposition is currently set for September 25, 2024. Undersigned counsel recommended that the deposition be rescheduled once this Court has ruled on the motion for protective order (or that the deposition be bifurcated, with the issues in contention to be taken up after a ruling from the Court), but plaintiffs' counsel rejected both of these proposals for an orderly disposition.

agencies. (*Id.* ¶ 4). She has also litigated cases in state and federal courts nationwide. (*Id.*)

Ms. Mitchell possesses particular expertise in federal lobbying law, has taught dozens of seminars on the subject since its passage, and authored *The Lobbying Compliance Handbook*, published by Columbia Books, Inc. (*Id.* ¶ 5). She has testified before Congress on numerous occasions related to election law, campaign finance and lobbying, and ethics laws, and is frequently asked to be a speaker and guest commentator on political law. (*Id.* ¶ 6).

Ms. Mitchell has served on the advisory council to the American Bar Association's Standing Committee on Election Law, as a member of the American Law Institute's Election Law Project entitled, "Principles of Election Law: Dispute Resolution," and as a Fellow at Harvard's Institute of Politics. (*Id.* ¶ 7). Additionally, she was a member of the Oklahoma House of Representatives from 1976 to 1984, where she chaired the House Appropriations and Budget Committee (the first woman to hold that position) and served on the executive committee of the National Conference of State Legislatures. (*Id.* ¶ 8).

Ms. Mitchell is also the Founder of the Election Integrity Network and Chairman of the Public Interest Legal Foundation, a 501(c)(3) public interest organization dedicated to election integrity. (*Id.* ¶ 9). She is further a Senior Legal Fellow at the Conservative Partnership Institute ("CPI"), which provides

a platform whereby citizen leaders, scholars, and activists who are committed to conservative values and principles can be connected with the conservative movement, and with Congress, congressional staff, and organization leaders in Washington, D.C. CPI's work focuses on staffing, education and training, incubation of new organizations to fill strategic voids in the conservative movement, and coalition building. (*Id.*)

### Ms. Mitchell Met <u>Once</u> with Three N.C. State Senators about Potential Changes to North Carolina Election Law

Ms. Mitchell had an extremely limited role with respect to recent changes in North Carolina election law. In 2023, she met **once** with a group of three state senators concerning myriad potential changes to North Carolina election law. Also present were two other local election integrity advocates— James Womack of NCEIT and Jay DeLancy of the Voter Integrity Project.[2] (*Id.* ¶ 12). While possible changes to same day voter registration ("SDR") may have been among the numerous topics discussed in that meeting, if SDR were raised or discussed by any of the election integrity advocates present (and Ms. Mitchell does not actually recall if it was), it would have been by Mr. Womack (and perhaps Mr. DeLancy), but not by her. (*Id.*) Mr. Womack and NCEIT's belief about SDR, which Mr. Womack expressed in an email sent later that

---

[2] This meeting took place on or about May 24, 2023. The Senate introduced SB 747 on June 1, 2023.

same day to a legislative staffer who was present in the meeting was that same day registrants should vote by provisional ballot, but this is not the path that the General Assembly adopted in SB 747. (*Id.*) Ms. Mitchell has made clear, however, that she did not discuss any potential changes related to drafting or enacting the SDR provisions of SB 747 with any legislators, or their staffers, in that meeting or at any time prior to passage of SB 747. (*Id.*) She likewise never advocated the State Board of Elections regarding SDR. (*Id.* ¶ 13).

### Ms. Mitchell's Counsel Engaged in Diligent, Pre-Deposition Efforts to Resolve Possible Disputes

Suspecting the potential for abuse in upcoming deposition questioning, on September 4, 2024, undersigned counsel for Ms. Mitchell emailed plaintiffs' counsel about the subjects as to which plaintiffs might seek to question Ms. Mitchell. (*See* Ex. B: Brooks Decl. – Ex. 1). Undersigned counsel communicated that he considered certain matters to be inappropriate for the upcoming deposition—specifically, the following:

- Ms. Mitchell's prior or current representation, as a lawyer, of any client;

- Ms. Mitchell's advocacy before or with any governmental body, *other than* the North Carolina General Assembly and North Carolina State Board of Elections, specifically related to the subject of this litigation during the time period

thereof, namely SB 747 and its provisions regarding Same Day Registration adopted by the North Carolina General Assembly in 2023;

- Any of Ms. Mitchell's work, especially her election integrity work, that does not specifically concern the subject of this litigation during the time period related to this litigation, namely SB 747 and its provisions regarding same day registration adopted by the General Assembly in 2023; and

- Ms. Mitchell's legal opinions or conclusions about any matter.

