# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case no. 1:23CV00878-TDS-JEP


DEMOCRACY NORTH CAROLINA; NORTH      )
CAROLINA BLACK ALLIANCE; LEAGUE      )
OF WOMEN VOTERS OF NORTH             )
CAROLINA,                            )
                                     )
                Plaintiffs,          )
      vs.                            )
                                     )
ALAN HIRSCH, in his official         )
capacity as CHAIR OF THE STATE       )
BOARD OF ELECTIONS; JEFF CARMON      )
III, in his official capacity        )
as SECRETARY OF THE STATE BOARD      )
OF ELECTIONS; STACY EGGERS IV,       )
in his official capacity as          )
MEMBER OF THE STATE BOARD OF         )
ELECTIONS; KEVIN LEWIS, in his       )
official capacity as MEMBER OF       )
THE STATE BOARD OF ELECTIONS;        )
SIOBHAN O'DUFFY MILLEN, in her       )
official capacity as MEMBER OF       )
THE STATE BOARD OF ELECTIONS;        )
KAREN BRINSON BELL, in her           )
official capacity as EXECUTIVE       )
DIRECTOR OF THE STATE BOARD OF       )
ELECTIONS; NORTH CAROLINA STATE      )
BOARD OF ELECTIONS,                  )
                                     )
                Defendants.          )


                30(b)(6) DEPOSITION OF THE
                STATE BOARD OF ELECTIONS by
                       PAUL COX

            NELSON MULLINS RILEY & SCARBOROUGH
                 301 HILLSBOROUGH STREET
                   RALEIGH, NC  27603
        _____
                      10:03 A.M.
                MONDAY, FEBRUARY 24, 2025
        _____

By:  Denise Myers Byrd, CSR 8340, RPR

1

1    A.    Yes, subject to regular list maintenance

2          practices.

3    Q.    Sure.  But then by contrast, the ballot status,

4          that's limited to the election that we're

5          talking about that this same-day registrant

6          first same-day registered, cured their

7          registration, that ballot status is limited to

8          whatever election it is they cured in; is that

9          right?

10   A.    Yes.

11   Q.    And those are notated separately in the file is

12         my understanding.

13   A.    Yeah.  Noted separately in the databases,

14         yeah.

15   Q.    Another question I had with SOSA, when a poll

16         worker is inputting a voter's address, is the

17         verification mailing generated directly from

18         whatever is input in SOSA?

19               Or put differently, is there a step

20         between the same-day registrant having their

21         info put into SOSA and the address that will be

22         generated for the verification mailing?

23   A.    So the same-day registrant at the early voting

24         site will sign and review -- I should put it in

25         the reverse -- will review and sign their voter

                                                         27

1    registration application which generally has

2    been inputted by a poll worker into SOSA, and

3    they will print out the actual, physical

4    application for the voter to sign and review.

5              As to whether there's another step

6    before the mailing gets created with regard to

7    the address, I don't think so, but I would ask

8    Mr. Holland to be sure.  Because I know that an

9    address verification mailing is not generated at

10   the early voting site.  It has to be generated

11   from the county board of elections office, but

12   what I don't know is whether there is some

13   additional step that would pertain to the

14   address at the county board of elections office

15   before the verification mailing gets generated.

16  Q.   And if a voter listed a separate residential

17   address and mailing address, that would be

18   reflected in SOSA for what they review and sign

19   when they first present to same-day register?

20  A.   Yes.  Referring to the voter, yes.  If the voter

21   is giving a mailing address that is different

22   from their residential address, that will be put

23   into the system, into SOSA, it will be printed

24   out on their voter registration application

25   form, they will review it, they being the voter,

28

1    and the voter will sign that.

2              ATTORNEY SHENTON:  I'm going to

3    introduce another exhibit which I'll mark as

4    Exhibit 3.

5              (WHEREUPON, Exhibit 3 was marked for

6    identification.)

7    BY ATTORNEY SHENTON:

8    Q.   This is a document produced by the state board

9         in litigation beginning with the Bates stamp

10        NCSBE 433.

11             Mr. Cox, if you would take a moment to

12        familiarize yourself with the document and let

13        me know when you're ready.

14   A.   I'm ready.

15   Q.   Do you recognize this?

16   A.   Yes.

17   Q.   What is it?

18   A.   It is another document from our STEPPS system

19        referring to voter registration statuses.

20   Q.   And are these the same statuses that we were

21        discussing a moment ago that county boards

22        manually update when a same-day registrant is

23        able to cure their registration pursuant to the

24        numbered memo?

25   A.   Yes, specifically the statuses and sub statuses

                                                    29

1    say statuses -- transition codes versus the

2    statuses, and, you know, I just don't have

3    enough knowledge to know, you know -- to sort of

4    separate those in my head to know for sure like

5    this and then this for status codes because I

6    get the status codes and the transition codes

7    confused sometimes.

8   Q.   Okay.  All right.  I will ask Mr. Holland those

9        questions.

10             I want to talk a little bit about the

11       pre 747 legal regime and then obviously contrast

12       that to the post 747 legal regime specifically

13       with respect to same-day registrants.

14             So in the pre 747 scheme, what did the

15       state board instruct the county boards to do

16       with respect to the timing of mail verification

17       for same-day registrants?

18  A.   I believe the timing of when a verification goes

19       out would have been the same.

20             Are you referring to other parts of the

21       timing, like when a verification returns as

22       undeliverable?

23  Q.   We'll get to those in a second, but right

24       specifically when the initial mailer is supposed

25       to go out, the same timing in both the pre and

76

1    post 747 schemes?

2    A.   I believe that's right, but I would -- to be

3         accurate, I would just refer you to the current

4         same-day registration law and the same-day

5         registration law that was pre 2013 that was put

6         back into effect by the McCrory case.

7    Q.   Okay.  Do you know about how long -- do you know

8         what that current guidance is?

9    A.   I think it's two business days after the

10        registration application is received, but again,

11        I would refer you to the language law itself.

12              ATTORNEY SHENTON:  I am going to mark

13        Exhibit 7.

14              (WHEREUPON, Exhibit 7 was marked for

15        identification.)

16   BY ATTORNEY SHENTON:

17   Q.   It's a document that has been produced by the

18        state board in this litigation.  It's

19        Bates-stamped NCSBE 143.

20              Mr. Cox, take a moment to familiarize

21        yourself with this document, and let me know

22        when you're ready.

23   A.   Okay.

24   Q.   Do you recognize this document?

25   A.   Yeah.  This appears to be an excerpt from the

77

1          keenly aware that a number of same-day

2          registrants fail mail verification

3          after the county has completed its

4          canvass.  It is imperative that counties

5          work diligently to issue verification

6          mailings and log returned mail

7          throughout the one-stop early voting

8          period."

9               Do you know what those two sentences

10     are referring to or what determination on the

11     state board side those sentences are referring

12     to?

13  A.   Yeah.  So, you know, we've already talked about

14     the administrative wait period for mailings

15     being ten days, and so, you know, it can take up

16     that long or conceivably longer for returned

17     mail to come back to a county board of

18     elections.  And if you think about the fact that

19     a lot of same-day registrants, a lot of early

20     voters vote toward the end of the early voting

21     period, that leaves not a whole lot of time for

22     especially a two-mailing process to play out

23     before the canvass.  And it could be because of

24     verification mailings not going out timely or it

25     could just be because it takes that long in the

88

1    mail.

2              For example, if you register to vote a

3    same-day registration on the last day of early

4    voting, the Saturday before the general

5    election, there's a very good possibility if

6    there's an address verification failure and

7    you're going through two of those that that

8    second one is not going to return until after

9    the canvass.

10   Q.   And so that's what's referring to here, that

11   normal lag time with two mailers is quite

12   frequently kicking out that second return

13   deadline past the canvass?

14   A.   Right.

15   Q.   And I want to return you to the next sentence

16   there, the last sentence of the paragraph:

17             "The State Board plans to review

18        mailing logs associated with same-day

19        registrants, and it is likely

20        independent organizations may also

21        review relevant tables exported from

22        SEIMS as a matter of public record."

23             Do you know what the state board's

24   plans to review the mailing logs with same-day

25   registrants was referring to, what process

89

1       that it's going to lead to lots of consequences

2       that you haven't thought about it, then we'll

3       say that.

4   Q.   Do you recall what the initial version of

5       Senate Bill 747 proposed for same-day

6       registration changes?

7   A.   Yeah.  It would have changed same-day

8       registration to a method of provisional voting

9       where I believe the voter -- most voters would

10      have to come back with additional proof of their

11      residence at the county board of elections

12      office prior to election day, maybe.  I can't

13      remember exactly, but, you know, you have the

14      bill draft.  You could see what it is.

15  Q.   And what do you remember your initial reaction

16      to that proposal being?

17  A.   This is going to be incredibly difficult to

18      administer.  Provisional voting is -- it's

19      time-consuming at the voting location and it's

20      time-consuming on the back end, when county

21      board staff are researching and making

22      recommendations to each of their respective

23      county boards of elections about whether to

24      approve any provisional ballot.

25              The other challenge with provisional

138

1    voting is that -- at least until this past year,

2    provisional ballots were not counted until right

3    before canvass.  Some counties might have

4    counted some earlier than that, but generally

5    speaking, you would have a provisional meeting

6    right before your canvass meeting which is 10

7    days -- the canvass meeting is 10 days after the

8    election.

9           So one of the big reactions we had is

10   wait a second, you're going to all of a sudden

11   take hundreds of thousands of ballots that would

12   be included in the count on election day and

13   move them ten days later so you have this huge

14   vote dump ten days after the election which

15   seems to be at odds with other provisions in the

16   bill that the legislators were advocating for in

17   terms of getting results earlier.

18   Q.   Were any of those changes that seemed designed

19        to get results earlier that come to mind?

20   A.   Yeah.  The elimination of the grace period for

21        absentee-by-mail ballots.

22   Q.   So it seems those were at cross-purposes.  One

23        was trying to move the date by which you know

24        which ballots were in the count up and another

25        was moving that date fairly significantly back.

                                                  139

1    Q.   But the single mail verification mailer system

2         is present both here and in current statutory

3         law?

4    A.   Yes.

5    Q.   Is it your understanding that this was the first

6         time that proposal had been made to the

7         General Assembly?

8    A.   I think so.

9    Q.   And we'll go just to the comment CP3 there, the

10        last sentence.  You write:

11               "So the result would be that you

12            would capture everyone who might fail

13            mail verification after same-day

14            registering under current law, but

15            importantly you would not trip up a

16            lot of voters who would ordinarily

17            pass mail verification under current

18            law."

19               Is that a restatement of kind of what

20        we have been talking before about the over

21        versus underinclusivity problem?

22   A.   Right.

23   Q.   And this was your attempt to solve for that?

24   A.   Right.

25               ATTORNEY SHENTON:  All right.  I am

                                                      161

1    Q.    Okay.  And the final enacted version of 747 does

2          not make SDR provisional voting; is that right?

3    A.    That's right.

4    Q.    Do you still have Exhibit 12 in front of you?

5    A.    Probably.  Let me find it.  Okay.

6    Q.    Do you recall discussing the June 14th email

7          between you, Josh Yost, Brent Woodcox, and

8          Lindsey Wakely earlier this afternoon?

9    A.    Yes.

10   Q.    And do you recall that Mr. Shenton asked you

11         some questions about the HAVA documentation and

12         the DMV ID?

13   A.    Say that again.  HAVA document --

14   Q.    That you and Mr. Shenton discussed that the

15         legislature wanted there to be a single

16         DMV-issued ID, but the state board had

17         communicated that a HAVA document would be a

18         better approach.

19   A.    Right.  You're referring to our conversation

20         about how if you're limited to a DMV-issued ID

21         during same-day registration, it's going to trip

22         up a lot of other people because they don't show

23         a DMV-issued ID for HAVA documentation.

24   Q.    Yes.

25               And are you aware that the legislature

                                                    212

1       took your suggestion and now it is not a

2       DMV-limited ID but a HAVA document as presented?

3    A.  Yes.

4    Q.  I would like to look at NCSBE 285.  We will mark

5        that as Exhibit 25.

6                (WHEREUPON, Exhibit 25 was marked for

7        identification.)

8    BY ATTORNEY RIGGINS:

9    Q.  Do you recognize this document?

10   A.  Yes.

11   Q.  I'm looking at -- the top email here appears to

12       be from you to Lisa Stifler, Fred Aikens, cc'd

13       Karen Brinson Bell, and Lindsey Wakely; is that

14       right?

15   A.  Yes.

16   Q.  Can you identify for the record who Lisa Stifler

17       and Fred Aikens are, please.

18   A.  Yes.  They're staff who work for Senator Dan

19       Blue who was at the time the minority leader in

20       the North Carolina Senate.

21              Fred Aikens I believe was his chief of

22       staff.  I don't know their titles exactly, but I

23       communicated mostly with Lisa who I know is sort

24       of a chief policy advisor.

25   Q.  And you forwarded them, it looks like an email

1          you sent about a minute earlier, to Josh Yost

2          and Brent Woodcox; is that right?

3     A.   That's right.

4     Q.   And at that time both Mr. Yost and Mr. Woodcox

5          were with President Berger's office; is that

6          right?

7     A.   That's right.

8     Q.   And it looks like in your email to Mr. Yost and

9          Mr. Woodcox, you detailed I believe it's eight

10         points for discussion about 747; is that right?

11    A.   Well, they're eight different sections of the

12         bill that we were suggesting changes on.

13    Q.   Okay.  I'd like to look at the first bullet

14         which is the same-day registration/provisional

15         voting.

16              So it looks like here on June 20th, in

17         this paragraph, you proposed to do away with the

18         provisional voting scheme in the original draft

19         of 747 and have the registrant receive one

20         verification mailing, and then if that's

21         returned by the day before canvass, the county

22         board would retrieve and discard -- discount,

23         I'm sorry, the ballot; is that right?

24    A.   Yes.

25    Q.   And then you detailed the advantages of that

                                                          214

1              registrants whose mail verification

2              was returned as undeliverable was

3              around 2,000 statewide."

4                   Is that right?

5    A.    Yes.

6    Q.    And is that based on the data that you and

7          Mr. Shenton looked at earlier that had been

8          processed by the state board data team?

9    A.    Yes.

10   Q.    All right.  And the first attachment that starts

11         on page 483 is a clean copy of the numbered

12         memo.  I'd like to look at page 4 of the

13         numbered memo if we could, Section 2.3,

14         Documents Issued by an Educational Institution.

15                   Do you see that header?

16   A.    Yes.

17   Q.    So I just want to walk through this and make

18         sure I understand.

19                   So students can provide potentially a

20         student ID, but then they can also provide, you

21         know, a printout from their student portal

22         showing the residence hall that they reside in

23         in order to meet the HAVA document requirement;

24         is that right?

25   A.    Yeah.  I'll clarify that a student ID alone is

                                                      225

1    unlikely to -- unlikely to satisfy the HAVA

2    document requirement, nor would it satisfy alone

3    what the same-day registration requirements were

4    before Senate Bill 747 because student IDs

5    rarely have an address on them.  So the

6    student ID could be used in conjunction with

7    another university document showing address.

8         But putting aside the student ID issue,

9    ask your question again.  I'm sorry.

10   Q.  So it's basically they would need essentially

11   two documents, maybe their ID and a printout

12   saying "I live in Metcalf Hall at NC State"?

13   A.  Yes.  Although if you're at NC State, you could

14   probably just have a print off from -- saying

15   you live at Metcalf Hall because it's a

16   government document.

17   Q.  But if I were a Duke student, let's say I was

18   smarter, I would need my ID and my hall address?

19   A.  Right.  Your ID and a -- your ID and a document

20   from Duke showing your address.

21   Q.  All right.  Perfect.

22        And then that second paragraph under

23   Section 2.3 says:

24        "Alternatively, the college or

25   university may voluntarily provide

226

1           election officials with a list of

2           students and their residential

3           addresses."

4                    Do you see that?

5    A.    Yes.

6    Q.    So is that something in your experience that the

7          county boards regularly ask universities for?

8    A.    Yes.

9    Q.    And is that something that universities usually

10         provide?

11   A.    It varies.  They don't uniformly provide it.

12                Oddly enough, there's different

13         interpretations among the colleges and

14         universities as to whether such lists are

15         covered by FERPA, but, yeah, I think often they

16         do provide a list of the students and their

17         residences to the county board of elections for

18         this purpose.

19   Q.    Okay.  And then the fourth sentence in this

20         paragraph that starts "The county board should

21         request that each college or university also

22         provide a template."

23                    Do you see that?

24   A.    Yes.

25   Q.    So the county boards also request that the

227

1    universities provide a template for how to input

2    these admittedly kind of difficult addresses

3    into the system; is that right?

4  A.   That's what we instruct them to do, yes.

5  Q.   And is the experience about the same, that some

6    universities will provide that and some will

7    not?

8  A.   I don't really know about that.  I only know

9    anecdotally the places where they have provided

10   it, and I'm thinking in particular of like

11   Durham, Guilford, and Wake where their directors

12   have informed me, you know, that those

13   universities and colleges have given them

14   examples of how to address mail to students.

15           ATTORNEY RIGGINS:  Okay.  We'll make

16   this a little simpler.  We'll mark this as

17   Exhibit 30.

18           (WHEREUPON, Exhibit 30 was marked for

19   identification.)

20  BY ATTORNEY RIGGINS:

21  Q.   Is this an email from Olivia McCall to you dated

22   December 4, 2023?

23  A.   Yes.

24  Q.   Okay.  And was Ms. McCall the director of the

25   Wake County Board of Elections at this time?

228

1    electronic system.  And the electronic system

2    should have a scanned copy as well of the voter

3    registration application that the voter signed

4    at the early voting location, so they would be

5    looking at those records.

6  Q.  So let's say there's a poll worker in

7    Wake County who maybe didn't enter the address

8    with the specifications and the attachment to

9    Ms. McCall's email.  And you can see that maybe

10   Metcalf Hall was left off of the mailer, but

11   it's on the form.  Is that an example of an

12   address error that would just receive an

13   immediate second card?

14  A.  Yes.  If it was identified as that was the issue

15   with the mailing, they could correct -- they can

16   correct that registration record in the system

17   and then generate a new voter registration card

18   to be sent to that voter.

19  Q.  Okay.  And then in VoterView, once that second

20   card is sent out, that applicant status is then

21   changed to active; is that right?

22  A.  Right.

23  Q.  Is VoterView in SEIMS or in SOSA?  What are we

24   entering that into?

25  A.  All of those are SEIMS.  So SEIMS is a whole

231

1    suite of software applications. VoterView is

2    one software application, SOSA is another

3    software application, all that are

4    interconnected within SEIMS.

5         VoterView is our primary voter

6    registration database, so it's sort of like the

7    end resting place of a voter registration

8    application that gets processed. And that's --

9    like, for example, when people get voter

10   registration lists, they're pulling it from

11   VoterView databases.

12   Q.   So a person decides to use SDR, they fill out

13   the application, poll worker enters it into SOSA

14   originally, and then by the time the cards are

15   coming back during canvass, that data has been

16   migrated to SEIMS such as the county board

17   workers can check the addresses?