Plaintiffs' counsel responded by email on Friday, September 5, 2024, stating in relevant part:

> Ms. Mitchell's advocacy before or with any governmental body, including the North Carolina General Assembly and North Carolina State Board of Elections, regarding Same Day Registration *as well as any other election integrity work, whether or not specific to SB 747 and its provisions*, bears directly on her credibility and on the credibility of her testimony about her conduct in connection with SB 747.

(*See* Ex. B: Brooks Decl. – Ex. 2) (emphasis added).

During the meet and confer of Monday, September 9, 2024, plaintiffs' counsel agreed that they would not question her about prior or current representation, as a lawyer, of any client, going so far as to say, "I don't need

6

to know who her client are." The parties were unable to resolve any other areas of disagreement, but plaintiffs' counsel expressed willingness to use the Court's process for abbreviated 30 minutes hearings without briefing. *See* M.D.N.C. L. Civ. R. 37.1(b). Undersigned counsel asked plaintiffs' counsel about the possibility of agreeing to a protective order regarding the dissemination and use of Ms. Mitchell's testimony, but plaintiffs were noncommittal and said they could only agree to such an order if there were no other limit on the scope of their examination of Ms. Mitchell. This was obviously insufficient to protect Ms. Mitchell's privacy and other interests.

Undersigned counsel again wrote in a continued effort to seek an amicable resolution of the remaining issues without intervention. (*See* Ex. B: Brooks Decl. – Ex. 3). In that letter, undersigned counsel emphasized the highly limited role Ms. Mitchell had with respect to SB 747. Plaintiffs' counsel responded to this letter on the afternoon of Wednesday, September 18. (*See* Ex. B: Brooks Decl. – Ex. 4). In this letter, plaintiffs suddenly retreated from their agreement to not ask Ms. Mitchell about her clients, misrepresented what undersigned counsel had said in his prior letter, used inflammatory rhetoric to insult Ms. Mitchell, and said plaintiffs could only agree to the abbreviated process if they could—in effect—insert their own briefing into the motion to be filed (thereby undermining the who point of the Rule 37.1(b) process). (*Id.*) The

letter also indicated that plaintiffs fully intended to proceed with the deposition of Ms. Mitchell on Wednesday, September 25. (*Id.*)

On Thursday, September 19, 2024, plaintiffs took the 30(b)(6) deposition of NCEIT, through Jim Womack, its founder and president. In his deposition, Mr. Womack confirmed that SDR was covered only briefly, if at all, in the May 2023 meeting with the three senators and that ***Ms. Mitchell did not provide advice or speak on the topic of SDS in the meeting at all or***—to his knowledge—even afterwards.

On the Monday, September 23, 2024, undesigned counsel wrote plaintiffs' counsel expressing surprise and dismay at the plaintiffs' abrupt change in position as to what had been a point of agreement (*viz.*, not questioning Ms. Mitchell about her clients or prior legal representation) and taking issue with other actions by plaintiffs. (*See* Ex. B: Brooks Decl. – Ex. 5). Due to the troubling and erratic conduct of plaintiffs' counsel by this point, Ms. Mitchell's counsel concluded that the dispute could only be resolved through full briefing and hearing before the Court. Undersigned counsel suggested that the deposition of Ms. Mitchell either be postponed until the Court could rule or that, at a minimum, the issues in contention be bifurcated and taken up after a ruling so as not to delay deposition on the points as to which there was no dispute. Plaintiffs rejected both proposals and indicated the deposition would proceed on September 25, 2024. Plaintiffs also did not accept any of Ms.

8

Mitchell's proposed limitations except now apparently agreeing that (per plaintiffs' letter of September 23) they would not ask about Ms. Mitchell's activities since passage of SB 747. (*See* Ex. B: Brooks Decl. – Ex. 6).

### *Certification*

As shown by the attached certificate of counsel, Ms. Mitchell certifies under Rule 26(c)(1) and Local Civil Rule 37.1 that he has in good faith conferred with other affected parties in an effort to resolve the dispute without court action.