18   A.   Do you mean has been migrated to VoterView?

19   Q.   VoterView in SEIMS?

20   A.   Both of them are SEIMS but yes.

21   Q.   I need a flowchart. Okay.

22        So they're in VoterView. And so when

23   it says in bullet 2 on page 6, "staff shall scan

24   the undeliverable card into SEIMS (VoterView),

25   that's the other place that they're looking?

1  A.    Right.  Undeliverable cards get scanned into

2        VoterView.  I thought it was VoterScan.

3             I just confirmed with staff that it's

4        VoterView.

5  Q.    All right.  And so the -- in VoterView, the

6        applicant's status is changed to active, right?

7  A.    Yes.

8  Q.    Okay.  Is that their registration status?

9  A.    Yes.

10 Q.    And that's for situations where the county board

11       has identified a clear address error; is that

12       right?

13 A.    Yes.

14 Q.    If there's no clear address error, then the cure

15       process begins; is that right?

16 A.    Correct.

17 Q.    Under section --

18 A.    There's -- sorry.  If the undeliverable comes

19       before the end of the second day before the

20       canvass.

21 Q.    Which is day 8?

22 A.    Day 8 of the canvass period.

23 Q.    Okay.  Perfect.

24             So under Roman Numeral i under

25       subsection B on page 7, I'm looking at the

                                                    233

*Mailing Address:*
P.O. Box 27255
Raleigh, NC 27611-7255

Phone: (919) 733-7173
Fax: (919) 715-0135

**KIM WESTBROOK STRACH**
*Executive Director*

# N⊙RTH CAROLINA
## State Board *of* Elections

---

## NUMBERED MEMO 2016-15

| | |
|---|---|
| **TO:** | County Boards of Elections |
| **FROM:** | Kim Strach, Executive Director |
| **RE:** | Same-day Registration during One-Stop Early Voting |
| **DATE:** | September 22, 2016 |

---

In June 2016, the U.S Court of Appeals for the Fourth Circuit rejected changes to elections laws that would have ended the process known as "same-day registration" at one-stop early voting locations under G.S. § 163-82.6A. This Numbered Memo provides guidance regarding the implementation of same-day registration processes for the early voting.

### 1. Statute Book Supplement

The 2016 edition of *Election and Related Laws and Rules of North Carolina* published by Thompson Reuters omits the now-active statute regarding early voting: G.S. § 163-82.6A. Please print and insert Appendix A at page 113 of the 2016 edition or at page 110 of the 2013 edition.

### 2. Proof of Residence

Same-day registrants must attest to their eligibility and provide proof of residence. A voter attests to her <u>eligibility</u> by completing a Voter Registration Application and affixing her signature under penalty of a Class I felony, after which she must prove her <u>residence</u> by presenting any of the following showing the voter's current name and current address:[1]

- North Carolina driver's license or other photo identification issued by a government agency;
- A copy of a current utility bill, bank statement, government check, paycheck, or other government document showing the voter's name and address;[2] OR
- Documents authorized and reviewed in a manner established by this agency.

### *(a) North Carolina driver's license or other government-issued photo identification*

Please be careful not to extend limitations that once governed photo identifications requirements under S.L. 2013-381 (HB-589), which do <u>not</u> apply to the forms of identification acceptable for purposes of same-day registration. Any government-issued photo identification card is acceptable—not only the types permitted under HB-589—so long as the card bears the registrant's current name and current address. The North

---

[1] *See* G.S. § 163-82.6A(b)(2).
[2] *See* G.S. § 163-166.12(a)(2).



EXHIBIT 8
WIT: *P.Cox*
DATE: 2/24/25
DENISE MYERS BYRD

NCSBE_00004

Carolina driver's license or other government-issued photo identification may be expired, so long as the card bears the registrant's current name and current address.

Standards previously established to evaluate the photograph on the identification card, while no longer required, remain instructive for an election official working to ensure that the photograph depicts the voter. Specifically, officials should make their "determination based on the totality of the circumstances, construing all evidence, along with any explanation or documentation voluntarily proffered . . . in the light most favorable" to the voter, while never rejecting a photo identification due to perceived differences due changes in weight; hair features; facial hair; complexion or skin tone; cosmetics or tattooing; apparel, including the presence or absence of eyeglasses; characteristics arising from a perceptible medical condition, disability, or aging; photographic lighting conditions or printing quality.[3]

### (b) Copy of a current utility bill, bank statement, government check, paycheck, or other government document showing the voter's name and address

Same-day registrants may prove their residency by presenting a copy of one of the above-referenced documents showing the voter's name and address.[4] The voter may present either the original document or a copy of that document in hardcopy or electronic format. A non-exhaustive list of acceptable documents is provided below:

- utility bill (including mobile service providers)
- private bank statement
- property tax statement issued by a governmental agency
- vehicle registration issued by a governmental agency
- government check, including any Social Security, employment, pension, benefit, or reimbursement check from any government entity
- government invoice, statement, or receipt
- public housing identification card, lease, or rental statement
- public educational institution documents, including any student card, transcript, tuition statement, invoice, or receipt issued by any public educational institution

- government insurance plan card, drug discount card, or drug prescription issued by a government care facility (including military facilities)
- discharge certificates, pardons, or other government documents issued in connection with the resolution of a criminal case, indictment, sentence, or other matter
- public transportation authority cards, invoices, receipts or correspondence
- public assistance or disability agency documents
- documents issued by any government shelter, or temporary/transitional housing facility
- drug prescription issued by a government doctor or other governmental health care provider

---

[3] *See* 08 NCAC 17.0101(c)(3).
[4] The Help America Vote Act of 2002 prescribed minimal proof of residency requirements, which the legislature has mirrored in state law. *See* 52 U.S.C. § 21083(b)(2)(A)(i)(II); *see also* G.S. § 163-166.12(a)(2).

NCSBE_00005

Our agency has determined that the document must have been issued no earlier than three (3) months before the date on which it is presented by the registrant in order to be considered "current". One-stop officials should count back three months from the date the voter appears to vote, not three months from Election Day.

### (c) Documents authorized and reviewed in a manner established by this agency.

It has come to our attention that practices may vary between counties regarding documents that may be used to prove the residency of college and university students who reside in campus housing. County officials must be uniform in their effort to comply with both federal and state election laws permitting students to register to vote from their campus residence, even if the student does not plan to remain indefinitely.[5]

Students living in a campus housing facility, such as a dormitory, may have particular difficulty producing a qualifying document displaying their on-campus address. To address this specific challenge, our agency has provided guidance authorizing the use of certain documents from the state's public and private schools, colleges, and universities.

A student residing in a campus housing facility may prove his residency by presenting, in either hardcopy or electronic format, any document originating with the educational institution and containing the student's name and on-campus housing address or facility name (e.g., "Jones Hall"). Acceptable documents may be issued by either public or private educational institutions and include correspondence, invoice, transcript, or a print-out or screen shot from any official registration or housing portal displaying the student's name and on-campus housing address.

Alternatively, the educational institution may voluntarily provide elections officials with a list of all students residing in a particular campus housing facility, which may be referenced in conjunction with a valid student photo identification card presented by the registrant. Any such list must be current at the time of use and must display individual facility information for each on-campus resident to ensure the student is properly registered at the appropriate address. Lists may not be used if they do not differentiate between residents at different campus housing facilities. Educational institutions may omit the names of individuals known to be ineligible based on citizenship status (e.g., exchange students holding student visas). The roster may be used as proof of a student's on-campus residency only if the registrant presents a valid student photo identification card showing the student's current name as it appears on the registration roster.

### 3. Verification of address by mail for same-day registrants.

The State Board of Elections is keenly aware that a number of same-day registrants fail mail verification *after* the county has completed its canvass. It is imperative that counties work diligently to issue verification mailings and log returned mail throughout the one-stop early voting period. The State Board plans to review mailing logs associated with same-day registrants, and it is likely independent organizations may also review relevant tables exported from the Statewide Electronic Information Management System as a matter of public record.

---

[5] *See generally* 52 U.S.C. §§ 10101 and 10701; G.S. § 163-57(11); *Symm v. United States*, 439 U.S. 1105 (1979); *Lloyd v. Babb*, 296 N.C. 416 (1979).

NCSBE_00006

# APPENDIX A

## § 163–82.6A. In-person registration and voting at one-stop sites

(a) Who May Register in Person. — In accordance with the provisions in this section, an individual who is qualified to register to vote may register in person and then vote at a one-stop voting site in the person's county of residence during the period for one-stop voting provided under G.S. 163–227.2. For purposes of this section, a one-stop voting site includes the county board of elections office, if that office is used for one-stop voting.

(b) Both Attestation and Proof of Residence Required. — To register and vote under this section, the person shall do both of the following:

    (1) Complete a voter registration form as prescribed in G.S. 163–82.4, including the attestation requirement of G.S. 163–82.4(b) that the person meets each eligibility requirement. Such attestation is signed under penalty of a Class I felony under G.S. 163–275(13); and

    (2) Provide proof of residence by presenting any of the following valid documents that show the person's current name and current residence address: a North Carolina drivers license, a photo identification from a government agency, or any of the documents listed in G.S. 163–166.12(a)(2). The State Board of Elections may designate additional documents or methods that suffice and shall prescribe procedures for establishing proof of residence.

(c) Voting With Retrievable Ballot. — A person who registers under this section shall vote a retrievable absentee ballot as provided in G.S. 163–227.2 immediately after registering. If a person declines to vote immediately, the registration shall be processed, and the person may later vote at a one-stop voting site under this section in the same election.

(d) Verification of Registration; Counting of Ballot. — Within two business days of the person's registration under this section, the county board of elections in conjunction with the State Board of Elections shall verify the North Carolina drivers license or Social Security number in accordance with G.S. 163–82.12, update the statewide registration database and search for possible duplicate registrations, and proceed under G.S. 163–82.7 to verify the person's address. The person's vote shall be counted unless the county board determines that the applicant is not qualified to vote in accordance with the provisions of this Chapter.

(e) Change of Registration at One–Stop Voting Site. — A person who is already registered to vote in the county may update the information in the registration record in accordance with procedures prescribed by the State Board of Elections, but an individual's party affiliation may not be changed during the one-stop voting period before any first or second partisan primary in which the individual is eligible to vote.

(f) Voting in Primary.—Any person who will become qualified by age to register and vote in the general election for which a partisan or nonpartisan primary is held, even though not so qualified by the date of the primary, may register for the primary and general election prior to the primary and then vote in the primary and general election after being registered in accordance with the provisions of this section.

NCSBE_00007



P.O. Box 27255
Raleigh, NC 27611
(866) 522-4723
www.ncsbe.gov

## Numbered Memo 2023-05

| | |
|---|---|
| **TO:** | County Boards of Elections |
| **FROM:** | Karen Brinson Bell, Executive Director[1] |
| **RE:** | Same-Day Registration |
| **DATE:** | December 8, 2023 (updated January 29, 2024) |

This numbered memo provides guidance about same-day registration in accordance with the changes made by Session Law 2023-140 (SB 747). It replaces Numbered Memo 2016-15 and Numbered Memo 2012-20. It has been updated to comply with a court order which requires a same-day registrant whose address verification card is returned as undeliverable to get notified and have an opportunity to remedy that address verification failure.[2] That notice and remedy ("cure") process is discussed in Section 4 of this memo.

### 1. Requirements for Same-Day Registration

During the early voting period, an individual may register and vote at any early voting site in the county in which they reside. To do so, the individual must:

1. Present a "HAVA document" with the individual's current name and residence address;
2. Present acceptable photo ID; and
3. Complete an ~~early voting~~ voter registration application.

---

[1] This memo is issued under the authority delegated by the State Board to the executive director pursuant to G.S. § 163-22(p).

[2] See Voto Latino v. Hirsch, No. 1:23-cv-861, Doc. 68 (M.D.N.C. Jan. 21, 2024), which determined the procedure in G.S. § 163-82.6B(d) for rejecting a registration and removing a ballot for a same-day registrant whose mail verification was returned as undeliverable before canvass violates the federal Constitution ~~without~~ because the law did not require notice to the voter and an opportunity to be heard. The State Board may adopt interim rules and regulations if a court determines an election law is invalid or unenforceable. See G.S. § 163-22.2.

| Formatted: Don't keep lines together |
|---|
| Formatted: Font: 11 pt |
| Formatted: Font: 11 pt |
| Formatted: Hyperlink, Font: 11 pt |
| Formatted: Font: 11 pt |
| Formatted: Line spacing: Multiple 1.19 li, Don't hyphenate |
| Formatted: Font: 11 pt |
| Formatted: Font: 11 pt |

EXHIBIT _23_
WIT: _P. Cox_
DATE: _2/24/25_
DENISE MYERS BYRD

NCSBE_002920

An individual who registers to vote during early voting will vote a retrievable ballot immediately after registering to vote.[3]

## 2. Proof of Voting Residence

A same-day registrant must present a "HAVA document" showing the registrant's current name and residence address in order to register and vote. A "HAVA document" is defined as one of the following documents:[4]

- A current utility bill
- A current bank statement
- A current government check
- A current paycheck
- Another current government document
- A current document issued from the institution that issued the photo ID being presented by the voter

The registrant may present either the original document or a copy of that document in hardcopy or electronic format, including by displaying the document on an electronic device.

### 2.1 What Makes a Document "Current"?

In order to be considered "current," the document must be unexpired, if it has an expiration date. **If the document does not have an expiration date, the issuance date must be within six months of the date it is presented to the election official.** For example, if the voter presents to vote on October 29, the issuance date must be between April 29 and October 29 of that year.

An end date for a pay period or billing period is not an expiration date. To determine whether such a document is current, refer to its issuance date. In the absence of an issuance date or expiration date, for a document to be considered current, there must be other time-based

---

[3] G.S. § 163-82.6B(b) (S.L. 2023-140, sec. 10(a)). If a person presents a valid registration but declines to vote, the registration shall be processed immediately, and the person may later vote at a one-stop site in the same election. Although the new statute does not directly address this situation, it does require that same-day registrations be processed. There is no authority to hold or refuse to process a same-day registration for a registrant who declines to vote at the time of registration. There is also no authority to refuse to allow a valid registrant to later vote at a one-stop early voting site, using a retrievable ballot that can later be removed from the count if the same-day registration fails mail verification, as explained further in the memo. The person may not vote on Election Day for that election.

Formatted: Don't keep lines together

[4] G.S. § 163-82.6B(e) (S.L. 2023-140, sec. 10(a)).

2

| From: | Cox, Paul |
|---|---|
| To: | Lisa Stifler (Sen. Dan Blue); Fred Aikens (Sen. Dan Blue) |
| Cc: | Bell, Karen B; Wakely, Lindsey |
| Subject: | FW: SB 747 suggestions |
| Date: | Tuesday, June 20, 2023 12:54:09 PM |
| Attachments: | Suggested SDR language in SB 747.docx |
| | 2023-06-15 SDR_counts_and_verification_failure.xlsx |

FYI, Lisa and Fred, re our latest recommendations on SB 747. I already shared the proposed alternative for same-day registration with Sen. Bode, who called me yesterday.

Paul

**From:** Cox, Paul
**Sent:** Tuesday, June 20, 2023 12:53 PM
**To:** 'Joshua Yost (President Pro Tem's Office)' <Joshua.Yost@ncleg.gov>;
'Brent.Woodcox@ncleg.gov' <Brent.Woodcox@ncleg.gov>
**Cc:** Wakely, Lindsey <Lindsey.Wakely@ncsbe.gov>
**Subject:** RE: SB 747 suggestions

Josh and Brent,

Thanks again for taking the time to review our input and provide to the bill sponsors. Below are some suggestions for the version of the bill that was reported out of committee. Some of these were raised earlier, but not all.

1. **Same-day registration / provisional voting (Sec. 6):** We're concerned with the administrability of the multiple-ID provisions and the likelihood that it will make a lot of the traditional same-day registration population less likely to be able to successfully register and vote. We've taken a stab at language which would directly address what we understand to be the problem: same-day registrants who fail mail verification. Under this proposal, the registrant would get one verification mailing and, if that is returned by the day before canvass, the county board would be instructed to retrieve and discount the ballot. The advantages of this approach are: (1) it would be familiar for county boards and poll workers to administer; (2) it would shorten the verification period so that the county board could determine address verification for all registrants by the canvass without creating new processes for visiting county board offices to sort out IDs/documents; and (3) it would streamline the process to discount a ballot for a registrant who fails mail verification, to avoid the "challenge" issue with the court decision from 2018. And importantly, it would directly address the population that fails mail verification, which is a fairly small population of same-day registrants (1-2%, per attached stats), and would not lead to outsized collateral consequences on the population of same-day registrants who would pass mail verification under current law.



EXHIBIT 25
WIT: P. Cox
DATE: 2/24/25
DENISE MYERS BYRD

2. **One-stop worker allocation (Sec. 17):** We've spent some time discussing with county directors how this provision would play out on the ground. There's a significant concern with how the provision is drafted that it would make it very difficult to staff all days of early voting, if the pool of workers is limited to appointed Election Day precinct officials and there's a requirement that 3 such precinct officials attend each one-stop site at all times. Lots of Election Day workers have full-time jobs, making it sometimes difficult to draw on them for enough one-stop shifts to make it work. This issue could be resolved by including a "where possible" clause, like that which exists throughout the Election Day precinct official statute, GS 163-41(c)–(d). So subsection (a1) of Section 17.(a) of the bill would read: "At each one-stop voting site other than the county board of elections office, <u>where possible</u> precinct officials shall be allocated according to all of the following: . . . ." The county boards are accustomed to making all of their best efforts to carry out the allocation requirements for Election Day poll workers before resorting to alternative options, and they would continue to do so here. But there needs to be some flexibility to account for the on-the-ground challenges of complying with these new restrictions on one-stop staffing.

3. **Ensure a legible witness signature can substitute for a missing printed name (Sec. 21.(a)):** The State Board already requires a printed witness name, and this bill would make that statutory. But we recommend that the statute allow for the existing administrative practice of allowing the absentee container envelope to be approved if the witness can still be identified through a legible signature, even if the printed name is not included. Without such a provision, ballots could be discarded based on an inconsequential distinction that is not directly the fault of the voter. We recommend adding the following to the new GS 163-231(a)(5): "<u>Failure to include a printed witness name does not invalidate the application and certificate if the witness's signature is legible.</u>"

4. **Signature verification (Sec. 21):** We are grateful that the bill sponsors understood the need to have time to implement this over the next year. Per my earlier email, we'd like to reiterate that this is a significant cost for the State and/or county boards. Our current estimate is at least $16,500,000 million in the first year, followed by $3,500,000 to $4,000,000 each following year. We hope that there can be some method to ensure that such funds would be available to roll this out in the coming months. With procurement, IT development, training, and rollout, the need to expend funds for this purpose will arrive very soon for it to be ready for the November 2024 general election.