## QUESTIONS PRESENTED

The questions before the Court are whether (1) a protective order should issue reasonably limiting the areas of inquiry in the deposition of non-party Cleta Mitchell; and (2) whether Ms. Mitchell should be entitled to recover fees reasonably incurred in bringing this motion.

# ARGUMENT

## I. PLAINTIFFS' PROPOSED QUESTIONING OF MS. MITCHELL FLUNKS THE TESTS OF RELEVANCY AND PROPORTIONALITY FOR DEPOSITION QUESTIONING OF A THIRD-PARTY WITNESS.

### A. Parties And The Courts Are Obligated To Protect The Rights Of Third-Parties In Discovery.

As the above recitation of facts shows, this is a motion that Ms. Mitchell tried to avoid in the hope of reaching an amicable resolution. That goal was frustrated, however, when it became clear that plaintiffs' counsel did not share this same goal. Instead of heeding the admonition of Federal Rules of Civil Procedure 45, which *requires* that "[a] party or attorney responsible for issuing and serving a subpoena . . . take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," Fed. R. Civ. P. 45(d)(1), it became clear that plaintiffs' counsel intended something different because of Ms. Mitchell's prominence in conservative circles. Thus, she was left to seek relief under Rule 26(c), whereby "any person from whom discovery is sought may move for a protective order in the court where the action is pending[.]" Fed. R. Civ. P. 26(c) (emphasis added).

Evidence sought by a subpoena must be relevant. *Pointer v. DART*, 417 F.3d 819, 821 (8th Cir. 2005) ("A subpoena must . . . seek relevant information.") (citation omitted). Moreover, under Rule 26, "discovery must . . . be 'proportional to the needs of the case' [which] requires courts to consider,

among other things, 'whether the burden or expense of the proposed discovery outweighs its likely benefit.' . . . ***When discovery is sought from nonparties, however, its scope must be limited even more***." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188-89 (4th Cir. 2019) (internal citations omitted and emphasis added). This means that "courts must give the recipient's nonparty status 'special weight,' leading to an even more '***demanding and sensitive' inquiry*** than the one governing discovery generally." *Id.* at 189 (quoting *In re Public Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005)) (emphasis added).

"[T]he scope of discovery is not without limits as Rule 26(b) (as amended in 2015) . . . provides that discovery is limited to information that is relevant to a claim or defense in the lawsuit *and* proportional to the needs of the case." *Zucchella v. Olympusat, Inc.*, CV 19-7335-DSF (PLAx), 2020 WL 8483772, at *2 (C.D. Cal. Nov. 2, 2020) (citation omitted). This means that first there must be a threshold showing of relevance. *See, e.g., Bonanno v. Quizno's Franchise Co., LLC*, 255 F.R.D. 550, 552 (D. Colo. 2009). Yet, discovery will not be required if its relevance is so marginal "that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure," *id.* (internal citations omitted), or it is not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

11

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," Fed. R. Civ. P. 26(b)(1). And, "the simple fact that requested information is discoverable . . . does not mean that discovery must be had . . . [since] a district court may limit [discovery.]" *Garey v. James S. Farrin, P.C.*, Case No. 1:16cv542, 2019 WL 7037606, at *7 (M.D.N.C. Dec. 19, 2019) (quoting *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004)).

## B. Plaintiffs Proposed Questioning Of Ms. Mitchell Is Neither Relevant Nor Proportional To The Needs Of The Case.

Plaintiffs' proposed questioning is *neither* relevant *nor* proportional to the needs of the parties in this litigation, but it is instead a fishing expedition meant to retaliate against a prominent conservative and use this suit to gain as much information as possible about her advocacy work.

First, even with its low bar, relevancy is not established as to any of the four areas about which Ms. Mitchell seeks to preclude questioning by plaintiffs. Plaintiffs have sued over *one* provision of a single bill that concerns changes to same day registration. The changes made to SDR by the General Assembly were not those urged by Jim Womack and NCEIT, ***and Ms. Mitchell did not advocate any changes to SDR <u>at all</u> with respect to SB 747 in the single meeting she had with state senators concerning potential election law***

*changes*. Ms. Mitchell's legal clients, her advocacy of other governmental authorities, her other election integrity work, and her legal conclusions about other matters do not speak at all to the change in state law at issue in this case.