5. **Two-factor authentication (Sec. 22):** We're still concerned about how this could be implemented as written, which requires the authentication of the "executed absentee ballot" thorough two factors. Presumably this would entail authenticating a ballot once it has left the hand of the voter (i.e., "executed"), which raises the questions of who would be participating in the authentication of the ballot and by what means. We remain concerned that many voters in the absentee-by-mail voting population may not have the wherewithal to use a technology-based authentication procedure—especially

the elderly and disabled. We recommend the sponsors consider whether this additional requirement would be necessary, given the PII that a voter must provide upfront to authenticate their identity before receiving a ballot, the two-witness authentication procedure for the ballot itself, the signature verification that will be added to the ballot itself, and the photo ID requirement that will now be part of the process of approving the ballot.

6. **Removing uniformity from list maintenance (Sec. 30.(e))**: We're concerned that the bill strikes the requirement that voter list maintenance practices be uniform across the state. This could run into problems with federal law, namely the NVRA, which requires the designated state official, the Executive Director of the State Board, to be responsible for statewide compliance with federal law, which includes a requirement to implement a "general program" to remove ineligible voters. You could also run into *Bush v. Gore* equal protection issues if voters are being removed (or not removed) differently in one county versus another. We recommend keeping the requirement that the State Board adopt a "uniform program" for list maintenance, and for the county boards to perform list maintenance "in accordance with this section and with the program adopted by the State Board."

7. **Allowing documented proof of citizenship to stop removal process short of a public hearing (Sec. 30.(e))**: If a voter has documentation proving they are eligible to remain on the voter rolls on account of their US citizenship, we don't recommend requiring such a voter to proceed to a public hearing. So we recommend revising the new GS 163-82.14(c1)(2)b to add the following at the end: "If the person provides the county board of elections federal documentation of citizenship at any time prior to the start of a challenge hearing, no challenge hearing shall proceed and the process to remove the person's name from the registration records shall be cancelled."

8. **Flexibility on Photo ID Messaging (Sec. 31)**: The State and county boards are engaged in a multifaceted communications plan to ensure the word is getting out on photo ID before municipal voting and before the next general election cycle. This includes traditional methods of communication like a text-heavy webpage or mailing, but also more up-to-date methods of communication like social media and (hopefully, with funding) web advertisements, radio and TV PSAs, and billboards. We are also working on palm-cards and other short-format messaging efforts. Prescribing a lengthy message for "any notice" given to a voter on photo ID could make an outreach campaign less effective. We recommend striking this provision, since the State Board's existing messaging and any future messaging will certainly communicate the law's requirements, and an effective outreach campaign recognizes that a different message format may be called for in different media.

As always, we're ready to discuss with you or the bill sponsors at any time.

NCSBE_Public Records_0000287

Best regards,


**Paul Cox**
General Counsel
NORTH CAROLINA STATE BOARD OF ELECTIONS
RALEIGH, NC 27611
919.814.0700
www.ncsbe.gov




**From:** Cox, Paul
**Sent:** Wednesday, June 14, 2023 4:15 PM
**To:** Joshua Yost (President Pro Tem's Office) <Joshua.Yost@ncleg.gov>; Brent.Woodcox@ncleg.gov
**Cc:** Wakely, Lindsey <Lindsey.Wakely@ncsbe.gov>
**Subject:** RE: SB 747 suggestions

Hey Josh, thanks again for chatting this afternoon. Below are the items we wanted to raise
with the PCS for SB 747 and recommend revisions on:

1. **Same-day registration / provisionals (Sec. 6):** we're afraid that requiring the photo ID
   be a DMV-issued ID (the only one with address) and that it be updated to a person's
   current address, will cut out an awful lot of same-day registrants. This is because to
   have a DMV ID with an updated address, that person would have been prompted by the
   DMV to update their voter registration as well. So that reduces the likelihood that
   someone with an updated address on their DMV card will need to same-day register in
   the first place. This will also be very difficult for military personnel, students, and low-
   income people/renters who move frequently. A better approach would be to require
   the HAVA document, as we currently do for confirming same-day registrants' addresses
   at the polls, and then perhaps provide a method to retrieve a ballot that fails the first
   mail verification before canvass, and not involve a challenge procedure—just instruct
   the county boards to retrieve and disapprove the ballot.

2. **Same-day registration provisional cure (Sec. 6):** I suspect the deadline for the voter to
   return with two HAVA documents or photo ID and a HAVA document is supposed to be
   the day *before* canvass, not the day of canvass. Canvass occurs at 11 am by law and at
   that point, the board should have received everything it needs to determine whether to
   count provisional ballots. We would recommend revising to make the deadline the end
   of the day before canvass.

NCSBE_Public Records_0000288

3. **Two-factor authentication (Sec. 22)**: we discussed this, so I won't go too deeply, but having a technological authentication procedure for the ballot request is going to be very difficult for a lot of the absentee voting population to deal with. A lot of absentee voters are elderly, disabled, living in assisted living facilities, etc. Recall that we have authentication that occurs on the front end: the need to provide DOB plus SSN or DL— these are PII details that are not readily available to someone who might try to impersonate a voter.

4. **Absentee cure deadline (Sec. 26)**: It looks like the statutory reference for the cure deadline in Sec. 26 needs to be updated. It refers to GS 163-231(b), but it should refer to GS 163-230.1(e) for the deadline.

5. **Election Day absentee meeting (Sec. 26)**: there's no reason to require the county board, in the amended GS 163-234(2), to extend its absentee meeting past 7:30 on Election Day to allow for absentee ballot challenges to be received. The board cannot hear those challenges until the canvass, and the board need not be in session to receive the challenge. The office, which will necessarily be open at that time on Election Day already, can receive those challenges. And keeping the meeting going at the close of polls diverts board members and staff from critical tasks related to closing the polls and ensuring supplies and results are correctly returned. So we recommend removing this provision.

6. **Removing uniformity from list maintenance (Sec. 30)**: we're not sure if the bill is specifically intending to strike the requirement that voter list maintenance practices be uniform across the state, but if that is intended, we could run into problems with federal law, namely the NVRA, which requires the designated state official, the Executive Director of the State Board, to be responsible for statewide compliance with federal law, which includes a "general program" to remove ineligible voters. You could also run into *Bush v. Gore* equal protection issues if voters are being removed (or not removed) differently in one county versus another. We recommend keeping the requirement that the State Board adopt a "uniform program" for list maintenance, and for the county boards to perform list maintenance "in accordance with this section and with the program adopted by the State Board."

7. **Noncitizen list maintenance records (Sec. 30)**: We recommend revising the language on page 21, lines 29-30 to read ". . . except as <u>provided for in State or federal law.</u>~~prohibited by State and federal statute.~~" This ensures that exceptions to public records, for example for criminal investigative records, are included; they are not technically *prohibitions* on disclosure. It would also permit similar federal law protections that are developed through case law and are not statutory in nature. *E.g.*, *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 267 (4th Cir. 2021).

8. **Effective date for list maintenance revisions (Sec. 30)**: We recommend revising this to

be July 1, 2024, since April 1, 2024 could be in the middle of voting if a second primary is triggered, making it very difficult to make changes, especially in SEIMS.

9. **Revise photo ID message requirement (Sec. 31)**: We recommend revising this provision to be consistent with GS 163-166.16(d) and SL 2018-144, sec. 1.5(a)(1), which requires the State Board to communicate, "All registered voters will be allowed to vote with or without a photo ID card. When voting in person, you will be asked to present a valid photo identification card. If you do not have a valid photo ID card, you may obtain one from your county board of elections prior to the election, through the end of the early voting period. If you do not have a valid photo ID card on election day, you may still vote and have your vote counted by signing an affidavit of reasonable impediment as to why you have not presented a valid photo ID."

Let me know if y'all want to discuss any of these points. I also want to reiterate the issue with the appointment (and presumably removal of) county directors of elections in the PCS for SB 749. Involving county boards of commissioners has the potential to inject political influence over what should be a nonpartisan professional trusted to administer elections, and of course, county commissioners are on the ballot. So I would recommend carefully considering before going down that path.

Best,

**Paul Cox**
General Counsel
NORTH CAROLINA STATE BOARD OF ELECTIONS
RALEIGH, NC 27611
919.814.0700
www.ncsbe.gov

**From:** Cox, Paul
**Sent:** Monday, June 12, 2023 11:23 PM
**To:** Joshua Yost (President Pro Tem's Office) <Joshua.Yost@ncleg.gov>; Brent.Woodcox@ncleg.gov
**Cc:** Wakely, Lindsey <Lindsey.Wakely@ncsbe.gov>
**Subject:** RE: SB 747 suggestions

My apologies -- Please use this version. I realized I forgot to include a few necessary words in the proposed revisions to the section 1: "*the day before* election day."

**From:** Cox, Paul

**Sent:** Monday, June 12, 2023 11:19 PM
**To:** Joshua Yost (President Pro Tem's Office) <Joshua.Yost@ncleg.gov>; 'Brent.Woodcox@ncleg.gov' <Brent.Woodcox@ncleg.gov>
**Cc:** Wakely, Lindsey <Lindsey.Wakely@ncsbe.gov>
**Subject:** SB 747 suggestions

Hi Brent and Josh,

It was nice connecting with you on Friday to talk through some suggestions on the administrability of SB 747.

As we discussed, I put together some suggested language revisions on some of the issues we discussed. I highlighted in yellow proposed changes on top of changes in the bill, to avoid confusion with the underlining. Please feel free to reach out with questions or if you want to discuss language. My direct is 919-814-0717.

Best,

**Paul Cox**
General Counsel
NORTH CAROLINA STATE BOARD OF ELECTIONS
RALEIGH, NC 27611
919.814.0700
www.ncsbe.gov

Replace Section 6 with the following:

   **SECTION 6.(a)** Article 7A of Chapter 163 of the General Statutes is amended by adding a new section to read:

"**§ 163-82.6B. Same-day registration.**

   (a) Notwithstanding any provision of law to the contrary, an individual who is qualified to register to vote may register in person and then vote at a one-stop voting site in the individual's county of residence during the period for one-stop voting provided under G.S. 163-227.2.

   (b) Both Attestation and Proof of Residence Required. -- To register and vote under this section, the person shall do both of the following:

     (1) Complete a voter registration form as prescribed in G.S. 163-82.4, including the attestation requirement of G.S. 163-82.4(b) that the person meets each eligibility requirement. Such attestation is signed under penalty of a Class I felony under G.S. 163-275(13); and

     (2) Provide proof of residence by presenting any of the following valid documents that show the person's current name and current residence address: a North Carolina drivers license, a photo identification from a government agency, or any of the documents listed in G.S. 163-166.12(a)(2). The State Board of Elections may designate additional documents or methods that suffice and shall prescribe procedures for establishing proof of residence.

     (3) Present photo identification in accordance with G.S. 163-166.16.

   (c) Voting With Retrievable Ballot. - A person who registers under this section shall vote a retrievable absentee ballot as provided in G.S. 163-227.2 immediately after registering.

   (d) Verification of Registration; Counting of Ballot. -- Within two business days of the person's registration under this section, the county board of elections in conjunction with the State Board of Elections shall verify the North Carolina drivers license or Social Security number in accordance with G.S. 163-82.12, update the statewide registration database and search for possible duplicate registrations, and proceed under G.S. 163-82.7 to verify the person's address. The person's vote shall be counted unless the county board determines that the applicant is not qualified to vote in accordance with the provisions of this Chapter. Notwithstanding any other provision of this Chapter to the contrary, if the Postal Service returns as undeliverable the first notice required under G.S. 163-82.7(c) before the end of the business day before canvass, the county board shall not register the applicant and shall retrieve the applicant's ballot and remove the ballot's votes from the official count."

   **SECTION 6.(b)** This section becomes effective January 1, 2024, and applies to elections held on or after that date.

---

**Commented [CP1]:** Sections (a) through (c) are essentially current law, due to the old SDR law having been put back into place when the Fourth Circuit invalidated the 2013 law that did away with SDR.

**Commented [CP2]:** This would be a substantive change from current law. We would still interpret the law as requiring photo ID even if this weren't there, but this would make it plainly stated as a requirement for an SDR ballot to count.

**Commented [CP3]:** This is the main substantive change to current law which would address the concern with registrants not having been verified. There should be enough time between the last day of early voting and the county canvass—a period of 12 days—for any undeliverable mailings to be returned to the county board. Under this proposal, you wouldn't then have to send another mailing and wait for it to return, as we do under current law. So the result would be that you would capture everyone who might fail mail verification after same-day registering under current law, but, importantly, you would not trip up a lot of voters who would ordinarily pass mail verification under current law but who would not have easy access to all the documentation required by the latest draft of SB 747 (students, military, renters and low income).

**Commented [CP4]:** Having a Jan 1 effective date would be much more manageable. If the drafters went with this simpler proposal, rather than the provisional route with multiple ID scenarios, we could probably implement before the municipal elections. But if we stick with the provisional voting with multiple ID scenarios, that will take some time to code it into our election management software, at a time when we're already scrambling to code the photo ID changes before municipal voting.

NCSBE_Public Records_0000292

DOCUMENT PRODUCED IN NATIVE FORMAT

NCSBE_Public_Records_0000293

| county_id | county_name | election_dt | sdr_ct | bad_address_ct |
|---|---|---|---|---|
| 1 | ALAMANCE | 11/8/2022 | 611 | 14 |
| 2 | ALEXANDER | 11/8/2022 | 108 | 1 |
| 3 | ALLEGHANY | 11/8/2022 | 39 | 0 |
| 4 | ANSON | 11/8/2022 | 59 | 0 |
| 5 | ASHE | 11/8/2022 | 56 | 0 |
| 6 | AVERY | 11/8/2022 | 45 | 1 |
| 7 | BEAUFORT | 11/8/2022 | 97 | 1 |
| 8 | BERTIE | 11/8/2022 | 29 | 0 |
| 9 | BLADEN | 11/8/2022 | 125 | 3 |
| 10 | BRUNSWICK | 11/8/2022 | 656 | 7 |
| 11 | BUNCOMBE | 11/8/2022 | 1308 | 21 |
| 12 | BURKE | 11/8/2022 | 174 | 0 |
| 13 | CABARRUS | 11/8/2022 | 608 | 8 |
| 14 | CALDWELL | 11/8/2022 | 197 | 0 |
| 15 | CAMDEN | 11/8/2022 | 16 | 0 |
| 16 | CARTERET | 11/8/2022 | 314 | 0 |
| 17 | CASWELL | 11/8/2022 | 40 | 0 |
| 18 | CATAWBA | 11/8/2022 | 386 | 4 |
| 19 | CHATHAM | 11/8/2022 | 418 | 0 |
| 20 | CHEROKEE | 11/8/2022 | 64 | 0 |
| 21 | CHOWAN | 11/8/2022 | 38 | 0 |
| 22 | CLAY | 11/8/2022 | 43 | 0 |
| 23 | CLEVELAND | 11/8/2022 | 178 | 3 |
| 24 | COLUMBUS | 11/8/2022 | 207 | 5 |
| 25 | CRAVEN | 11/8/2022 | 243 | 3 |
| 26 | CUMBERLAND | 11/8/2022 | 665 | 18 |
| 27 | CURRITUCK | 11/8/2022 | 49 | 0 |
| 28 | DARE | 11/8/2022 | 76 | 0 |
| 29 | DAVIDSON | 11/8/2022 | 412 | 7 |
| 30 | DAVIE | 11/8/2022 | 121 | 2 |
| 31 | DUPLIN | 11/8/2022 | 73 | 2 |
| 32 | DURHAM | 11/8/2022 | 2458 | 44 |
| 33 | EDGECOMBE | 11/8/2022 | 118 | 1 |
| 34 | FORSYTH | 11/8/2022 | 1383 | 9 |
| 35 | FRANKLIN | 11/8/2022 | 301 | 2 |
| 36 | GASTON | 11/8/2022 | 527 | 0 |
| 37 | GATES | 11/8/2022 | 36 | 0 |
| 38 | GRAHAM | 11/8/2022 | 14 | 0 |
| 39 | GRANVILLE | 11/8/2022 | 223 | 3 |
| 40 | GREENE | 11/8/2022 | 40 | 0 |
| 41 | GUILFORD | 11/8/2022 | 1635 | 23 |
| 42 | HALIFAX | 11/8/2022 | 85 | 0 |
| 43 | HARNETT | 11/8/2022 | 443 | 4 |
| 44 | HAYWOOD | 11/8/2022 | 138 | 0 |
| 45 | HENDERSON | 11/8/2022 | 400 | 3 |
| 46 | HERTFORD | 11/8/2022 | 35 | 1 |

| | | | |
|---|---|---|---|
| 47 HOKE | 11/8/2022 | 204 | 0 |
| 48 HYDE | 11/8/2022 | 3 | 0 |
| 49 IREDELL | 11/8/2022 | 495 | 1 |
| 50 JACKSON | 11/8/2022 | 403 | 7 |
| 51 JOHNSTON | 11/8/2022 | 645 | 1 |
| 52 JONES | 11/8/2022 | 24 | 0 |
| 53 LEE | 11/8/2022 | 137 | 0 |
| 54 LENOIR | 11/8/2022 | 163 | 5 |
| 55 LINCOLN | 11/8/2022 | 359 | 2 |
| 56 MACON | 11/8/2022 | 74 | 4 |
| 57 MADISON | 11/8/2022 | 134 | 19 |
| 58 MARTIN | 11/8/2022 | 41 | 0 |
| 59 MCDOWELL | 11/8/2022 | 116 | 2 |
| 60 MECKLENBURG | 11/8/2022 | 3308 | 2 |
| 61 MITCHELL | 11/8/2022 | 36 | 1 |
| 62 MONTGOMERY | 11/8/2022 | 63 | 0 |
| 63 MOORE | 11/8/2022 | 276 | 2 |
| 64 NASH | 11/8/2022 | 287 | 4 |
| 65 NEW HANOVER | 11/8/2022 | 886 | 46 |
| 66 NORTHAMPTON | 11/8/2022 | 32 | 3 |
| 67 ONSLOW | 11/8/2022 | 405 | 8 |
| 68 ORANGE | 11/8/2022 | 1328 | 17 |
| 69 PAMLICO | 11/8/2022 | 61 | 0 |
| 70 PASQUOTANK | 11/8/2022 | 156 | 0 |
| 71 PENDER | 11/8/2022 | 289 | 7 |
| 72 PERQUIMANS | 11/8/2022 | 39 | 0 |
| 73 PERSON | 11/8/2022 | 127 | 2 |
| 74 PITT | 11/8/2022 | 553 | 10 |
| 75 POLK | 11/8/2022 | 90 | 0 |
| 76 RANDOLPH | 11/8/2022 | 295 | 0 |
| 77 RICHMOND | 11/8/2022 | 48 | 1 |
| 78 ROBESON | 11/8/2022 | 243 | 15 |
| 79 ROCKINGHAM | 11/8/2022 | 252 | 3 |
| 80 ROWAN | 11/8/2022 | 337 | 0 |
| 81 RUTHERFORD | 11/8/2022 | 142 | 3 |
| 82 SAMPSON | 11/8/2022 | 96 | 3 |
| 83 SCOTLAND | 11/8/2022 | 101 | 1 |
| 84 STANLY | 11/8/2022 | 160 | 2 |
| 85 STOKES | 11/8/2022 | 127 | 0 |
| 86 SURRY | 11/8/2022 | 150 | 1 |
| 87 SWAIN | 11/8/2022 | 48 | 5 |
| 88 TRANSYLVANIA | 11/8/2022 | 91 | 0 |
| 89 TYRRELL | 11/8/2022 | 18 | 0 |
| 90 UNION | 11/8/2022 | 749 | 0 |
| 91 VANCE | 11/8/2022 | 116 | 6 |
| 92 WAKE | 11/8/2022 | 4014 | 10 |
| 93 WARREN | 11/8/2022 | 75 | 1 |

| | | | | |
|---|---|---|---|---|
| 94 | WASHINGTON | 11/8/2022 | 20 | 0 |
| 95 | WATAUGA | 11/8/2022 | 495 | 1 |
| 96 | WAYNE | 11/8/2022 | 265 | 2 |
| 97 | WILKES | 11/8/2022 | 95 | 0 |
| 98 | WILSON | 11/8/2022 | 194 | 4 |
| 99 | YADKIN | 11/8/2022 | 52 | 0 |
| 100 | YANCEY | 11/8/2022 | 81 | 0 |

| | |
|---|---|
| 2016 | 0.017886615 |
| 2018 | 0.015241098 |
| 2020 | 0.018491137 |
| 2022 | 0.011403074 |

| From: | Cox, Paul |
|---|---|
| To: | Rep. Pricey Harrison; Allison.Dahle@ncleg.gov; Allen.Buansi@ncleg.gov |
| Cc: | Wakely, Lindsey |
| Subject: | Fwd: [External] S.B. 747 |
| Date: | Sunday, August 13, 2023 11:11:46 AM |
| Attachments: | SB 747 House PCS 081333.pdf |

Reps. Harrison, Dahle, and Buansi,

I wanted to be sure you got a copy of our suggested revisions and feedback to house staff on the PCS for SB747, since there is limited time to propose revision before Tuesday. Unfortunately, we're tied up today with a board meeting and until Tuesday with our state elections conference in Concord. I can make myself available however if you need to discuss anything. Cell is 202-714-8864. Lindsey plans to attend Tuesday's committee meeting as well.