Nevertheless, even if the bar of relevancy can somehow be met as to any of these topics, requiring disclosure of this information by Ms. Mitchell in her deposition is not proportional to the needs of the case, as required by Rule 26. Indeed, Ms. Mitchell is not trying to dodge her deposition. She stands ready to testify to the ***single*** meeting at which ***another*** individual (not herself) ***may*** have briefly discussed SDR. (*See* Mitchell Decl. ¶ 12.) Ms. Mitchell has otherwise been clear that she had ***no role*** in advocating for SB 747's changes to SDR, and she will attest to this, too. (*Id.* ¶¶12-13.)

But, permitting questioning of a ***non-party*** about "***any other*** election integrity work" that has occurred in ***any jurisdiction*** has no bearing on what happened during a discrete period of time in North Carolina with respect to a specific part of a single piece of state legislation, especially since there is no evidence this information was known or considered by members of the North Carolina General Assembly or their staff. Plaintiffs, though, seek to use Ms. Mitchell's non-advocacy of the General Assembly as the means to depose Ms. Mitchell—for seven hours, no less—about ***any*** aspect of her 40-plus years of election law representation and public policy advocacy. This is a harassing

13

fishing expedition of a third-party witness at its worst. *See, e.g., Waters v. Cafesjian Family Fnd., Inc.*, Civil No. 12-648 (RHK/LIB), 2013 WL 12176993 (D. Minn. Feb. 6, 2013) ("[C]ourts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses.") (citing *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004)).

The Fourth Circuit does not allow what plaintiffs desire. Instead, Circuit precedent requires a "demanding and sensitive inquiry" before allowing third-party discovery like that sought by plaintiffs of Ms. Mitchell. *Jordan*, 921 F.3d at188-89. When this requisite demanding and sensitive inquiry is undertaken, it is clear Ms. Mitchell should be granted a protective order.

### C. Plaintiffs Effectively Seek An "Apex Deposition" Of Ms. Mitchell

Plaintiffs attempt to use the relationship between Mr. Womack's NCEIT and Ms. Mitchell's nationwide Election Integrity Network as a means to pull her and her national work into the deposition crosshairs. But, in reality, this is nothing but an effort by plaintiffs to take an "apex deposition," since Ms. Mitchell has little knowledge relevant to the actual facts of the case, and plaintiffs have the ability to depose (and have already deposed) the individuals with knowledge. Like other premature apex depositions, the efforts to depose Ms. Mitchell beyond the bare facts she can attest to, should be rejected.

14

It is widely recognized that deposing a high-level executive in the course of litigation presents a special danger for abuse that must be carefully controlled by the courts. *See Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374 MMC (JL), 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) ("Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment.") (citing *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I. 1985)). To address these concerns, many federal courts have developed the apex doctrine by exercising their power to regulate the discovery process under Federal Rule of Civil Procedure 26. *See Baine v. General Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991). Specifically, under Rule 26(b)(2)(C), the district court may limit what would otherwise be permissible discovery when the burden or expense of the "proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(i), (iii). Furthermore, Rule 26(c)(1) empowers the district court to issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Applying these provisions to situations in which a party seeks to depose an executive gives rise to a "rebuttable presumption that the deposition of a high-ranking corporate executive either violates Rule 26(b)(2)(C)'s proportionality standard or, on a party's motion for a protective order,

constitutes 'good cause' for such an order as an 'annoyance' or 'undue burden' within the meaning of Rule 26(c)(1)." *Performance Sales & Marketing LLC v. Lowe's Co., Inc.*, No. 5:07-CV-00140-RLV-DLH, 2012 WL 4061680, at *3-4 (W.D.N.C. Sept. 14, 2012). Just as the "deposition of a high-level corporate executive should not be freely granted when the subject of the deposition will be only remotely relevant to the issues of the case," *Folwell v. Hernandez*, 210 F.R.D. 169, 174 (M.D.N.C. 2002) (citing *Harris v. Computer Assocs. Int'l, Inc.*, 204 F.R.D. 44 (E.D.N.Y. 2001)), so here Ms. Mitchell should be treated like a corporate executive and only asked about the matters as to which she has personal knowledge and that *actually bear on the case*. The mere fact that she can be deposed on certain limited topics should not become a blank cheque to ask about anything she happens to know.

## II. PLAINTIFFS' PROPOSED QUESTIONING IS IN BAD FAITH AND SEEKS TO ANNOY AND OPPRESS MS. MITCHELL AS RETALIATION FOR HER EXERCISE OF FIRST AMENDMENT RIGHTS AND BECAUSE OF HER POLITICAL BELIEFS.