Paul Cox
General Counsel
NC State Board of Elections

**From:** Cox, Paul
**Sent:** Sunday, August 13, 2023 7:53:54 AM
**To:** Kenan Drum (House Rules Counsel) <Kenan.lw.Drum@ncleg.gov>
**Cc:** Wakely, Lindsey <Lindsey.Wakely@ncsbe.gov>; Erika Churchill (Legislative Analysis) <Erika.Churchill@ncleg.gov>; Sam Hayes (Speaker Moore's Office) <Sam.Hayes@ncleg.gov>
**Subject:** RE: [External] S.B. 747

Kenan, Sam, and Erika,

Attached is our feedback so far. It may appear more lengthy than it really is, since I'm also using the document to help explain to staff what the various provisions in the bill do. Our specific feedback is in the color-coded comments in the last column. Thanks so much for considering these suggestions.

I'd be happy to discuss any of these as we move forward. I'm planning to confer with some county directors today and may have some additional thoughts on a few areas that I know they will focus on, such as early voting official appointments, same-day registration, and observer procedures and rules.

We have our statewide elections conference in Concord starting this afternoon and going through Tuesday, so I will not be able to make Tuesday's committee meeting, but Lindsey will be there, and I am available by phone as needed during the conference (cell: 202-714-8864).

Thanks again,

**Paul Cox**

EXHIBIT 28
WIT: P. Cox
DATE: 2/24/25
DENISE MYERS BYRD

General Counsel
Nᴏʀᴛʜ Cᴀʀᴏʟɪɴᴀ Sᴛᴀᴛᴇ Bᴏᴀʀᴅ ᴏꜰ Eʟᴇᴄᴛɪᴏɴꜱ
Rᴀʟᴇɪɢʜ, NC 27611
919.814.0700
www.ncsbe.gov

**From:** Kenan Drum (House Rules Counsel) <Kenan.lw.Drum@ncleg.gov>
**Sent:** Friday, August 11, 2023 4:59 PM
**To:** Cox, Paul <paul.cox@ncsbe.gov>
**Cc:** Erika Churchill (Legislative Analysis) <Erika.Churchill@ncleg.gov>; Sam Hayes (Speaker Moore's Office) <Sam.Hayes@ncleg.gov>
**Subject:** [External] S.B. 747

**CAUTION:** External email. Do not click links or open attachments unless verified. Report suspicious emails with the Report Message button located on your Outlook menu bar on the Home tab.

Good afternoon Paul,

Please see the attached latest version of S.B. 747 to be considered by the House Elections Committee next week.  Please let us know if you have any feedback.

Thanks!

*Kenan L.W. Drum*
*Counsel, House Rules Committee*
*Office of Chairman Destin C. Hall*
*North Carolina House of Representatives*

SB 747 – House Elections Committee proposed PCS

State Board of Elections review

| Section | Summary | Concerns/Clarifications/Suggestions/Budget impact |
|---|---|---|
| 1 | Moves early voting statutes from the "Absentee Voting" article to the "Voting" Article. | This, along with other significant revisions to Ch. 163, will require procuring new election law reference books for SBE and CBEs; significant reworking of legal guidance materials (legal index, numbered memos, etc.) |
| 2 | Requires SBE to ensure ballots, results tapes, and executed ballot applications are preserved for 22 months | None |
| 3 | Conforming change re converting one-stop to "early voting" | None |
| 4 | Requires CBE to retain ballots, results tapes, and executed ballot applications for 22 months; Bans private monetary or in-kind donations to county boards for conducting elections or employing temp workers—exception for voting sites | Possible CBE budgetary impact for in-kind donations |
| 5 | Bans private monetary or in-kind donations to county government for conducting elections or employing temp workers—exception for voting sites | Possible CBE budgetary impact for in-kind donations |
| 6 | Conforming change re converting one-stop to "early voting" | None |
| 7 | Redrafts the observer statute. Observer lists submitted by noon the business day before the observer will serve. Chief judge can verify observer identity and SBE can require badges. Limit of 3 observers per party at once. All observers subject to 4-hour shift rule. County board (not chair) or chief judge may challenge observer appointment "for good cause." Allows observers to listen to conversations between voter and election official if "related to election administration." Allows observers to move freely about the voting place, including the curbside area. May leave and reenter voting enclosure. May witness any "setup and teardown procedures at the voting place." | Day-before submission of lists will cause a hassle for county board staff, especially if new lists are coming in daily during early voting and it needs to get out to multiple sites in the county. And if new statewide, countywide, and site-specific lists were submitted by the parties on a daily basis, it would be very difficult for officials to manage during the already-busy voting period. Suggest permitting submission of one list prior to early voting, one update before the midpoint of early voting, and one update before election day—with exception for substitutions in the event of an emergency. Need clarification on statewide at-large observers: can serve in any voting place, but the ED is supposed to |

NCSBE_Public Records_0001118

| Section | Summary | Concerns/Clarifications/Suggestions/Budget impact |
|---|---|---|
| | Prohibits observers looking at or recording a voter's marked ballot, impeding voter entering or exiting voting place, inhibiting or interfering with election official performing duties (including transport of sealed ballot boxes), electioneering, making/receiving phone calls in the enclosure. <br><br> Permits observer to take photos inside the voting place before voting begins and after voting concludes, provided it does not impair election officials—calls for SBE rulemaking on this. <br><br> Chief judge may remove observer for engaging in "prohibited behavior under this section" or for "good cause, which shall include evidence that the observer could impact the conduct of the election." <br><br> Requires warning before removing an observer "whenever possible," and requires chief judge to immediately notify county director, who notifies the relevant party to allow replacement. <br><br> Observer denied ability to serve as observer may appeal to SBE within 24 hours of denial. <br><br> Allows observers to get lists of voters three times per day, intervals to be set by SBE and at least 1 hour apart. <br><br> Runner lists are provided the same way as observers (1 business day before serving), and may get voter lists in the same manner as observers. | submit the list to each "affected county," suggesting they are supposed to be designated to particular counties. <br> Suggest in (e) an observer may not serve in the same election during which serve as an election official. <br> Need clarification on how "good cause" challenges to observers are to be decided. Bill says sent to SBE. <br> Suggest keeping that determination local, and permitting SBE to do a similar "good cause" challenge for statewide observers. <br> Suggest replacing "evidence" with "grounds to believe/conclude" in (f), since we will not be in a judicial/quasijudicial proceeding or have access to a notary to produce affidavits. <br> Suggest restricting (g)(3) re moving "freely about" to not include the area where voters are marking their ballots (i.e., voting booths). Although observers would be prohibited from looking at voted ballots, the tension between them now being able to be in the voting booth area with the prohibition on looking at voted ballots will create conflict between officials and observers. <br> Suggest replacing "setup and teardown procedures" in (g)(6) with "opening and closing procedures" at the voting place. <br> Suggest revising (h)(3) to refer to "sealed ballot boxes, election equipment, or election results." Also because of intro language in (h) limiting to "inside the voting enclosure," suggest proviso in (h)(3) expanding this prohibition to outside the enclosure. <br> Suggest adding to (i), "or compromise the security of election equipment, ballots, or election results." And replace "setup or teardown" with "opening or closing." <br> In (j), suggest replacing "evidence" with "grounds to believe/conclude," since we will not be in a |

NCSBE_Public Records_0001119

| Section | Summary | Concerns/Clarifications/Suggestions/Budget impact |
|---------|---------|----------------------------------------------------|
| | | judicial/quasijudicial proceeding or have access to the means to produce affidavits. |
| | | In (k) need clarification on how SBE handles observer appeals. Suggest this be handled at the county board. Hard to imagine how the State Board could be called together to address these things in a timely basis, where you could have these occurring in various counties, and the county boards will have a much better understanding of the issues. |
| | | In (l), insert "to indicate which persons have voted" after "instead of pollbooks." |
| | | Will require rulemaking, significantly revised guidance from SBE legal and EA. |
| 8 | Eliminates requirement for E-Day precinct officials to stay at the voting place all day; instead, requires CBEs to ensure a chief judge and two judges are in the voting site during all conduct of voting (incl. early voting) | Burden on CBEs to appoint 3 officials, in advance, to serve during all days of early voting. Possible CBE budgetary impact for poll worker pay, and potentially for staff to coordinate the increased administrative requirements for early voting staffing. |
| 9 | Conforming change re converting one-stop to "early voting" | None |
| 10 | Revises same-day registration during early voting to use procedures similar to current ones, but would require CBE to remove a same-day registrant's ballot from the tabulation if their initial address verification mailing is returned as undeliverable by the business day before canvass. Proof of residence documents would now be "HAVA Documents," which cover all that are currently permitted, except for "documents authorized and reviewed in a manner established by [the State Board]," which current law allows. Revises the HAVA ID list in GS 163-166.12(f) to match the HAVA document definition in the section, which would include the same list but would add the "document issued from the institution" item. | This proposal is much more workable than what it would replace. Suggest revising (e)(6) to say, "A current document issued to the voter by an educational institution." And revising (b)(2) by adding: "An individual complies with this requirement if he or she provides a current identification card for an educational institution and appears on a current list of students residing in on-campus housing within the county associated with the educational institution, which list the educational institution has provided to the county board of elections." This would match current law/practice. As written, this provision will disfavor college students of |

NCSBE_Public Records_0001120

| Section | Summary | Concerns/Clarifications/Suggestions/Budget impact |
|---|---|---|
| | | private institutions, and will reduce the opportunity for all college students to rely on the list provided to CBEs. Would require some software development for SEIMS and overhauled legal guidance. |
| 11 | Conforming change re converting one-stop to "early voting" | None |
| 12 | Conforming change re converting one-stop to "early voting" | None |
| 13 | Permits voter challenges when a person votes during early voting, whereas currently those challenges either may occur during early voting or on election day at the county board office (since currently early voting is a type of "absentee" voting). | None |
| 14 | Requires challenged ballots to be retained for 22 months. | None |
| 15 | Allows absentee ballot to be challenged five business days after Election Day. | Concern that this could burden the administration of canvass if it has the effect of facilitating/encouraging frivolous challenges. And with canvass on Friday the week after the election, challenges could be coming in only two or three days before that, leaving no time to notice a challenge for hearing. Also, this would be subjecting absentee voters to much greater possibility of challenge than in-person voters, who must be challenged while voting. Suggest moving the deadline to the business day after the election, which would allow some time to raise a challenge but not extend for multiple days, which would be closer to how in-person voters are treated. At the very least, suggest not allowing this to extend into the week of canvass. |
| 16 | Requires that an appeal by the State Board of a voter challenge decision by a county board or election judges shall be to the superior court within county. | None. |
| New section suggested | | We'd like to suggest a revision to GS 163-111(e) to provide for second primaries only at ten weeks after the initial primary. A second primary at seven weeks is an incredibly difficult task to pull off. This would significantly |

4

| Section | Summary | Concerns/Clarifications/Suggestions/Budget impact |
|---------|---------|---------|
| | | ease a worry that plagues election administrators every primary season. |
| 17 | Requiring parties to allow unaffiliated voters to vote in their primaries. | Potential for First Amendment associational rights legal challenge. *See California Democratic Party v. Jones*, 530 U.S. 567 (2000). |
| 18 | Clarifies that write-in candidates need not petition to have votes counted in municipal, special district, and nonpartisan board of education elections. | None. |
| 19 | Requires separating mail-in versus early voting ballots in the 30-day sort precinct sort. | Would require an enhancement to SEIMS (software development) that would prevent a county from reporting early voting ballots in a generic fashion. |
| 20 | Defines early voting. | None. |
| 21 | Conforming changes re early voting. | None. |
| 22 | Conforming changes re early voting. | None. |
| 23 | Conforming changes re observers. | None. |
| 24 | Requires log of all persons who enter the voting site *not* to vote, except for those under 18 in the care of the voter. | Will possibly lead to costs for CBEs to have somebody devoted to this new effort. |
| 25 | Conforming changes re early voting. | None. |
| 26 | Information required to be reported when HAVA ID provided. | Possibly requires enhancement, but much of this data is already collected. |
| 27(a) | Conforming changes re early voting. | None. |
| 27(b) | If SBE or a court extends voting on E Day, every precinct must remain open the same amount of time. Prior version addressed only court-ordered extensions, which are rare, but SBE-ordered extensions happen for a small handful of polling locations (among thousands) during nearly every election. | Suggest limiting this to only countywide extensions and/or court-ordered extensions. The State Board routinely extends voting for times commensurate with a disruption for a small handful of polling sites (5-10) among a total of 2,700 sites. Clarify what the policy rationale is for the exceptions. Why not also public safety-related disruptions, power failures, human error (forgotten keys, tabulator code, etc.). This would also undercut the rationale in the law for closing extensions, which is to ensure voters in all precincts have the same amount of time to vote. Significant costs to counties. |

NCSBE_Public Records_0001122

| Section | Summary | Concerns/Clarifications/Suggestions/Budget impact |
|---------|---------|---------------------------------------------------|
| 27(c) | Mostly conforming language for early voting. Adds requirement for early voting to be staffed by appointed chief judges and judges, and precinct assistants, to be allocated like election day officials, where possible. Requires appointment of chief judge for each site during early voting, apparently with no "where possible" flexibility. Conforming changes re unaffiliated participation in party primaries. | In (a1)(1), suggest adding at the end "and any vacancy that may arise shall be filled in accordance with G.S. 163-41." Otherwise, the mandatory appointment of chief judges for all of one-stop could result in the inability to fill that position when no-shows or schedule conflicts occur. Suggest adding subdivision (4) to subsection (a1), stating: "The State Board shall set a deadline for county political parties to submit nominees for precinct officials for early voting to the county board of elections prior to each primary or election." This makes clear that the county boards are not making appointments for each day of early voting for a two-year term like they do for election day officials in GS 163-41 (which would be impossible), and would provide clarity about how this process is going to take party input. See comment in the related Section 17 re First Amendment implications for mandatory unaffiliated voter participation in a party primary. In the new GS 163-166.40, subsection (i) should be removed in conformity with Section 13, which would now apply the same rules for early voting challenges as for election day challenges. Keeping subsection (i) would create conflict and confusion, because some of the language is at odds with Section 13 of the bill. Also, the reference to "subsection (g)" in subsection (i) is an error introduced in recodification in 2019, we believe. When elections were in Chapter 163A, this used to refer to "163A-1303," *see* NCGS 163A-1300 (2018), which was the statute that authorized sites other than the county board office for one-stop, *see* NCGS 163A-1303 (2018) (currently GS 163-227.6). The reference to subsection (g) |

6

NCSBE_Public Records_0001123

| Section | Summary | Concerns/Clarifications/Suggestions/Budget impact |
|---------|---------|---------------------------------------------------|
| | | regarding unreported moves doesn't make any sense in this context, and we can't determine how it came to be, other than assuming it was a codification error. |
| 28 | Conforming changes re early voting. | None |
| 29 | Mostly conforming changes re early voting; however, the addition of "early voting sites" to "precincts" for the random selection of ballot groupings for the hand-eye-audit in GS 163-182.2(b)(2) could generate confusion. | To avoid confusion in (b)(2), just call it "the procedure for random sampling" and not refer to selection of "precinct or early voting sites," because full absentee counts are also to be included among the sampling. This is explained further into the paragraph, so "random sampling" would be inclusive of all ballot groups. |
| 30 | For multicounty municipal contests, the counties canvass and the State Board produces a composite abstract, but each involved county then issues a certificate of election to the winner, not the State Board. | None |
| 31 | Requires abstracts to report results by early voting. Currently results on the abstract are reported by Election Day and absentee (which includes both mail-in and early voting ballots). | Will require an enhancement (software development) in SEIMS. |
| 32 | Conforming change for "early voting" | None |
| 33 | Requires State Board to report annually to the legislature any revisions to voter history "other than routine updates following each election," including the rationale and timing. | We're uncertain what would trigger this report. Assuming this is about updates made after certification. Will require a software enhancement and new database query to be developed and to generate an automated report, or would involve an enhancement that would forbid such changes. |
| 34 | Electoral Count Reform Act conforming changes | None. |
| 35 | Conforming changes re early voting. Requires a notice per each election about date when absentee ballots are available for voting. Authorizes an absentee ballot application cure process for voter signature issues and photo ID issues. Permits photo ID cures only to be delivered back to the county board via email, not voter signature cures. Eliminates mail-delivery grace period post-election for absentee ballots postmarked by election day. Prohibits the use of a "drop box" for the deposit of absentee ballots. | Suggest adding to GS 163-228(c) that "absentee ballot applications and any other record identifying voters who have returned an absentee ballot" are also confidential prior to election day. It was clearly the legislature's intent to make these confidential in 2019 when it made the register confidential until election day, due to the CD-9 investigation's findings. But county boards have been challenged by political parties to provide these records |