Plaintiffs and their counsel hold animus toward Ms. Mitchell because she is a leading, and effective, conservative. They said as much, when they let their guard down in an apparent fit of anger, writing inflammatorily on September 18, 2024, to defend the unrestrained intended scope of their deposition: "Questions regarding Ms. Mitchell's *prior efforts to restrict the First Amendment rights of students and marginalized voters* are

16

probative of Plaintiffs' claims about the Legislature's reasons for restricting same-day registration[.]" (emphasis added).[3] First, of course, there is a significant non sequitur in this logic that betrays plaintiffs' true intent, and that is that Ms. Mitchell *never* lobbied the General Assembly to restrict same day registration with SB 747. (Mitchell Decl. ¶ 12). And, Ms. Mitchell does not even recall if SDR was even raised in the single meeting she attended with a handful of state senators. (*Id.*) Even if it were raised, it was done so by a *different* individual, who was in favor of a *different* approach to SDR than was adopted by the legislature. (*Id.*)

It is no surprise, though, that plaintiffs would have an axe to grind with Ms. Mitchell. Despite their innocuous names, each of the plaintiffs in this suit is a leftwing advocacy organization. (*Id.* ¶ 18). Plaintiffs in this case are even represented by the Southern Coalition for Social Justice ("SCSJ"), itself also a leftwing advocacy group. Only a few years ago, in the U.S. District Court for the Eastern District of Virginia, SCSJ sued the Public Interest Legal Foundation, of which Ms. Mitchell was one of the founders and is chairman of the board. (*Id.*) As with the discovery SCSJ and its co-counsel are pursuing here, that litigation was harassing and intrusive. (*Id.*) The present case should

---

[3] Presumably—though it is by no means clear—by referring to "First Amendment rights," plaintiffs are referring to voting rights. *See, e.g., Wright v. Mahan*, 478 F. Supp. 468, 473 (E.D. Va. 1979).

be litigated for the purposes required by the present case, not as a continuation of a since-resolved suit or for the purpose of would-be future litigation. But, plaintiffs' unreasoning maximalist position on discovery here refuses to take any such unnecessary questioning off the deposition table.

Plaintiffs proposed questioning of Ms. Mitchell would turn this limited litigation about a *single simple* change in state election law into a means to learn the full details of their ideological opponents' ***nationwide*** advocacy and even representation of legal clients, not just currently but even for ***decades*** prior. Exercising First Amendment rights to petition the General Assembly in a limited way, as Ms. Mitchell has done, does not mean she must now lay bare the entirety of her legal and public policy work for the study of her political opponents, who seek to undermine her throughout the country. This is why the Supreme Court has said that discovery by "depositions . . . has a significant potential for abuse . . . [which] may seriously implicate privacy interests of litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984). Deposition questioning about Ms. Mitchell's work other than any advocacy of North Carolina governmental entities regarding student voting or same day voter registration for the time periods relevant to this lawsuit constitutes a baseless fishing expedition that is highly invasive of her First Amendment and privacy rights. (*See id.* ¶¶ 17-20).

Suffice it to say, a protective order is necessary to prevent against this deposition becoming a political vendetta. Thus, Plaintiffs' questioning of Ms. Mitchell about her clients, her advocacy of other governmental entities, her other election integrity advocacy, or her legal opinions is in bad faith and an effort to annoy and oppress her. Therefore, a protective order should issue.

### III. PLAINTIFFS' PROPOSED QUESTIONING WOULD HARM MS. MITCHELL'S FIRST AMENDMENT ADVOCACY WORK AND POTENTIALLY EXPOSE HER TO FURTHER THREATS AND HARASSMENT.

As Ms. Mitchell's accompanying declaration confirms, the questioning plaintiffs refuse to disclaim would also be highly invasive of her highly-sought-after public policy work and could well require disclosure of propriety information about that advocacy.[4] (*See* Mitchell Decl. ¶ 17). *See, e.g., Lawrence v. First Kan. Bank & Trust Co.*, 169 F.R.D. 657, 660 (D. Kan. 1996) ("Relevant proprietary and confidential information and trade secrets . . . may . . . [become subject to a] protective order to limit their use."); *see also ACI Worldwide Corp. v. Mastercard Techs., LLC*, No. 8:14CV31, 2016 WL 3647850, at *3 (D. Neb. July 1, 2016) (limiting depositions of a non-party competitor to questions

---

[4] Examples of such proprietary and First Amendment protected information include her publications, including her work that has not yet been published, the sources of her information, the manner in which she and her collaborators analyze data collected, the identities of those with whom she collaborates and works, and the means by which her work is funded. All of this is proprietary and protected by the First Amendment as well as Rule 26.