7

| Section | Summary | Concerns/Clarifications/Suggestions/Budget Impact |
|---------|---------|---------------------------------------------------|
| | Requires a number of ballot reports pertaining to early voting and absentee voting during the early voting period and the day after election day.<br>Requires absentee applications to be retained for 22 months. | since the confidentiality provision technically only applies to the register.<br>In 230.1(e), suggest replacing "via email" with "electronically," to account for the possibility in the future of using the absentee portal to transmit these ID copies, rather than relying on only email (which is a less secure method of transmission for documents containing PII).<br>Suggest replacing at the end of (e) "on the application on the container-return envelope" with "on the request for absentee ballot." We do not recommend including a space for telephone or email on the absentee ballot envelope; it is already an optional on the request form, and we believe the intent was for this to refer to the request form, not the ballot envelope—see the revisions in this same section of the bill to GS 163-230.2(a).<br>Will likely require software enhancements to SEIMS modules pertaining to absentee ballots and generating certified lists of absentee ballots per changes to GS 163-232 and 163-232.1.<br>Will require software and database enhancements pertaining to the daily reports required during early voting and through election day. Could result in staffing/overtime costs for county boards to ensure these records are reported daily. |
| 36 | Conforming changes re early voting. | None |
| 37 | Makes it a misdemeanor to impersonate an election official, and for any person other than an election official to affix or print an identifier on an absentee ballot request form in order to track the form. | Any reason why this should go into effect one month before the rest of the bill? No voting will be taking place in that month, so it doesn't seem to matter to make it effective a month earlier. Suggest taking out the effective date portion of this section for consistency. |
| 38 | Adds a "knowing" element to the crime of voting while serving a felony sentence. | None |

8

NCSBE_Public Records_0001125

| Section | Summary | Concerns/Clarifications/Suggestions/Budget impact |
|---------|---------|---------------------------------------------------|
| 39 | Requires the elections boards to cooperate with and provide information to SBI on certain elections investigations.<br>Requires SBE to report all violations of election laws to SBI for further investigation and prosecution, rather than the district attorney.<br>Eliminates the provision providing for SBI to investigate "frauds in connection with elections" only "when requested" by the State Board, and instead requires SBI to investigate such cases. | |
| 40 | Conforming changes re early voting. | None |
| 41 | Conforming changes re early voting. | None |
| 42 | Conforming changes re early voting. | None |
| 43 | Conforming changes re early voting. | None |
| 44(a) | Language updating for juror qualifications | None |
| 44(b) | Juror excusal procedures | None |
| 44(c) | Juror excusal procedures | None |
| 44(d) | Makes the jury excusal list for citizenship provided by the courts to the SBE a public record, which was not the case in earlier versions of the bill. | Concern for the public identification of any noncitizens called for jury duty. Was this intended, or was it intended that the identification of a *match* with a voter was supposed to be a public record, which is already addressed in section 44(e) with the revision to GS 163-82.14(c1)(3)?<br>Suggest having the juror excusal lists sent through AOC in the new GS 9-6.2(b), rather than have SBE set up data sharing with each of the county clerks of court. That system currently works well with felony conviction reports being sent through a single state entity, DAC (formerly DPS). |
| 44(e) | Removes the requirement for the State Board to provide, and for county boards to follow, a "uniform" program of list maintenance in GS 163-82.14.<br>Requires weekly death lists from DHHS, voter matching and removals. | Suggest removing the strikeouts in GS 163-82.14(a) and (a1) pertaining to "uniform," statewide, and "systematic" efforts toward list maintenance. These provisions were put into our state's list maintenance law to help ensure |

9

NCSBE_Public Records_0001126

| Section | Summary | Concerns/Clarifications/Suggestions/Budget Impact |
|---|---|---|
| | Requires weekly felony conviction reports, voter matching and removal proceedings. Requires juror excusal list matching with voter rolls within 30 days, and for a removal process similar to felony removals. Requires weekly removals of voters who given confirmation of change of address. Goes into effect in July 2024. | compliance with the National Voter Registration Act (NVRA). *See* 52 USC § 20507(a)(4), (b)(1), (c)(1), (c)(2). Will require significant software and database enhancements to SEIMS, and the establishment of new data feeds, agreements, and processes with all clerks of superior court and the federal government. |
| 45 | Prescribes specific language to be communicated about the photo ID requirement in "any notice given to a voter prior to an election regarding the requirement to show photo identification to vote in person, whether by mail or posted on a website." No end date. | Suggest more narrow application of this specific text. Recommend "In any notice devoted to explaining the details of the photo identification requirement to vote in person, whether by mail or posted on an official website . . . ." The language is so broad to encompass every time photo ID is mentioned by the State Board or a county board on its website or on any social media platform, even if a mere brief mention is made or a very specific item regarding photo ID is being discussed (e.g., issuance of IDs, approval of student IDs, rulemaking procedures, etc.). According to Google, there are 94 pages on ncsbe.gov that discuss "photo ID." That number will only increase. There are dozens of such mentions on each of the agency's social media pages. An effective public education campaign on photo ID requires flexibility in messaging for the various means of delivering the message. Suggest expiration date of Dec. 31, 2024, since the message starts with "Voters will now be asked to present ..." By the 2025 municipal elections, photo ID will no longer be a new requirement. |
| 46 | Requires DIT to study the feasibility of replacing SEIMS and increasing data communications with other state agencies for voter list maintenance, and to report to the legislature. | None. |

NCSBE_Public Records_0001127

| Section | Summary | Concerns/Clarifications/Suggestions/Budget impact |
|---|---|---|
| 47 | Requires SBE to include information on the new deadline for returning absentee ballots in "any mailing to North Carolina residential addresses of registered voters." | SBE does not typically send statewide mailings to the addresses of registered voters, but instead sends to all households, due to the cost of individualized addressing. Since no such mailing would be planned, we recommend removing "of registered voters." Mailings to all residential addresses occur when SBE sends the Judicial Voter Guide before a statewide general election and, if funding is provided in the budget, SBE plans to send mailings to all residential addresses regarding the photo ID requirement.<br><br>If an individually addressed mailing is intended, additional funding would be required to accomplish that. |
| 48 | Requires SBE to conduct a signature verification pilot program with ten diverse counties in the March 2024 primary. Requires counties to report various metrics and findings from the pilot program, and for the State Board to report its findings and recommendations to the legislature by May 1, 2024. | Would require immediate and significantly ramped-up work to develop software to tie in the state's voter registration system (SEIMS) with a vendor-provided solution that uses software to match signatures on absentee ballot applications with voter records. The development ramp-up, on this timeline, would require hiring time-limited software development staff. It would also require funding to procure such a vendor-provided solution for use in 10 counties, estimated at potentially $1.65 million. It would also require additional staff to oversee the program, which would be a fulltime project management effort, especially given the reporting requirement. |
| 49 | Severability clause. | None |
| 50 | Makes nearly all provisions effective January 1, 2024. | None |

NCSBE_Public Records_0001128

| From: | Cox, Paul |
|---|---|
| Sent: | Monday, January 29, 2024 1:56 PM |
| To: | SBOE_Grp - Legal |
| Subject: | REVISED PER COURT ORDER - Numbered Memo 2023-05 - Same-Day Registration |
| Attachments: | Numbered Memo 2023-05 Same-Day Registration (updated Jan 2024).pdf; Mail Verification Undeliverable Notification - SDR - until 2 days before canvass.docx; CHANGES Numbered Memo 2023-05 Same-Day Registration (updated Jan 2024).pdf |

| Importance: | High |
|---|---|

Directors (via BCC):

Please review this email and its attachments carefully.

A federal court last week issued an order requiring new same-day registration procedures when a registrant's mail verification card (VR card) is returned as undeliverable by the day before county canvass.

Under a new law enacted last year, SB 747, those registrations were to be denied and the ballot pulled from the official count. The State Board instructed the county boards to carry out that process through Numbered Memo 2023-05, issued last month. However, the court issued a preliminary injunction against this process. The court determined that the county boards could not remove such a ballot from the official count without notice and an opportunity for the voter to remedy the issue.

**To comply with this court order, Executive Director Brinson Bell has issued <u>REVISED Numbered Memo 2023-05.</u>** The updates to this memo are primarily found in Section 4. **County boards should follow these procedures to promptly notify any same-day registrants whose mail verification cards return as undeliverable before the second day before canvass.** The Notice to provide these registrants is included at the end of the memo and is attached in Word copy to this email.

Section 4 also outlines procedures for registrants to cure the address verification failure, either by sending in a new "HAVA document" by the day before canvass or appearing before the county board to speak under oath at canvass.

Although this is a new administrative process to manage during the early voting and canvass period, please bear in mind that these address verification failures are relatively rare. In recent presidential elections, the number of same-day registrants whose mail verification was returned as undeliverable was around 2,000 statewide. So the number of notices and cures that any single county will handle is likely to be fairly small. Additionally, that number should be reduced by the requirements in Numbered Memo 2023-05 <u>for early voting workers to ensure the voter includes on their VR form an address that can receive mail.</u> Please reiterate that instruction to your early voting officials to help avoid verification failures, as well as the instruction to <u>recommend voters include an email address or phone number on the VR form</u> so that they may be quickly contacted.

The Notice to provide the voter is also available on the ERC under "In-Person Voting" and on Filezilla: Election_Administration\Election_Forms\Voting_Site_Management\Polling Place Materials\Documents\2024 Documents.

1



EXHIBIT *29*
WIT: *P. Cox*
DATE: *2/24/25*
DENISE MYERS BYRD

NCSBE_0000481

Also for your reference, I've attached a copy of the Numbered Memo showing the CHANGES from the last issuance.

Best regards,


**Paul Cox**
General Counsel
NORTH CAROLINA STATE BOARD OF ELECTIONS
RALEIGH, NC 27611
919.814.0700
www.ncsbe.gov

NCSBE_0000482



P.O. Box 27255
Raleigh, NC 27611
(866) 522-4723
www.ncsbe.gov

# Numbered Memo 2023-05

| | |
|---|---|
| **TO:** | County Boards of Elections |
| **FROM:** | Karen Brinson Bell, Executive Director[1] |
| **RE:** | Same-Day Registration |
| **DATE:** | December 8, 2023 (updated January 29, 2024) |

This numbered memo provides guidance about same-day registration in accordance with the changes made by Session Law 2023-140 (SB 747). It replaces Numbered Memo 2016-15 and Numbered Memo 2012-20. It has been updated to comply with a court order which requires a same-day registrant whose address verification card is returned as undeliverable to get notified and have an opportunity to remedy that address verification failure.[2] That notice and remedy ("cure") process is discussed in Section 4 of this memo.

## 1. Requirements for Same-Day Registration

During the early voting period, an individual may register and vote at any early voting site in the county in which they reside. To do so, the individual must:

1. Present a "HAVA document" with the individual's current name and residence address;
2. Present acceptable photo ID; and
3. Complete a voter registration application.

---

[1] This memo is issued under the authority delegated by the State Board to the executive director pursuant to G.S. § 163-22(p).

[2] See Voto Latino v. Hirsch, No. 1:23-cv-861, Doc. 68 (M.D.N.C. Jan. 21, 2024), which determined the procedure in G.S. § 163-82.6B(d) for rejecting a registration and removing a ballot for a same-day registrant whose mail verification was returned as undeliverable before canvass violates the federal Constitution because the law did not require notice to the voter and an opportunity to be heard. The State Board may adopt interim rules and regulations if a court determines an election law is invalid or unenforceable. See G.S. § 163-22.2.

NCSBE_0000483

An individual who registers to vote during early voting will vote a retrievable ballot immediately after registering to vote.[3]

## 2. Proof of Voting Residence

A same-day registrant must present a "HAVA document" showing the registrant's current name and residence address in order to register and vote. A "HAVA document" is defined as one of the following documents:[4]

- A current utility bill
- A current bank statement
- A current government check
- A current paycheck
- Another current government document
- A current document issued from the institution that issued the photo ID being presented by the voter

The registrant may present either the original document or a copy of that document in hardcopy or electronic format, including by displaying the document on an electronic device.

### 2.1 What Makes a Document "Current"?

In order to be considered "current," the document must be unexpired, if it has an expiration date. **If the document does not have an expiration date, the issuance date must be within six months of the date it is presented to the election official.** For example, if the voter presents to vote on October 29, the issuance date must be between April 29 and October 29 of that year.

An end date for a pay period or billing period is not an expiration date. To determine whether such a document is current, refer to its issuance date. In the absence of an issuance date or expiration date, for a document to be considered current, there must be other time-based

---

[3] G.S. § 163-82.6B(b) (S.L. 2023-140, sec. 10(a)). If a person presents a valid registration but declines to vote, the registration shall be processed immediately, and the person may later vote at a one-stop site in the same election. Although the new statute does not directly address this situation, it does require that same-day registrations be processed. There is no authority to hold or refuse to process a same-day registration for a registrant who declines to vote at the time of registration. There is also no authority to refuse to allow a valid registrant to later vote at a one-stop early voting site, using a retrievable ballot that can later be removed from the count if the same-day registration fails mail verification, as explained further in the memo. The person may not vote on Election Day for that election.

[4] G.S. § 163-82.6B(e) (S.L. 2023-140, sec. 10(a)).

2

NCSBE_0000484

indicators on the document showing that it is current. This could include, for example, a printout from a university housing portal stating "Fall 2024" semester, if the student is voting in the 2024 general election, since that shows that the document is current within the last six months. It could also include a student showing on their phone a current webpage from their educational institution that lists the student's current name and residence address.

The county board does not retain a copy of the document presented, but the elections official will note the type of document presented in SEIMS (i.e., the SOSA/early voting application).

## 2.2 Examples of Acceptable Documents

A HAVA document must include the registrant's current name and residence address.

Acceptable "HAVA documents" that do not have to be issued by a governmental entity include:

- utility bill (including mobile service providers)
- bank statement
- paycheck (government or nongovernment)

Examples of other acceptable "HAVA documents" include a document issued by any federal, state, or local governmental agency or subdivision such as a:

- driver's license or ID card issued by North Carolina or another state
- citizenship document issued by the U.S. Department of Homeland Security or U.S. Citizenship and Immigration Services
- property tax statement issued by a governmental agency
- vehicle registration issued by a governmental agency
- government check, including any Social Security, employment, pension, benefit, or reimbursement check from any government entity
- government invoice, statement, or receipt
- public housing identification card, lease, or rental statement
- public educational institution documents, including any student card, transcript, tuition statement, invoice, or receipt issued by any public educational institution
- government insurance plan card, drug discount card, or drug prescription issued by a government care facility (including military and veterans' facilities)
- discharge certificates, pardons, or other government documents issued in connection with the resolution of a criminal case, indictment, sentence, or other matter
- public transportation authority cards, invoices, receipts, or correspondence
- public assistance or disability agency documents
- documents issued by any government shelter or temporary/transitional housing facility
- drug prescription issued by a government doctor or other governmental health care provider

3

NCSBE_0000485

The above list of government documents merely contains examples and is not exhaustive. Documents that are not listed above are acceptable provided they include the registrant's current name and residence address and meet the definition of a HAVA document in G.S. § 163-82.6B(e). Documents issued by an official entity of a recognized tribe are government documents.

### 2.3 Documents Issued by an Educational Institution

Students may also provide proof of residence by presenting any document from their college or university that contains the student's name and residential address. Acceptable documents may be issued by either public or private educational institutions and include an invoice, transcript, correspondence, or a print-out or screenshot from any college or university source displaying the student's name and residential address (e.g., online student portals for registration, tuition, or housing). Again, the document can be in physical or electronic form. Such documents are acceptable whether the student's address is an on-campus or off-campus residence.

Alternatively, the college or university may voluntarily provide elections officials with a list of students and their residential addresses. Any such lists must be current at the time of use and must display the residence address for each student to ensure the student is properly registered at the appropriate address.[5] Educational institutions may omit the names of individuals known to be ineligible based on citizenship status (e.g., exchange students holding student visas). The county board should request that each college or university also provide a template example of how to properly record the mailing address for their students. Election officials conducting same-day registration must be trained on these address conventions, so the registration can be successfully verified by mail (See "Ensuring the Correct Mailing Address" section below). **The student who is same-day registering must confirm to the election official that the housing list provided by the educational institution contains their current name and residential address.**

---

[5] The list must indicate specific facility/address where the student resides because some jurisdictional boundaries may divide the campus. For example, a student living in Parrish Hall is eligible to vote in the contest for City Council A while a student living in Perry Hall is eligible to vote in the contest for City Council B. In rare instances, a jurisdictional boundary may even divide a residence hall. County boards must bear in mind that colleges and universities may use their own standard conventions for assigning addresses and ensuring that mail is delivered to on-campus students. When it comes to filling out the voter's registration form and inputting the registration data into SEIMS, county boards should work with their colleges and universities to ensure they are using the proper addressing conventions for student registrants while accounting for any campus splits in the Geocode application.

NCSBE_0000486

**If a student presents a document issued by a private educational institution as proof of residence, they must also present an approved photo ID from that institution. Students attending a public educational institution may present any acceptable photo ID since their proof of residence is a "government document."[6]**

## 3. Provisional Voting

If a voter is unable to provide a HAVA document showing their current name and residence address, the voter must be offered a provisional ballot. To have their provisional ballot counted, the voter must bring a copy of their HAVA document showing their current name and residence address to the county board office by 5 p.m. the day before county canvass.[7] As soon as a voter provides an acceptable HAVA document, the county board shall process the registration as described in the next section of this memo, Verification of Address by Mail. See page 9 of Numbered Memo 2023-04 for additional information of provisional voting by same-day registrants.

Similarly, if a same-day registrant does not present acceptable photo ID, the voter must be offered a provisional ballot with the options to either (1) complete a Photo ID Exception Form or (2) return to the county board of elections with their photo ID by the close of business on the day before county canvass. As long as the voter is deemed eligible to register and their mail verification card is not returned as undeliverable by the business day before canvass (as explained below), the voter's provisional ballot shall be counted according to the rules governing photo ID compliance for all voters.

For information about photo ID procedures, see Numbered Memo 2023-03.

## 4. Verification of Address by Mail and Curing Undeliverable Verification Card

Within two business days after an applicant same-day registers, the county board of elections shall verify the individual's driver's license or Social Security number in SEIMS, update the applicant's record in SEIMS, search for and address possible duplicate registrations, and begin

---

[6] G.S. § 163-82.6B(e)(6) (S.L. 2023-140, sec. 10(a)). For information about voting residence of college students, see https://www.ncsbe.gov/registering/who-can-register/registering-college-student.