19

regarding the plaintiff's confidential and proprietary information that the defendant sent to the non-party in developing a competing product); *cf.* Fed. R. Civ. P. 26(c)(1)(G) (court may enter protective order . . . "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]"). Ms. Mitchell's declaration substantiates that the scope of deposition questioning sought by plaintiffs is for the purpose of obtaining proprietary information that plaintiffs and their colleagues in their 'democracy' movement will utilize to harm her, her work, and the broader election integrity movement. (*Id.* ¶ 19). At a minimum, then, Ms. Mitchell should receive an order prohibiting the dissemination and use of any such information gleaned from her deposition.

Plaintiffs' planned scope of her deposition further threatens to dissuade individuals and entities from seeking Ms. Mitchell's advice on public policy in the future since, if this questioning is permitted, that advice could become the subject of inquiry in unrelated litigation. (*Id.* ¶¶ 17, 19). This is injurious not only to business and professional interests but even more significantly to her First Amendment rights. The law recognizes that "advocacy of a politically controversial viewpoint . . . is the essence of First Amendment expression." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995). "The right to speak freely and to promote diversity of ideas and programs . . . may indeed best serve its high purpose when it induces a condition of unrest, creates

20

dissatisfaction with conditions as they are, or even stirs people to anger." *Terminiello v. Chicago*, 337 U.S. 1, 460-61 (1949); *Snyder v. Phelps*, 562 U.S. 443, 460-61 (2011) ("As a Nation we have chosen . . . to protect even hurtful speech on public issues[.]").

"[S]peech concerning public affairs is more than self-expression; it is the essence of self-government. There is a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 913, (1982) (internal quotation marks and citations omitted). "[F]ree speech is 'essential to our democratic form of government.' Without genuine freedom of speech, the search for truth is stymied, and the ideas and debates necessary for the continuous improvement of our republic cannot flourish." *Meriwether v. Hartop*, 992 F.3d 492, 503 (6th Cir. 2021) (quoting and citing *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2464 (2018)) (internal citation omitted). When, however, speaking out makes a person or organization a target for subpoena, these objectives of First Amendment cannot be fulfilled.

Thus, to protect citizens' First Amendment rights, "[c]ourts have established a balancing test for determining whether [disclosure of] information falling under the [First Amendment] privilege should nevertheless be compelled." *Marfork Coal Co. v. Smith*, 274 F.R.D. 193, 205 (S.D. W. Va.

Case 1:23-cv-00878-TDS-JEP   Document 97   Filed 09/24/24   Page 21 of 30

2011) (citations omitted). When "the disclosure would likely impair the associational activities" the individual or group asserting a First Amendment privilege, *id.* (citing *NAACP v. Alabama*, 357 U.S. 449, 462-63, (1958)), the court looks to several factors to determine if disclosure should be ordered. "Among the factors that the trial court must consider are (1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information." *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987); *see Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010); Fed. R. Civ. P. 45 (d)(3)(A)(iii).

Here, revealing the information about Ms. Mitchell's advocacy about issues not related to SDR and SB 747 would radically chill free speech, petitioning of the government, and other First Amendment rights. Who, after being deposed as plaintiffs seek to depose Ms. Mitchell, would not hesitate the next time before speaking out or seeking redress of grievances from the government, despite the constitutionally protected nature of these rights? Disclosing internal communications and projects (not to mention funding) would also reveal the identities those who had affiliated themselves with Ms. Mitchell's various efforts in different parts of the country, far away from North Carolina, which is particularly odious. *See, e.g., Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2388 (2021) ("Our cases have said that disclosure

requirements can chill association even if there is no disclosure to the general public.") (cleaned up).