[7] See G.S. § 163-82.4(f), which permits registrants to correct any omissions in their voter registration applications until 5 p.m. on the day before county canvass and instructs the county board to "count any portion of the provisional official ballot that the voter is eligible to vote," if such omissions are corrected. For same-day registrants, the "HAVA document" is a required item of the voter registration application.

NCSBE_0000487

the address verification process as provided by G.S. § 163-82.7.[8] During this initial phase, the county board shall also determine whether the applicant appears qualified to vote (e.g., their address is in county or they are not serving a felony sentence).[9] **If the county board has reliable grounds to believe the applicant is not qualified to vote at this initial stage, a challenge shall be filed as provided in Numbered Memo 2022-05.**[10]

After sending the address verification card by mail, the county boards shall proceed as follows:

1. If the verification card is not returned as undeliverable <u>by the close of business two days before county canvass</u>, the voter's ballot shall remain in the official count.[11]

2. If the verification card is returned as undeliverable <u>before the close of business two days before county canvass</u>, staff shall scan the undeliverable card into SEIMS (VoterView), which will generate the Undeliverable SDR Resolution screen. The registration status becomes DENIED with reason SDR VERIFICATION RETURNED

---

[8] Registrants must provide their driver's license number or, if they do not have one, the last four digits of their Social Security number on the voter registration form. If they do not have either of these identifiers, they can mark a box on the form indicating that. If an individual has provided one of these identifiers but the computer validation of the number as required by G.S. 163-82.12 did not result in a match, and the number has not been otherwise validated by the board of elections, in the first election in which the individual votes that individual shall present with their ballot HAVA ID as defined in G.S. § 163-166.12. Voters who same-day register will have met the requirement to show HAVA ID through the proof-of-residence document requirement.

[9] G.S. § 163-82.6B(d) (SL 2023-140, sec. 10(a)).

[10] Although early voting is no longer a form of absentee voting, the county board may use the absentee ballot challenge procedures, as set forth in Numbered Memo 2022-05, because the county board is authorized to "pass upon the legality of disputed ballots" during canvass. G.S. § 163-182.5(a).

[11] See G.S. § 163-82.6B(d) (SL 2023-140, sec. 10(a)). Although this statute says that the county board shall retrieve the applicant's ballot if the verification mailing is returned as undeliverable "before the close of business on the business day before canvass," a court decision does not allow this to take place without providing the applicant notice of the verification failure and an opportunity to remedy it. See Voto Latino v. Hirsch, No. 1:23-cv-861, Doc. 68 (M.D.N.C. Jan. 21, 2024). When a verification mailing returns on the day before canvass, there is not enough time to provide the voter meaningful notice and opportunity to remedy this issue before canvass, which is occurring the next morning. So, compliance with this court order requires the county board to count the ballot of a registrant whose address verification mailing returns as undeliverable on the day before canvass or later.

6

NCSBE_0000488

UNDELIVERABLE. Staff shall then follow these steps, using the Undeliverable SDR Resolution screen:

a. **Check for Address Errors.** First, make sure the address on the verification card is correct by comparing it to the voter registration application submitted during same-day registration. If there was an error in how the address was entered, select "Start New Mailing." In VoterView, change the applicant's status to ACTIVE, correct the address, and save it as an admin change. Include a comment in the VoterView profile noting, "Updated to active per Numbered Memo 2023-05." Open VoterView Admin Tasks, create new cards, print, mail, and update the mailing status accordingly.

b. **Notice and Cure Process.** If there is no error in how the address was entered, select "Start Cure Process." Then, follow these steps:

   i. *Cure Notice*. The county board shall send a "Notice to Verify Your Address" to the registrant by mail and email, if provided on the registration form, <u>within one business day</u> of receiving the undeliverable verification card. The Notice language is appended to this memo and shall be used by the county board. (The letter cannot be sent via SEIMS.) County board staff shall also call the registrant to provide the information on the Notice orally, if the registration form includes a phone number. The registrant may verify their address (i.e., "cure" the failed mail verification) by submitting a copy of a same-day registration "HAVA document" to the county board no later than 5 p.m. on the day before county canvass. The Notice will instruct the registrant to provide a document that is different from the one they used when registering during early voting. The document copy may be provided via email (with scanned or photographed document), fax, mail, or in-person delivery during business hours.[12] The Notice shall offer the registrant the opportunity to come in person to the canvass meeting to verify their address, if they are unable to provide an acceptable "HAVA document" by the deadline above. In that case, the county board shall take the registrant's testimony under the first oath in

---

[12] This process to provide the voter notice of the address verification failure and a method of remedying that deficiency is designed to comply with a court order. See <u>Voto Latino v. Hirsch</u>, No. 1:23-cv-861, Doc. 68 (M.D.N.C. Jan. 21, 2024).

NCSBE_0000489

G.S. § 163-86(c) and shall consider any documentation offered by the registrant.

ii. *No Cure Notice.* If an undeliverable address verification card arrives at the county board on the day before canvass or later, the Notice shall not be sent, and the registrant's ballot must remain in the official count. At that point, there is not enough time to notify the voter and provide a meaningful opportunity to cure. See footnote 13. The registrant shall be sent a second card as required by G.S. § 163-82.7(e). If the second card is not returned as undeliverable, the county board shall register the applicant. If the second card is returned as undeliverable, the county board shall deny the application and need not try to notify the registrant further.[13]

iii. *Cure Successful.* If the registrant returns a copy of a current "HAVA document" matching the residence address on their registration by the deadline, the county board shall select "Cure Successful" on the Undeliverable SDR Resolution screen. If a registrant fails to provide a "HAVA document" by the day before canvass but instead addresses the county board at the canvass meeting, the county board shall deem the undeliverable address verification to be "Cure Successful," if the board finds that the voter resides at the address claimed on their registration. In either case, the applicant's status in VoterView shall be changed to ACTIVE and saved as an admin change.[14] Include a comment in the VoterView profile noting, "Updated to active per Numbered Memo 2023-05." The registration is then verified and the voter's ballot shall remain in the official count.[15]

---

[13] G.S. § 163-82.7(f).

[14] This will trigger a new standard verification mailing, but even if that mailing returns as undeliverable, it will not lead to a denial of the registration because the initial registration has already been processed.

[15] If the document provided is a valid and current "HAVA document" with the correct address, it must be accepted as a cure for an undeliverable address verification mailing. Currently, there is no way to accurately and comprehensively compare the specific type of document provided to poll workers at the early voting site with a cure document provided to the county board office, to ascertain that the second document is different from the first. Further enhancements to SEIMS will be required to do this comparison effectively and uniformly.

NCSBE_0000490

iv. *Not Cured.* If the registrant does <u>not</u> provide a copy of a current "HAVA document" matching the address on their registration by the deadline, select "Not Cured" on the Undeliverable SDR Resolution screen. Similarly, if a registrant addresses the county board at the canvass meeting and the county board does <u>not</u> find that the voter resides at the address claimed on their registration, the undeliverable address verification shall be deemed "Not Cured." In either case the county board shall not register the applicant or send further verifications. The registrant's ballot shall be retrieved, and that ballot's votes shall be removed from the official count, using these steps:[16]

1. The board shall direct county board staff to retrieve the ballot.
2. The board shall complete a tally sheet to deduct the votes cast on the full ballot. The board shall direct staff to add a manual edit to the proper precinct results in the proper reporting group to deduct the ineligible votes that were recorded on the results tally sheet.
3. The staff shall then print two copies of the manual edit report and attach one report to the tally sheet and one report to the official canvass report.
4. The retrieved ballots and the accompanying tally sheet and a copy of the manual edit report shall then be sealed by the board and separated from the other ballots.
5. The official canvass reports shall be provided to the State Board pursuant to G.S. § 163-182.6.

**County boards must work to send out mail verification cards and process returned mail as quickly as possible during the early voting period and throughout the canvass period. They must also ensure that same-day registrations and returned mail from same-day registrations are kept separate from other registrations and returned mail.**

## 5. Ensuring the Correct Mailing Address

Because a voter's ballot may be discounted based on returned mail, **it is vital that early voting officials emphasize to voters that they must provide an address where they can receive mail**. When assisting a registrant in completing an early voting application, elections officials shall:

- Ask if there is an apartment or unit number that is part of the voter's address; and

---

[16] See G.S. § 163-82.6B(d) (SL 2023-140, sec. 10(a)).

9

NCSBE_0000491

- If the voter does not list a mailing address, ask if the voter can receive mail at their residential address. If not, the official must ask the voter to provide a mailing address.

Additionally, **the early voting official assisting a same-day registrant must recommend that the voter provide their phone number and/or email address on the registration form**. This will allow the county board to quickly contact the voter if their address verification card is returned as undeliverable and the voter needs to provide another HAVA document to verify their address (i.e., notice and cure). If a phone number or email address is provided and there are questions regarding the address before any mail verification card or cure notice is sent, county board staff should contact the voter to seek clarification.

## 6. Frequently Asked Questions About Same-Day Registration

1. A same-day registrant who is a student at a public college or university in North Carolina presents their passport as their photo ID. Can the student present a tuition bill or other document issued by their school to prove their voting residence?

Yes. Regardless of the type of photo ID the registrant presents, a student attending a public college or university in North Carolina may present a current document issued by their institution to prove their voting residence, including referring to a list provided by the educational institution. This is because the student attends a public institution, and documents issued by public institutions are considered "another current government document" pursuant to G.S. § 163-82.6B(e)(5).

2. For their acceptable photo ID, the registrant presents a North Carolina driver's license that contains an address from another county. To prove their residence, the voter presents a separate HAVA document, such as a utility bill, that has a residence address in the county. Is this acceptable?

Yes. If the voter presents an acceptable HAVA document, that establishes their residence for same-day registration purposes, even if their photo ID has an older address—many voters do not immediately update their driver's licenses when they move. As a reminder, for photo ID purposes, the address on an eligible photo ID does not have to match the address where the voter currently resides. Accordingly, a voter may be able to satisfy the photo ID requirement and the HAVA document requirement for same-day registration using a photo ID with a current address, or they may need to present two documents—one for photo ID purposes and a different one to prove residence. See Numbered Memo 2023-03 (pg. 5) for further information about the separate identification requirements for photo ID, HAVA ID, and same-day registration. Some documents

10

NCSBE_0000492

can satisfy all of these requirements, but sometimes a voter will need to present separate documents to satisfy each separate requirement, depending on what documents they have.

3. The voter presents a lease from a private landlord to prove their residence. Is this an acceptable HAVA document?

No. The only acceptable HAVA documents issued by private entities are utility bills, bank statements, paychecks, and documents issued by a private educational institution in combination with an acceptable photo ID from that institution.

4. Is a document issued by an entity that *receives* governmental funding considered a government document under the same-day registration law?

No. An agency/entity of the government must issue a government document.

5. What if an individual wants to same-day register but resides in a non-traditional residence? What about homeless individuals or individuals who stay in a vehicle and do not have a traditional fixed residence? What documentation can the individual provide?

An individual must register at the address at which they reside and to which, when absent, they intend to return. If a person's residence is not a traditional residence associated with real property, the location of the usual sleeping area for that person shall be controlling as to the residency of that person. Residence shall be broadly construed to provide all persons with the opportunity to register and to vote, including stating a mailing address different from residence address.[17]

A registrant with a nontraditional residence should list the address that identifies the location of their typical sleeping location. For example, a homeless person who typically sleeps in a homeless shelter would list the homeless shelter's address as their residence address. An individual who lives in an RV would list the address where they typically park the RV as their residence address.

Individuals with nontraditional residences are subject to the same proof-of-address requirements as any other same-day registrant. Elections officials should provide the registrant with a list of examples of acceptable documents and may need to brainstorm with the individual about how they can obtain an acceptable HAVA document. A letter from a homeless shelter is acceptable if it is a government shelter.

---

[17] G.S. § 163-57(1).

NCSBE_0000493

COUNTY LETTERHEAD (with mail address, email address, phone, and fax)

Date

VOTER'S FULL NAME
ADDRESS LINE 1                                              [EV] – #
ADDRESS LINE 2
ADDRESS LINE 3
LINE 4/CITY, STATE, ZIP CODE

### Notice to Verify Your Address

You recently registered to vote at an early voting site. However, when the county board of elections sent your voter registration card in the mail, it was returned by the Postal Service as undeliverable. **For your ballot to count, we must verify your address.**

**You must provide a copy of an acceptable document showing your name and current residence address.** Acceptable documents include any government document, utility bill, bank statement, paycheck, and many other types of documents. A list of acceptable documents is on the reverse side of this page. **The document you provide <u>cannot</u> be the same document you used when you registered at the early voting site.**

**Please send a copy of your document to your county board of elections no later than 5 p.m. on [INSERT DAY BEFORE CANVASS].** You may provide the document by any of the following methods *(see contact information at the top of this letter):*

- Email or fax (a scan or photo of the document is acceptable)
- Mail or commercial carrier
- Or by showing it in person to the county board of elections office located at _____

For faster processing, please include the "EV number" found at the top right of this Notice when providing your document.

If you are unable to provide an acceptable document verifying your residence by the deadline above, **you may come in person** to verify your address before the county board of elections at 11 am on **[INSERT DAY OF CANVASS]** at **[INSERT ADDRESS FOR CANVASS MEETING]**.

For any questions, call the county board of elections at the number listed above.

*Acceptable documents showing your residence address are shown on the reverse page of this Notice.*

NCSBE_0000494

# ACCEPTABLE DOCUMENTS TO VERIFY YOUR RESIDENCE ADDRESS

## Documents issued by a private or governmental entity showing name and current address:
- Utility bill (including cell phone service providers)
- Bank statement
- Paycheck

## Documents issued by any federal, state, or local governmental agency showing name and current address:
- drivers license or ID card issued by North Carolina or another state
- a citizenship document issued by the U.S. Department of Homeland Security or U.S. Citizenship and Immigration Services
- property tax statement issued by a governmental agency
- vehicle registration issued by a governmental agency
- government check, including any Social Security, employment, pension, benefit, or reimbursement check from any government entity
- government invoice, statement, or receipt
- public housing identification card, lease, or rental statement
- public educational institution documents, including any student card, transcript, tuition statement, invoice, or receipt issued by any public educational institution
- government insurance plan card, drug discount card, or drug prescription issued by a government care facility (including military and veterans' facilities)
- discharge certificates, pardons, or other government documents issued in connection with the resolution of a criminal case, indictment, sentence, or other matter
- public transportation authority cards, invoices, receipts, or correspondence
- public assistance or disability agency documents
- documents issued by any government shelter or temporary/transitional housing facility
- drug prescription issued by a government doctor or other governmental health care provider

   *The above list of government documents merely contains examples and is not exhaustive. Documents that are not listed above are acceptable provided they include the registrant's current name and residence address and meet the definition of a HAVA document in G.S. § 163-82.6B(e). Documents issued by an official entity of a recognized tribe are government documents.*

## Documents Issued by a college or university showing name and current address:
- Students may also provide proof of residence by presenting any document from a college or university that contains the student's current name and residential address. Acceptable documents may be issued by either public or private educational institutions and include an invoice, transcript, correspondence, or a print-out or screenshot from any college or university source displaying the student's name and residential address (e.g., online student portals for registration, tuition, or housing). Such documents are acceptable whether the student's address is an on-campus or off-campus residence.

In order to be considered "current," the document must be unexpired, if it has an expiration date. **If the document does not have an expiration date, the issuance date must be within six months of the date it is presented to the election official.** An end date for a pay period or billing period is not an expiration date. To determine whether such a document is current, refer to its issuance date. In the absence of an issuance date or expiration date, for a document to be considered current, there must be other time-based indicators on the document showing that it is current.

You can provide a copy of the document in paper or electronic format.

NCSBE_0000495

COUNTY LETTERHEAD (with mail address, email address, phone, and fax)

Date

VOTER'S FULL NAME
ADDRESS LINE 1                                                    [EV] – #
ADDRESS LINE 2
ADDRESS LINE 3
LINE 4/CITY, STATE, ZIP CODE

## Notice to Verify Your Address

You recently registered to vote at an early voting site. However, when the county board of elections sent your voter registration card in the mail, it was returned by the Postal Service as undeliverable. **For your ballot to count, we must verify your address.**

**You must provide a copy of an acceptable document showing your name and current residence address.** Acceptable documents include any government document, utility bill, bank statement, paycheck, and many other types of documents. A list of acceptable documents is on the reverse side of this page. **The document you provide <u>cannot</u> be the same document you used when you registered at the early voting site.**

**Please send a copy of your document to your county board of elections no later than 5 p.m. on [INSERT DAY BEFORE CANVASS].** You may provide the document by any of the following methods *(see contact information at the top of this letter):*

- Email or fax (a scan or photo of the document is acceptable)
- Mail or commercial carrier
- Or by showing it in person to the county board of elections office located at
_____

For faster processing, please include the "EV number" found at the top right of this Notice when providing your document.

If you are unable to provide an acceptable document verifying your residence by the deadline above, **you may come in person** to verify your address before the county board of elections at 11 am on **[INSERT DAY OF CANVASS]** at **[INSERT ADDRESS FOR CANVASS MEETING]**.

For any questions, call the county board of elections at the number listed above.

*Acceptable documents showing your residence address are shown on the reverse page of this Notice.*

NCSBE_0000496

## ACCEPTABLE DOCUMENTS TO VERIFY YOUR RESIDENCE ADDRESS

**Documents issued by a private or governmental entity showing name and current address:**
- Utility bill (including cell phone service providers)
- Bank statement
- Paycheck

**Documents issued by any federal, state, or local governmental agency showing name and current address:**
- drivers license or ID card issued by North Carolina or another state
- a citizenship document issued by the U.S. Department of Homeland Security or U.S. Citizenship and Immigration Services
- property tax statement issued by a governmental agency
- vehicle registration issued by a governmental agency
- government check, including any Social Security, employment, pension, benefit, or reimbursement check from any government entity
- government invoice, statement, or receipt
- public housing identification card, lease, or rental statement
- public educational institution documents, including any student card, transcript, tuition statement, invoice, or receipt issued by any public educational institution
- government insurance plan card, drug discount card, or drug prescription issued by a government care facility (including military and veterans' facilities)
- discharge certificates, pardons, or other government documents issued in connection with the resolution of a criminal case, indictment, sentence, or other matter
- public transportation authority cards, invoices, receipts, or correspondence
- public assistance or disability agency documents
- documents issued by any government shelter or temporary/transitional housing facility
- drug prescription issued by a government doctor or other governmental health care provider

*The above list of government documents merely contains examples and is not exhaustive. Documents that are not listed above are acceptable provided they include the registrant's current name and residence address and meet the definition of a HAVA document in G.S. § 163-82.6B(e). Documents issued by an official entity of a recognized tribe are government documents.*

**Documents Issued by a college or university showing name and current address:**
- Students may also provide proof of residence by presenting any document from a college or university that contains the student's current name and residential address. Acceptable documents may be issued by either public or private educational institutions and include an invoice, transcript, correspondence, or a print-out or screenshot from any college or university source displaying the student's name and residential address (e.g., online student portals for registration, tuition, or housing). Such documents are acceptable whether the student's address is an on-campus or off-campus residence.