By contrast, plaintiffs cannot even identify the information sought, including its need or relevance, with any meaningful particularity—a fact that underscores the fundamental immateriality and irrelevance of the information being demanded. Accordingly, plaintiffs fail to satisfy the "heightened degree of relevance to the subject matter of the suit[,] . . . [and there is no] . . . showing by the party seeking discovery that it has made reasonable, unsuccessful attempts to obtain the information elsewhere." *Wilkinson v. FBI*, 111 F.R.D. 432, 436 (C.D. Cal. 1986) (citing *Int'l Union, UAW v. Nat'l Right to Work Legal Defense and Educ. Fund, Inc.*, 590 F.2d 1139, 1152 (D.C. Cir. 1978)); *see ETSI Pipeline Project v. Burlington N., Inc.*, 674 F. Supp. 1489, 1490 (D.D.C. 1987).

Moreover, plaintiffs have already taken the 30(b)(6) deposition of NCEIT (though its President Jim Womack) who testified at length about SDR and the meeting with the three senators that was Ms. Mitchell's only meeting regarding SB 747. Thus, plaintiffs have access to any information they could conceivably need. As such, Plaintiffs cannot carry their ***heavy burden*** of overcoming Ms. Mitchell's First Amendment rights to know her own private or otherwise unrelated work.

Plaintiffs' intended questioning also threatens Ms. Mitchell's safety and well-being. *See, e.g., Flores v. Stanford*, No. 18 Civ. 2468 (VB) (JCM), 2021 WL

23

4441614, at *4 (S.D.N.Y. Sept. 28, 2021) (quoting *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. 2010)). "Ordinarily, good cause [for a protective order] exists when a party shows that disclosure will result in a clearly defined, specific and serious injury." *Id.* (cleaned up). Due to her public profile, Ms. Mitchell has been in the past, and continues to be the target, of threats and harassment because of her work on election integrity matters. (*Id.* ¶ 19). Plaintiffs' questioning about the sensitive areas of her work—combined with plaintiffs' counsel's own prior inflammatory rhetoric about Ms. Mitchell's work and false claims made about her by Governor Roy Cooper—expose her to an even greater danger of harassment, threats, and efforts at intimidation, especially in the current political environmental, where there have already been two assassination attempts against the Republican nominee for President in a span of mere weeks.[5] (*See id.* ¶ 14; *see also* Pls.' Compl. ¶ 39 n.15 (implying Ms. Mitchell is a "conspiracy theorist") & ¶ 40). Absent

---

[5] Aside from the two attempts on the life of President Trump, threats to those involved in elections have also very recently come in the form of suspicious packages mailed to elections officials in North Carolina and elsewhere. Plaintiffs' dangerous rhetoric about Ms. Mitchell, combined with plaintiffs' unwillingness to accept limits on what they will depose her, a non-party, about when it comes to her elections work, places her physical safety in jeopardy. *See, e.g.,* "Suspicious packages mailed to elections officials in North Carolina and other states are under federal investigation, as voting begins in the 2024 elections," WRAL, Sept. 23, 2024, *available at* https://www.wral.com/story/we-are-not-going-to-be-intimidated-nc-s-top-elections-official-says-as-fbi-investigates-threats/21639039/ (last visited Sept. 24, 2024).

24

protection from the Court, plaintiffs' deposition questioning of Ms. Mitchell risks requiring her to reveal information that will be used to increase threats and harassment to her as she is further demonized by plaintiffs and their counsel.

Therefore, an appropriate protective order mitigating, to the extent the Court can, the effects of plaintiffs' inflammatory attacks on Ms. Mitchell by limiting the areas about which she may be questioned should be entered.

## IV. MS. MITCHELL SHOULD BE AWARDED FEES IN RELATION TO THIS MOTION

Attorneys' fees and expenses may be awarded in relation to a motion for a protective order, as provided in Rule 37(a)(5). Fed. R. Civ. P. 26(c)(3). Ms. Mitchell and her counsel tried diligently to resolve this matter without the need for court intervention before the deposition was to begin. Only due to plaintiffs' insistence on being unrestrained on the scope of their topics—even desiring to question Ms. Mitchell (a non-party) about *the clients* she has represented as a lawyer—and their unwillingness to agree to reasonable bounds for inquiry was it required that the matter come before the Court. The intransigence of plaintiffs is not substantially justified, and therefore Ms. Mitchell should be awarded her reasonable expenses related to bringing this motion.