In order to be considered "current," the document must be unexpired, if it has an expiration date. **If the document does not have an expiration date, the issuance date must be within six months of the date it is presented to the election official.** An end date for a pay period or billing period is not an expiration date. To determine whether such a document is current, refer to its issuance date. In the absence of an issuance date or expiration date, for a document to be considered current, there must be other time-based indicators on the document showing that it is current.

You can provide a copy of the document in paper or electronic format.

NCSBE_0000497



**NORTH CAROLINA**
STATE BOARD OF ELECTIONS

P.O. Box 27255
Raleigh, NC 27611
(866) 522-4723
www.ncsbe.gov

### Numbered Memo 2023-05

| TO: | County Boards of Elections |
|---|---|
| FROM: | Karen Brinson Bell, Executive Director[1] |
| RE: | Same-Day Registration |
| DATE: | December 8, 2023 (updated January 29, 2024) |

This numbered memo provides guidance about same-day registration in accordance with the changes made by Session Law 2023-140 (SB 747). It replaces Numbered Memo 2016-15 and Numbered Memo 2012-20. It has been updated to comply with a court order which requires a same-day registrant whose address verification card is returned as undeliverable to get notified and have an opportunity to remedy that address verification failure.[2] That notice and remedy ("cure") process is discussed in Section 4 of this memo.

## 1. Requirements for Same-Day Registration

During the early voting period, an individual may register and vote at any early voting site in the county in which they reside. To do so, the individual must:

1. Present a "HAVA document" with the individual's current name and residence address;
2. Present acceptable photo ID; and
3. Complete an early voting voter registration application.

---

[1] This memo is issued under the authority delegated by the State Board to the executive director pursuant to G.S. § 163-22(p).

[2] See Voto Latino v. Hirsch, No. 1:23-cv-861, Doc. 68 (M.D.N.C. Jan. 21, 2024), which determined the procedure in G.S. § 163-82.6B(d) for rejecting a registration and removing a ballot for a same-day registrant whose mail verification was returned as undeliverable before canvass violates the federal Constitution without because the law did not require notice to the voter and an opportunity to be heard. The State Board may adopt interim rules and regulations if a court determines an election law is invalid or unenforceable. See G.S. § 163-22.2.

Formatted: Don't keep lines together
Formatted: Font: 11 pt
Formatted: Font: 11 pt
Formatted: Hyperlink, Font: 11 pt
Formatted: Font: 11 pt
Formatted: Line spacing: Multiple 1.19 li, Don't hyphenate
Formatted: Font: 11 pt
Formatted: Font: 11 pt

NCSBE_0000498

An individual who registers to vote during early voting will vote a retrievable ballot immediately after registering to vote.[3]

## 2. Proof of Voting Residence

A same-day registrant must present a "HAVA document" showing the registrant's current name and residence address in order to register and vote. A "HAVA document" is defined as one of the following documents:[4]

- A current utility bill
- A current bank statement
- A current government check
- A current paycheck
- Another current government document
- A current document issued from the institution that issued the photo ID being presented by the voter

The registrant may present either the original document or a copy of that document in hardcopy or electronic format, including by displaying the document on an electronic device.

### 2.1 What Makes a Document "Current"?

In order to be considered "current," the document must be unexpired, if it has an expiration date. **If the document does not have an expiration date, the issuance date must be within six months of the date it is presented to the election official.** For example, if the voter presents to vote on October 29, the issuance date must be between April 29 and October 29 of that year.

An end date for a pay period or billing period is not an expiration date. To determine whether such a document is current, refer to its issuance date. In the absence of an issuance date or expiration date, for a document to be considered current, there must be other time-based

---

[3] G.S. § 163-82.6B(b) (S.L. 2023-140, sec. 10(a)). If a person presents a valid registration but declines to vote, the registration shall be processed immediately, and the person may later vote at a one-stop site in the same election. Although the new statute does not directly address this situation, it does require that same-day registrations be processed. There is no authority to hold or refuse to process a same-day registration for a registrant who declines to vote at the time of registration. There is also no authority to refuse to allow a valid registrant to later vote at a one-stop early voting site, using a retrievable ballot that can later be removed from the count if the same-day registration fails mail verification, as explained further in the memo. The person may not vote on Election Day for that election.

[4] G.S. § 163-82.6B(e) (S.L. 2023-140, sec. 10(a)).

2

Formatted: Don't keep lines together

indicators on the document showing that it is current. This could include, for example, a printout from a university housing portal stating "Fall 2024" semester, if the student is voting in the 2024 general election, since that shows that the document is current within the last six months. It could also include a student showing on their phone a current webpage from their educational institution that lists the student's current name and residence address.

The county board does not retain a copy of the document presented, but the elections official will note the type of document presented in SEIMS (i.e., the SOSA/early voting application).

### 2.2 Examples of Acceptable Documents

A HAVA document must include the registrant's current name and residence address.

Acceptable "HAVA documents" that do not have to be issued by a governmental entity include:

- utility bill (including mobile service providers)
- bank statement
- paycheck (government or nongovernment)

Examples of other acceptable "HAVA documents" include a document issued by any federal, state, or local governmental agency or subdivision such as a:

- driver's license or ID card issued by North Carolina or another state
- citizenship document issued by the U.S. Department of Homeland Security or U.S. Citizenship and Immigration Services
- property tax statement issued by a governmental agency
- vehicle registration issued by a governmental agency
- government check, including any Social Security, employment, pension, benefit, or reimbursement check from any government entity
- government invoice, statement, or receipt
- public housing identification card, lease, or rental statement
- public educational institution documents, including any student card, transcript, tuition statement, invoice, or receipt issued by any public educational institution
- government insurance plan card, drug discount card, or drug prescription issued by a government care facility (including military and veterans' facilities)
- discharge certificates, pardons, or other government documents issued in connection with the resolution of a criminal case, indictment, sentence, or other matter
- public transportation authority cards, invoices, receipts, or correspondence
- public assistance or disability agency documents
- documents issued by any government shelter or temporary/transitional housing facility
- drug prescription issued by a government doctor or other governmental health care provider

3

NCSBE_0000500

The above list of government documents merely contains examples and is not exhaustive. Documents that are not listed above are acceptable provided they include the registrant's current name and residence address and meet the definition of a HAVA document in G.S. § 163-82.6B(e). Documents issued by an official entity of a recognized tribe are government documents.

### 2.3 Documents Issued by an Educational Institution

Students may also provide proof of residence by presenting any document from their college or university that contains the student's name and residential address. Acceptable documents may be issued by either public or private educational institutions and include an invoice, transcript, correspondence. or a print-out or screenshot from any college or university source displaying the student's name and residential address (e.g., online student portals for registration. tuition, or housing). Again, the document can be in physical or electronic form. Such documents are acceptable whether the student's address is an on-campus or off-campus residence.

Alternatively, the college or university may voluntarily provide elections officials with a list of students and their residential addresses. Any such lists must be current at the time of use and must display the residence address for each student to ensure the student is properly registered at the appropriate address.[5] Educational institutions may omit the names of individuals known to be ineligible based on citizenship status (e.g., exchange students holding student visas). The county board should request that each college or university also provide a template example of how to properly record the mailing address for their students. Election officials conducting same-day registration must be trained on these address conventions, so the registration can be successfully verified by mail (See "Ensuring the Correct Mailing Address" section below). **The student who is same-day registering must confirm to the election official that the housing list provided by the educational institution contains their current name and residential address.**

--------------------

[5] The list must indicate specific facility/address where the student resides because some jurisdictional boundaries may divide the campus. For example, a student living in Parrish Hall is eligible to vote in the contest for City Council A while a student living in Perry Hall is eligible to vote in the contest for City Council B. In rare instances, a jurisdictional boundary may even divide a residence hall. County boards must bear in mind that colleges and universities may use their own standard conventions for assigning addresses and ensuring that mail is delivered to on-campus students. When it comes to filling out the voter's registration form and inputting the registration data into SEIMS, county boards should work with their colleges and universities to ensure they are using the proper addressing conventions for student registrants while accounting for any campus splits in the Geocode application.

4

NCSBE_0000501

**If a student presents a document issued by a private educational institution as proof of residence, they must also present an approved photo ID from that institution. Students attending a public educational institution may present any acceptable photo ID since their proof of residence is a "government document."[6]**

## 3. Provisional Voting

If a voter is unable to provide a HAVA document showing their current name and residence address, the voter must be offered a provisional ballot. To have their provisional ballot counted, the voter must bring a copy of their HAVA document showing their current name and residence address to the county board office by 5 p.m. the day before county canvass.[7] As soon as a voter provides an acceptable HAVA document, the county board shall process the registration as described in the next section of this memo, Verification of Address by Mail. See page 9 of Numbered Memo 2023-04 for additional information of provisional voting by same-day registrants.

Similarly, if a same-day registrant does not present acceptable photo ID, the voter must be offered a provisional ballot with the options to either (1) complete a Photo ID Exception Form or (2) return to the county board of elections with their photo ID by the close of business on the day before county canvass. As long as the voter is deemed eligible to register and their mail verification card is not returned as undeliverable by the business day before canvass (as explained below), the voter's provisional ballot shall be counted according to the rules governing photo ID compliance for all voters.

For information about photo ID procedures, see Numbered Memo 2023-03.

## 4. Verification of Address by Mail and Curing Undeliverable Verification Card

Within two business days after an applicant same-day registers, the county board of elections shall verify the individual's driver's license or Social Security number in SEIMS, update the ap-

Formatted: Space After: 10 pt, Line spacing: Multiple 1.19 li

---

[6] G.S. § 163-82.6B(e)(6) (S.L. 2023-140, sec. 10(a)). For information about voting residence of college students, see https://www.ncsbe.gov/registering/who-can-register/registering-college-student.

[7] See G.S. § 163-82.4(f), which permits registrants to correct any omissions in their voter registration applications until 5 p.m. on the day before county canvass and instructs the county board to "count any portion of the provisional official ballot that the voter is eligible to vote," if such omissions are corrected. For same-day registrants, the "HAVA document" is a required item of the voter registration application.

NCSBE_0000502

plicant's record in SEIMS, search for and address possible duplicate registrations, and ~~be-~~ ~~ingbegin the address verification process~~ ~~verify the applicant's address~~ as provided by G.S. § 163-82.7.[8] During this initial phase, the county board shall also determine whether the applicant appears qualified to vote (e.g., their address is in county or they are not serving a felony sentence).[9] **If the county board has reliable grounds to believe the applicant is not qualified to vote at this initial stage, a challenge shall be filed as provided in Numbered Memo 2022-05.[10]**

After sending the address verification card by mail, the county boards shall proceed as follows:

~~County boards must work to send out mail verifications and process returned mail as quickly as possible during the early voting period and throughout the canvass period. They must also ensure that same-day registrations and returned mail from same-day registrations are kept separate from other registrations and returned mail.~~

~~The applicant's vote shall be counted unless one of the following occurs:~~

~~1.     The county board determines that the applicant is not qualified to vote (e.g., their address is not in-county or they are serving a felony sentence).[11]~~ **If the county board believes that the**

_____

[8] Registrants must provide their driver's license number or, if they do not have one, the last four digits of their Social Security number on the voter registration form. If they do not have either of these identifiers, they can mark a box on the form indicating that. If an individual has provided one of these identifiers but the computer validation of the number as required by G.S. 163-82.12 did not result in a match, and the number has not been otherwise validated by the board of elections, in the first election in which the individual votes that individual shall present with their ballot HAVA ID as defined in G.S. § 163-166.12. Voters who same-day register will have met the requirement to show HAVA ID through the proof-of-residence document requirement.

[9] G.S. § 163-82.6B(d) (SL 2023-140, sec. 10(a)).

[10] Although early voting is no longer a form of absentee voting, the county board may use the absentee ballot challenge procedures, as set forth in Numbered Memo 2022-05, because the county board is authorized to "pass upon the legality of disputed ballots" during canvass. G.S. § 163-182.5(a).

[11] G.S. § 163-82.6B(d) (SL 2023-140, sec. 10(a)).

6

~~applicant is not qualified to vote, a challenge shall be filed as provided in~~ <u>Numbered Memo 2022-05.</u>[12]

1.  ~~The Postal Service returns the first mail verification notice required by G.S. § 163-82.7(c).~~ <u>If the verification card is not returned as undeliverable by the close of business two days before county canvass, the voter's ballot shall remain in the official count.</u>[13]

2.  <u>If the verification card is returned as undeliverable before the close of business two days before county canvass, staff shall scan the undeliverable card into SEIMS (VoterView), which will generate the Undeliverable SDR Resolution screen. The registration status becomes DENIED with reason SDR VERIFICATION RETURNED UNDELIVERABLE. Staff shall then follow these steps, using the Undeliverable SDR Resolution screen:</u>

    a.  **Check for Address Errors.** <u>First,</u> ~~as undeliverable before the close of business on the business day before county canvass~~<u>make sure the address on the verification card is correct by comparing it to the voter registration application submitted during same-day registration. If there was an error in how the address was entered, select "Start New Mailing." In VoterView, change the applicant's status to ACTIVE, correct the address, and save it as an admin change. Include a comment in the VoterView profile noting, "Updated to active per Numbered Memo 2023-05." Open VoterView Admin Tasks, create new cards, print, mail, and update the mailing status accordingly.</u>

_____

[12] ~~Although early voting is no longer a form of absentee voting, the county board may use the absentee ballot challenge procedures, as set forth in Numbered Memo 2022-05, because the county board is authorized to "pass upon the legality of disputed ballots" during canvass. G.S. § 163-182.5(a).~~

[13] <u>See G.S. § 163.82.6B(d) (SL 2023-140, sec. 10(a)). Although this statute says that the county board shall retrieve the applicant's ballot if the verification mailing is returned as undeliverable "before the close of business on the business day before canvass," a court decision does not allow this to take place without providing the applicant notice of the verification failure and an opportunity to remedy it. See Voto Latino v. Hirsch, No. 1:23-cv-861, Doc. 68 (M.D.N.C. Jan. 21, 2024). When a verification mailing returns on the day before canvass, there is not enough time to provide the voter meaningful notice and opportunity to remedy this issue before canvass, which is occurring the next morning. So, compliance with this court order requires the county board to count the ballot of a registrant whose address verification mailing returns as undeliverable on the day before canvass or later.</u>

NCSBE_0000504

b. **Notice and Cure Process.** If there is no error in how the address was entered, select "Start Cure Process." Then, follow these steps:

  i. *Cure Notice.* The county board shall send a "Notice to Verify Your Address" to the registrant by mail and email, if provided on the registration form, within one business day of receiving the undeliverable verification card. The Notice language is appended to this memo and shall be used by the county board. (The letter cannot be sent via SEIMS.) County board staff shall also call the registrant to provide the information on the Notice orally, if the registration form includes a phone number. The registrant may confirm their address (i.e., "cure" the failed mail verification) by submitting a copy of a same-day registration "HAVA document" to the county board no later than 5 p.m. on the day before county canvass. The Notice will instruct the registrant to provide a document that is different from the one they used when registering during early voting. The document copy may be provided via email (with scanned or photographed document), fax, mail, or in-person delivery during business hours.[14] The Notice shall offer the registrant the opportunity to come in person to the canvass meeting to verify their address, if they are unable to provide an acceptable "HAVA document" by the deadline above. In that case, the county board shall take the registrant's testimony, under the first oath in G.S. § 163-86(e) and shall consider any documentation offered by the registrant.

  ii. *No Cure Notice.* If an undeliverable address verification card arrives at the county board on the day before canvass or later, the Notice shall not be sent, and the registrant's ballot must remain in the official count. At that point, there is not enough time to notify the voter and provide a meaningful opportunity to cure. See footnote 13. The registrant shall be sent a second card as required by G.S. § 163-82.7(e). If the second card is not returned as undeliverable, the county board shall register the applicant.

---

[14] This process to provide the voter notice of the address verification failure and a method of remedying that deficiency is designed to comply with a court order. See Voto Latino v. Hirsch, No. 1:23-cv-861, Doc. 68 (M.D.N.C. Jan. 21, 2024).

8

NCSBE_0000505

If the second card is returned as undeliverable, the county board shall deny the application and need not try to notify the registrant further.[15]

iii. *Cure Successful*. If the registrant returns a copy of a current "HAVA document" matching the residence address on their registration by the deadline, the county board shall select "Cure Successful" on the Undeliverable SDR Resolution screen. If a registrant fails to provide a "HAVA document" by the day before canvass but instead addresses the county board at the canvass meeting, the county board shall deem the undeliverable address verification to be "Cure Successful," if the board finds that the voter resides at the address claimed on their registration. In either case, In VoterView, change the applicant's status in VoterView shall be changed to ACTIVE and saved it as an admin change.[16] Include a comment in the VoterView profile noting, "Updated to active per Numbered Memo 2023-05." The registration is then verified and the voter's ballot shall remain in the official count.[17]

2. iv. *Not Cured*. If the registrant does not provide a copy of a current "HAVA document" matching the address on their registration by the deadline, select "Not Cured" on the Undeliverable SDR Resolution Undeliverable Card screen. Similarly, if a registrant addresses the county board at the canvass meeting and the county board does not find that the voter resides at the address claimed on their registration, the undeliverable address verification shall be deemed "Not Cured." In either case the In this case, the county board shall not register the applicant or send further verifications. The registrant's ballot shall be retrieved, and that ballot's

---

[15] G.S. § 163-82.7(f).

[16] This will trigger a new standard verification mailing, but even if that mailing returns as undeliverable, it will not lead to a denial of the registration because the initial registration has already been processed.

[17] If the document provided is a valid and current "HAVA document" with the correct address, it must be accepted as a cure for an undeliverable address verification mailing. Currently, there is no way to accurately and comprehensively compare the specific type of document provided to poll workers at the early voting site with a cure document provided to the county board office, to ascertain that the second document is different from the first. Further enhancements to SEIMS will be required to do this comparison effectively and uniformly.

9

NCSBE_0000506

votes shall be removed from the official count, using these steps:[18] ~~The county board shall not issue a challenge.~~

~~The county board shall carry out the following steps:~~

a.1. The board shall direct county board staff to retrieve the ballot.

b.2. The board shall complete a tally sheet to deduct the votes cast on the full ballot. The board shall direct staff to add a manual edit to the proper precinct results in the proper reporting group to deduct the ineligible votes that were recorded on the results tally sheet.

c.3. The staff shall then print two copies of the manual edit report and attach one report to the tally sheet and one report to the official canvass report.

d.4. The retrieved ballots and the accompanying tally sheet and a copy of the manual edit report shall then be sealed by the board and separated from the other ballots.

e.5. The official canvass reports shall be provided to the State Board pursuant to G.S. § 163-182.6.