## CONCLUSION

WHEREFORE, non-party Cleta Mitchell respectfully asks the Court for entry of a protective order precluding counsel for the parties from deposing Ms. Mitchell about any of the following:

- Ms. Mitchell's prior or current representation, as a lawyer, of any client;

- Ms. Mitchell's advocacy before or with any governmental body, *other than* the North Carolina General Assembly and North Carolina State Board of Elections, specifically related to the subject of this litigation during the time period thereof, namely SB 747 and its provisions regarding Same Day Registration adopted by the North Carolina General Assembly in 2023 (*i.e.*, from Oct. 1, 2022, to Oct. 10, 2023);

- Any of Ms. Mitchell's work, especially her election integrity work, that does not specifically concern the subject of this litigation during the time period related to this litigation, namely SB 747 and its provisions regarding same day registration adopted by the General Assembly in 2023 (*i.e.*, from Oct. 1, 2022, to Oct. 10, 2023); and

- Ms. Mitchell's legal opinions or conclusions about any matter.

In the alternative, Ms. Mitchell asks that the answers to any such questions that the Court allows be made subject to a protective order reasonably limiting their dissemination and use.

Furthermore, Ms. Mitchell respectfully requests that she be awarded reasonable expenses, including attorneys' fees, in relation to this motion.

Respectfully submitted, this <u>24th</u> day of September, 2024.

<u>/s/B. Tyler Brooks</u>
B. Tyler Brooks (N.C. Bar. No. 37604)
Attorney for Cleta Mitchell
LAW OFFICE OF B. TYLER BROOKS, PLLC
P.O. Box 10767
Greensboro, NC 27404
Telephone: (336) 707-8855
Fax: (336) 900-6535
Email: btb@btylerbrookslawyer.com

*Counsel for Non-Party Cleta Mitchell*

Case 1:23-cv-00878-TDS-JEP   Document 97   Filed 09/24/24   Page 27 of 30

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

Pursuant to Local Civil Rule 7.3(d)(1), it is hereby certified that the foregoing brief complies with the type-format and length limitations established by the Local Rules, as reported by counsel's word processing software. Specifically, the foregoing brief, except for those parts excluded by the Rules, is 6,117 words.

Date: <u>September 24, 2024</u>

<u>/s/B. Tyler Brooks</u>
B. Tyler Brooks
N.C. Bar No. 37604

*Counsel for Non-Party*
*Cleta Mitchell*

## CERTIFICATE OF SERVICE

It is hereby certified that on September 24, 2024, the foregoing document

was served on counsel of record for all parties via CM/ECF.

Date: September 24, 2024                    /s/B. Tyler Brooks
                                            B. Tyler Brooks
                                            N.C. Bar No. 37604

                                            *Counsel for Non-Party*
                                            *Cleta Mitchell*


**SERVED:**

Michael Dockterman, Esq.
Jamie Witte, Esq.
Maria O'Keeffe, Esq.
Geneva Ramirez, Esq.
STEPTOE LLP
227 West Monroe St., Suite 4700
Chicago, Illinois 60606
mdockterman@steptoe.com
jwitte@steptoe.com
gramirez@steptoe.com
mokeeffe@steptoe.com

Jeffrey Loperfido, Esq.
Christopher Shenton, Esq.
Katelin Kaiser, Esq.
Hilary H. Klein, Esq.
Mitchell D. Brown, Esq.
Lily A. Talerman, Esq.
SOUTHERN COALITION FOR SOCIAL JUSTICE
5517 Durham-Chapel Hill Blvd.
Durham, North Carolina 27707
jeffloperfido@scsj.org
chrisshenton@scsj.org
katelin@scsj.org
hilaryhklein@scsj.org

mitchellbrown@scsj.org
lily@scsj.org

*Counsel for Plaintiffs*

Terence Steed, Esq.
Mary Carla Babb, Esq.
NORTH CAROLINA DEPARTMENT OF JUSTICE
P.O. Box 629
Raleigh, North Carolina 27602
tsteed@ncdoj.gov
mcbabb@ncdoj.gov

*Counsel for State Board Defendants*

Thomas A. Farr, Esq.
Phillip Strach, Esq.
Alyssa M. Riggins, Esq.
Alexandra M. Bradley, Esq.
Cassie A. Holt, Esq.
NELSON MULLINS RILEY & SCARBOROUGH LLP
301 Hillsborough St., Suite 1400
Raleigh, North Carolina 27603
tom.farr@nelsonmullins.com
phil.strach@nelsonmullins.com
alyssa.riggins@nelsonmullins.com
alex.bradley@nelsonmullins.com
cassie.holt@nelsonmullins.com

*Counsel for Legislative Intervenor Defendants*

30