~~If the first mail verification notice is returned as undeliverable any time *after* the close of business on the business day before county canvass, the registrant shall be sent a second notice as required by G.S. § 163-82.7(e). If the second notice is not returned as undeliverable, the county board shall register the applicant. If the second notice is returned as undeliverable, the county board shall deny the application and need not try to notify the registrant further.[19]~~ **County boards must work to send out mail verification cards and process returned mail as quickly as possible during the early voting period and throughout the canvass period. They must also ensure that same-day registrations and returned mail from same-day registrations are kept separate from other registrations and returned mail.**

## 5. Ensuring the Correct Mailing Address

Because a voter's ballot may be discounted ~~if a single piece of mail is returned as undeliverable by the Postal Service~~based on returned mail, **it is vital that ~~elections~~early voting officials emphasize to voters that they must provide an address where they can receive mail.** When assisting a registrant in completing an early voting application, elections officials shall:

- Ask if there is an apartment or unit number that is part of the voter's address; and

---

[18] See G.S. § 163-82.6B(d) (SL 2023-140, sec. 10(a)).

[19] ~~G.S. § 163-82.7(f).~~

NCSBE_0000507

- If the voter does not list a mailing address, ask if the voter can receive mail at their residential address. If not, the official must ask the voter to provide a mailing address.

Additionally, the ~~election~~ early voting official assisting a same-day registrant must recommend that the voter provide their phone number and/or email address on the registration form~~. This will allow the county board to so the elections office can~~ quickly contact the voter if ~~their address verification card is returned as undeliverable and the voter needs to provide another HAVA document to verify their address (i.e., notice and cure). there are any questions about their address or any other item on the form.~~ If a phone number or email address is provided and there are questions regarding the address before any mail verification card or cure notice is sent, county board staff should contact the voter to seek clarification ~~prior to sending the first mail verification notice required by G.S. § 163-82.7~~.

## 6. Frequently Asked Questions About Same-Day Registration

1. A same-day registrant who is a student at a public college or university in North Carolina presents their passport as their photo ID. Can the student present a tuition bill or other document issued by their school to prove their voting residence?

Yes. Regardless of the type of photo ID the registrant presents, a student attending a public college or university in North Carolina may present a current document issued by their institution to prove their voting residence, including referring to a list provided by the educational institution. This is because the student attends a public institution, and documents issued by public institutions are considered "another current government document" pursuant to G.S. § 163-82.6B(e)(5).

2. For their acceptable photo ID, the registrant presents a North Carolina driver's license that contains an address from another county. To prove their residence, the voter presents a separate HAVA document, such as a utility bill, that has a residence address in the county. Is this acceptable?

Yes. If the voter presents an acceptable HAVA document, that establishes their residence for same-day registration purposes, even if their photo ID has an older address—many voters do not immediately update their driver's licenses when they move. As a reminder, for photo ID purposes, the address on an eligible photo ID does not have to match the address where the voter currently resides. Accordingly, a voter may be able to satisfy the photo ID requirement and the HAVA document requirement for same-day registration using a photo ID with a current address, or they may need to present two documents—one for photo ID purposes and a different one to prove residence. See Numbered Memo 2023-03 (pg. 5) for further information about the separate

11

NCSBE_0000508

identification requirements for photo ID, HAVA ID, and same-day registration. Some documents can satisfy all of these requirements, but sometimes a voter will need to present separate documents to satisfy each separate requirement, depending on what documents they have.

    3. The voter presents a lease from a private landlord to prove their residence. Is this an acceptable HAVA document?

No. The only acceptable HAVA documents issued by private entities are utility bills, bank statements, paychecks, and documents issued by a private educational institution in combination with an acceptable photo ID from that institution.

    4. Is a document issued by an entity that *receives* governmental funding considered a government document under the same-day registration law?

No. An agency/entity of the government must issue a government document.

    5. What if an individual wants to same-day register but resides in a non-traditional residence? What about homeless individuals or individuals who stay in a vehicle and do not have a traditional fixed residence? What documentation can the individual provide?

An individual must register at the address at which they reside and to which, when absent, they intend to return. If a person's residence is not a traditional residence associated with real property, the location of the usual sleeping area for that person shall be controlling as to the residency of that person. Residence shall be broadly construed to provide all persons with the opportunity to register and to vote, including stating a mailing address different from residence address.[20]

A registrant with a nontraditional residence should list the address that identifies the location of their typical sleeping location. For example, a homeless person who typically sleeps in a homeless shelter would list the homeless shelter's address as their residence address. An individual who lives in an RV would list the address where they typically park the RV as their residence address.

Individuals with nontraditional residences are subject to the same proof-of-address requirements as any other same-day registrant. Elections officials should provide the registrant with a list of examples of acceptable documents and may need to brainstorm with the individual about how

---

[20] G.S. § 163-57(1).

NCSBE_0000509

they can obtain an acceptable HAVA document. A letter from a homeless shelter is acceptable if it is a government shelter.

13

NCSBE_0000510

COUNTY LETTERHEAD (with mail address, email address, phone, and fax)

Date

VOTER'S FULL NAME
ADDRESS LINE 1                                                          [EV] – #
ADDRESS LINE 2
ADDRESS LINE 3
LINE 4/CITY, STATE, ZIP CODE

## Notice to Verify Your Address

You recently registered to vote at an early voting site. However, when the county board of elections sent your voter registration card in the mail, it was returned by the Postal Service as undeliverable. **For your ballot to count, we must verify your address.**

**You must provide a copy of an acceptable document showing your name and current residence address.** Acceptable documents include any government document, utility bill, bank statement, paycheck, and many other types of documents. A list of acceptable documents is on the reverse side of this page. **The document you provide <u>cannot</u> be the same document you used when you registered at the early voting site.**

**Please send a copy of your document to your county board of elections no later than 5 p.m. on [INSERT DAY BEFORE CANVASS].** You may provide the document by any of the following methods *(see contact information at the top of this letter):*

- Email or fax (a scan or photo of the document is acceptable)
- Mail or commercial carrier
- Or by showing it in person to the county board of elections office located at _____

For faster processing, please include the "EV number" found at the top right of this Notice when providing your document.

If you are unable to provide an acceptable document verifying your residence by the deadline above, **you may come in person** to verify your address before the county board of elections at 11 am on **[INSERT DAY OF CANVASS]** at **[INSERT ADDRESS FOR CANVASS MEETING]**.

For any questions, call the county board of elections at the number listed above.

*Acceptable documents showing your residence address are shown on the reverse page of this Notice.*

NCSBE_0000511

# ACCEPTABLE DOCUMENTS TO VERIFY YOUR RESIDENCE ADDRESS

## Documents issued by a private or governmental entity showing name and current address:

- Utility bill (including cell phone service providers)
- Bank statement
- Paycheck

## Documents issued by any federal, state, or local governmental agency showing name and current address:

- drivers license or ID card issued by North Carolina or another state
- a citizenship document issued by the U.S. Department of Homeland Security or U.S. Citizenship and Immigration Services
- property tax statement issued by a governmental agency
- vehicle registration issued by a governmental agency
- government check, including any Social Security, employment, pension, benefit, or reimbursement check from any government entity
- government invoice, statement, or receipt
- public housing identification card, lease, or rental statement
- public educational institution documents, including any student card, transcript, tuition statement, invoice, or receipt issued by any public educational institution
- government insurance plan card, drug discount card, or drug prescription issued by a government care facility (including military and veterans' facilities)
- discharge certificates, pardons, or other government documents issued in connection with the resolution of a criminal case, indictment, sentence, or other matter
- public transportation authority cards, invoices, receipts, or correspondence
- public assistance or disability agency documents
- documents issued by any government shelter or temporary/transitional housing facility
- drug prescription issued by a government doctor or other governmental health care provider

   *The above list of government documents merely contains examples and is not exhaustive. Documents that are not listed above are acceptable provided they include the registrant's current name and residence address and meet the definition of a HAVA document in G.S. § 163-82.6B(e). Documents issued by an official entity of a recognized tribe are government documents.*

## Documents Issued by a college or university showing name and current address:

- Students may also provide proof of residence by presenting any document from a college or university that contains the student's current name and residential address. Acceptable documents may be issued by either public or private educational institutions and include an invoice, transcript, correspondence, or a print-out or screenshot from any college or university source displaying the student's name and residential address (e.g., online student portals for registration, tuition, or housing). Such documents are acceptable whether the student's address is an on-campus or off-campus residence.

In order to be considered "current," the document must be unexpired, if it has an expiration date. **If the document does not have an expiration date, the issuance date must be within six months of the date it is presented to the election official.** An end date for a pay period or billing period is not an expiration date. To determine whether such a document is current, refer to its issuance date. In the absence of an issuance date or expiration date, for a document to be considered current, there must be other time-based indicators on the document showing that it is current.

You can provide a copy of the document in paper or electronic format.

NCSBE_0000512

| **From:** | Olivia McCall <Olivia.McCall@wake.gov> |
| **Sent:** | Monday, December 04, 2023 10:18 AM |
| **To:** | Cox, Paul |
| **Subject:** | [External] Wake College Address Standards |
| **Attachments:** | College Address Standards VoterScan 08.24.22.pdf |

**CAUTION:** External email. Do not click links or open attachments unless verified. Report suspicious emails with the Report Message button located on your Outlook menu bar on the Home tab.

Hi Paul,

This may help sum up what we have to work with regarding the college and university addressing standards, see attached.

Some addresses you will see have a mailing address that require a dorm/unit number and others do not.
If a unit/dorm number is provided then we do incorporate it but majority of the time it is not listed.

Through geocode research and working with the college/university we are able to know what mailing addresses correspond to dorms. We have found that each college/university have different mailroom systems so I am sure this varies across the state.
However, regardless of the unit/dorm number it goes to the mailroom first in most cases and the college/university gets it to the voter through their internal system.

Olivia

**Olivia S. McCall**
Director
Wake County Government
Board of Elections
Olivia.McCall@wake.gov
919.404.4052 office
1200 N New Hope Rd., Raleigh, NC 27610/ PO Box 695, Raleigh, NC 27602
ReadyToVote.com


E-mail correspondence sent to and received from this address may be subject to disclosure under the North Carolina Public Records Act unless made confidential under applicable law.

EXHIBIT 30
WIT: _P. Cox_
DATE: _2/24/25_
DENISE MYERS BYRD

1

NCSBE_0000513

*Address Standards for Student Voter Registration*

## NCSU Residential Dormitories

| If the voter provides this address: | | | Enter Below in VoterScan | | |
|---|---|---|---|---|---|
| | | | **Residential Address** | | **Mailing Address** |
| 2821 | THURMAN | DR | NCSU BOWEN | 27607 | Insert Room #, if provided, and Dorm name on the second line.<br><br>2751 Cates Avenue<br>Room #, _____ Hall<br>Raleigh, NC 27607 |
| 2811 | THURMAN | DR | NCSU METCALF | 27607 | |
| 2801 | THURMAN | DR | NCSU CARROLL | 27607 | |
| 2800 | CATES | AVE | NCSU TUCKER | 27607 | |
| 2720 | CATES | AVE | NCSU OWEN | 27607 | |
| 2751 | CATES | AVE | NCSU OWEN | 27607 | |
| 2710 | CATES | AVE | NCSU TURLINGTON | 27607 | |
| 2700 | CATES | AVE | NCSU ALEXANDER | 27607 | |
| 2201 | DUNN | AVE | NCSU BAGWELL | 27607 | 2221 Dunn Avenue<br>Room #, _____ Hall<br>Raleigh, NC 27607 |
| 2221 | DUNN | AVE | NCSU BECTON | 27607 | |
| 2231 | DUNN | AVE | NCSU BECTON | 27607 | |
| 2211 | DUNN | AVE | NCSU BERRY | 27607 | |
| 2210 | BAVER | DR | NCSU SYME | 27607 | |
| 70 | PULLEN | RD | NCSU GOLD | 27607 | |
| 80 | PULLEN | RD | NCSU WELCH | 27607 | |
| 2200 | HILLSBOROUGH | ST | NCSU NORTH | 27607 | |
| 2200 | STINSON | DR | NCSU WATAUGA | 27607 | |
| 210 | DAN ALLEN | DR | NCSU BRAGAW | 27607 | 210 Dan Allen Drive<br>Room #, _____ Hall<br>Raleigh, NC 27607 |
| 2530 | SULLIVAN | DR | NCSU LEE | 27607 | |
| 2921 | THURMAN | DR | NCSU SULLIVAN | 27607 | |
| 2951 | THURMAN | DR | NCSU SULLIVAN | 27607 | |
| 2521 | WARREN CARROLL | DR | NCSU WOOD | 27607 | 2541 Warren Carroll Dr.<br>Room #, _____ Hall<br>Raleigh, NC 27607 |
| 2531 | WARREN CARROLL | DR | NCSU WOOD | 27607 | |
| 2541 | WARREN CARROLL | DR | NCSU WOOD | 28607 | |

## Example of how to enter an NCSU Dorm Address

**Voter Registration Form:**



**VoterScan Residential Address:**

27607



**VoterScan Mailing Address:**

# University Towers

Enter as:     111 Friendly Dr
                 Raleigh, NC 27607

# Wolf Village Apartments

*House number must be between 2710-2780.*
Enter Residential:     ____ Wolf Village Way
                           Unit #,
                           Raleigh, NC 27607
Enter Mailing:  2730 Wolf Village Way,
                     Unit #, Building Name
                     Raleigh, NC 27607

| Building Name | Street # | Building Name | Street # |
|---|---|---|---|
| MacKenzie Hall | 2710 | Caspian Hall | 2750 |
| Timber Hall | 2720 | Hudson Hall | 2760 |
| Gray Hall | 2730 | Arctic Hall | 2770 |
| Red Hall | 2740 | Baffin Hall | 2780 |

# Vie at Raleigh

| 200 | Wolf | Way | 5902 | Wolf Glen | Ct |
|---|---|---|---|---|---|
| 201 | Wolf | Way | 5903 | Wolf Glen | Ct |
| 312 | Wolf Creek | Cir | 307 | Wolf Green | Dr |
| 403 | Wolf Creek | Cir | 317 | Wolf Green | Dr |
| 412 | Wolf Creek | Cir | 6108 | Wolf Park | Dr |
| 5906 | Wolf Dale | Ct | 6118 | Wolf Park | Dr |
| 5907 | Wolf Dale | Ct | 404 | Wolf View | Dr |
| 309 | Wolf Den | Ln | 405 | Wolf View | Dr |
| 6105 | Wolf Glade | Ct | 5909 | Wolf Walk | Way |

# Village Green Apartments

*House number must be between 2011-2141.*
Enter as:     ____ Thesis Cir Unit__
              Raleigh, NC 27603
*Or*
Enter as:     ____ Neuse Bluff Ct Unit__
              Raleigh, NC 27603
*Or*
Enter as:     2000 Village Bluff Pl
              Raleigh, NC 27603

# Wolf Ridge Apartments

**Tower, Plaza, Innovation, Valley, Grove, Lakeview Halls**
*House number must be between 1900-1940.*
Enter Residential:     ____ Entrepreneur Dr,
                         Unit #,
                         Raleigh, NC 27606

*Or*
*House number must be between 351-381*
Enter Residential:     ____ Initiative Way, Unit #,
                         Raleigh, NC 27606

Enter Mailing:  1910 Entrepreneur Dr,
                    Unit #, Building Name,
                    Raleigh, NC 27606

# Campus Edge Apartments

| Raleigh, NC 27606 | |
|---|---|
| **Building #** | **Enter address as:** |
| 1 | 3611 Cum Laude Ct |
| 2 | 3621 Cum Laude Ct |
| 3 | 3601 Cum Laude Ct |
| 4 | 3531 Cum Laude Ct |
| 5 | 1861 Scholar Cir |
| 6 | 1841 Scholar Cir |
| 7 | 1830 Scholar Cir |
| 8 | 1840 Scholar Cir |
| 9 | 1860 Scholar Cir |
| 10 | 3500 Cum Laude Ct |
| 11 | 3520 Cum Laude Ct |
| 12 | 1811 Diploma Ct |
| 13 | 1801 Diploma Ct |

# Avent Ferry Residence Halls

| Dorm/Apt | Enter address as: |
|---|---|
| Auroro Hall | 2110 Avent Ferry Rd Raleigh, NC 27606 |
| Bayview Hall | |
| Swan Quarter Hall | Include dorm/apt number in UNIT field if provided |
| Ocracoke Hall | |
| Fort Fisher Hall | |

NCSBE_0000515

# E.S. King Village Apartments

| # | Street | Letter | Hall |
|---|--------|--------|------|
| 2911 | Ligon St. | A | Chowan |
| 2921 | Ligon St. | B | Currituck |
| 2941 | Ligon St. | D | Tyrrell |
| 2951 | Ligon St. | E | Onslow |
| 3001 | Ligon St. | F | Northhampton |
| 3950 | Jackson St. | H | Johnston |
| 3920 | Jackson St. | I | Bladen |
| 3910 | Jackson St. | J | New Hanover |
| 3840 | Jackson St. | K | Bertie |
| 3830 | Jackson St. | L | Carteret |
| 3810 | Jackson St. | M | Craven |
| 740 | Gorman St. | N | Pasquotank |
| 3930 | Jackson St. | Q | Edgecombe |

# Fraternity Court

Do not include a street direction (South or West).

## The College Inn

Enter as:  **2717 Western Blvd**
**Raleigh, NC  27606**

## Valentine Commons

Enter as:  **3009 M E Valentine Dr** Unit __
**Raleigh, NC  27607**

---

**Student Voter Registration other than NCSU**

---

# Meredith College

| Dorm/Apt | Enter address as: |
|----------|-------------------|
| Barefoot Hall | |
| Brewer Hall | |
| Faircloth Hall | **3800 Hillsborough St Raleigh, NC  27607** |
| Heilman Hall | |
| Poteat Hall | **Include dorm/apt number in UNIT field if provided** |
| Stringfield Hall | |
| Vann Hall | |
| The Oaks | |

# St Augustine's College

| Dorm | Enter address as: |
|------|-------------------|
| Atkinson Hall | |
| Baker Hall | **1315 Oakwood Ave Raleigh, NC  27610** |
| Boyer Hall | |
| Falkcrest Hall | **Include room number in UNIT field if provided** |
| Latham Hall | |
| Weston Hall | |

# Shaw University

| Address | Enter address as: |
|---------|-------------------|
| 724 S Person St Raleigh, NC 27601 | **118 E South St Raleigh, NC  27601** |
| 734 S Person St Raleigh, NC 27601 | **Include box number in UNIT field if provided** |

# William Peace University

Enter address as:  **15 E Peace St**
**Raleigh, NC  27604**
*Do **not** include a box or unit number.*

# Southeastern Baptist Theological Seminary

**Residential Address:** Use Street Address
Wake Forest, NC  27587

**Mailing Address for Dormitories:** Use SEBTS Box Number
Wake Forest, NC  27587

**SEBTS Box Format:** SEBTS BOX GO -
(write your box number after the hyphen) SEBTS BOX BO -
SEBTS BOX LO -
SEBTS BOX SH

NCSBE_0000516

NCSBE_0000517