IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:23-CV-878

| | |
|---|---|
| DEMOCRACY NORTH CAROLINA; *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> ALAN HIRSCH, in his official capacity as CHAIR OF THE STATE BOARD OF ELECTIONS, *et al.*, <br><br> *Defendants*. | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, RECONSIDER THE COURT'S PRIOR ORDER ON LEGISLATIVE DEFENDANTS' MOTION TO DISMISS** |

## INTRODUCTION AND STATEMENT OF THE NATURE OF THE MATTER

Intervenor-Defendants Philip E. Berger, in his official capacity as President *Pro Tempore* of the North Carolina Senate, and Destin C. Hall, in his official capacity as Speaker of the North Carolina House of Representatives ("Legislative Defendants") submit this memorandum in support of their motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) or, in the alternative, reconsider the Court's prior order denying Legislative Defendants' motion to dismiss. [D.E. 63]. Due to this Court's entry of a consent judgment in *Voto Latino, et al. v. Hirsch, et al.*, Case No. 1:23-cv-861, at D.E. 101 (M.D.N.C. 2023) ("*Voto Latino*") and *Democratic National Committee, et al. v. Hirsch, et al.*, Case No. 1:23-cv-862, at D.E. 98 (M.D.N.C. 2023) ("*DNC*"), Plaintiffs' claims are moot. As a result, this Court lacks subject matter jurisdiction and should dismiss the underlying action.

# STATEMENT OF FACTS[1]

Plaintiffs' complaint challenges §10.(a) of Senate Bill 747 ("S.B. 747"), codified at N.C.G.S. §163-82.6B. Specifically, Plaintiffs claim that the statutory changes to the mail verification processes for same-day registration ("SDR") applicants (hereinafter, the "Undeliverable Mail Provision"), violate their rights to procedural due process,[2] unduly burden the right to vote, and violate the Twenty-Sixth Amendment. [D.E. 1 at ¶¶ 94-118]. Concurrent to Plaintiffs' claims, two separate lawsuits were also filed in the Middle District of North Carolina, both challenging the same Undeliverable Mail Provision. *Voto Latino*, at D.E. 1; *DNC*, at D.E. 1. Both complaints contain substantially similar allegations to Plaintiffs' first and second claims for relief here. Specifically, all three complaints allege identical claims of due process violations arising from the Undeliverable Mail Provision's change from two verification mailers to one. *Compare* [D.E. 1 at ¶¶ 100-02] *with Voto Latino*, at D.E. 1 ¶¶88, 90 *and DNC*, at D.E. 1 ¶¶69-71. All three complaints also claim that the Undeliverable Mail Provision creates an undue burden on the right to vote. [D.E. 1 at ¶ 110]; *Voto Latino*, at D.E. 1 ¶ 96; *DNC*, at D.E. 1 ¶¶ 57-58. Similarly, all three complaints asked that the Undeliverable Mail Provision be permanently enjoined. [D.E. 1

---

[1] The history of S.B. 747's passage and both the pre- and post-S.B. 747 mail verification processes has been thoroughly briefed by the parties and recited in this Court's prior orders. [D.E. 46, 50, 63]. For the sake of brevity, those background facts are not repeated here.

[2] Based on conversations and emails with Plaintiffs' counsel, it is likely that Plaintiffs agree that their first claim, the procedural due process claim, is moot. However, due to the looming trial date of August 4, 2025, Legislative Defendants wanted to file this motion as soon as possible after it became clear via the meet and confer process that the Plaintiffs did not agree that all of their claims were moot.

at Prayer for Relief ¶(f)]; *Voto Latino,* at D.E. 1 at Prayer for Relief ¶(c); *DNC,* at D.E. 1 at Prayer for Relief ¶(b).

Soon after filing, plaintiffs in both *Voto Latino* and *DNC* sought preliminary injunctions regarding the Undeliverable Mail Provision. *Voto Latino*, at D.E. 44; *DNC*, at D.E. 6. Plaintiffs in the present matter did not seek preliminary injunctive relief. On January 21, 2024, this Court entered a preliminary injunction order in the other two matters enjoining the State Board from using the Undeliverable Mail Provision to remove the ballots SDR applicants who had their mail verifications returned as undeliverable before the close of business the day before county canvass, without first providing the voters notice and an opportunity to be heard. *Voto Latino v. Hirsch*, 712 F. Supp. 3d 637 (M.D.N.C. 2024). As a result, the State Board updated Numbered Memo 2023-05 on January 29, 2024, (hereinafter, the "Numbered Memo") to establish a notice and cure process for SDR registrants. [D.E. 119-1 at pp. 56-70].

On April 2, 2024, this Court entered a memorandum opinion and order in this case denying Legislative Defendants and the State Board's respective motions to dismiss. [D.E. 63]. Although the order considered the Numbered Memo's unchallenged cure process and the ongoing injunction, it declined to dismiss due to the "preliminary nature of the [] injunction" and "the interim nature of the [numbered memo]." [*Id.* at pp. 7-8]. Tellingly, the order noted the future potential of Plaintiffs' claims becoming moot due to intervening actions. [*Id.* at p. 25].

On April 10, 2024, this Court stayed both *Voto Latino* and *DNC* upon the parties' joint application. *Voto Latino*, at D.E. 89; *DNC*, at D.E. 90. The present matter was also

3

Case 1:23-cv-00878-TDS-JEP    Document 126    Filed 05/13/25    Page 3 of 12

stayed for a period of time to allow for the November 5, 2024, general election and an analysis of pertinent post-election data. [Text Order, June 30, 2024; D.E. 92]. Although Plaintiffs in the present matter opposed a stay, they also did not challenge the Numbered Memo's cure provisions which remained in effect. [D.E. 87 at p. 12] (conceding that "Legislative Defendants are correct . . . that no one has challenged the Numbered Memo to date [.]"). Discovery fully recommenced on January 1, 2025. [D.E. 92]. Plaintiffs did not attempt to amend their complaint during the approximately fourteen-month period in which they could have challenged the Numbered Memo. Discovery was completed on April 4, 2025.

Legislative Defendants and the State Board then separately moved for summary judgment on April 11, 2025. [D.E. 119, 121]. In their motion, Legislative Defendants argued that summary judgment is appropriate both because Plaintiffs lack Article III standing and because their Twenty-Sixth Amendment claim fails as a matter of law, [D.E. 119]. That same day the State Board filed a motion for summary judgment, echoing Legislative Defendants' arguments. [D.E. 121]. Those motions are pending.

On April 22, 2025, all parties in *Voto Latino* and *DNC* jointly moved for the entry of a consent judgment, which this Court granted on April 28, 2025. *Voto Latino*, at D.E. 101; *DNC*, at D.E. 98 (collectively, the "Consent Judgment") [Ex. 1[3]]. Amongst other things the Consent Judgment permanently enjoins the State Board from enforcing S.B. 747's Undeliverable Mail Provision in future elections until an affected voter is provided

---

[3] A copy of the Consent Judgment is attached to Legislative Defendants' Motion as Exhibit 1 (hereinafter, "Ex. 1").

specified notice and an opportunity to remedy their address verification failure. [*Id.* at Section V(A)]. The Consent Judgment also prohibits the removal of the ballots of SDR applicants who have their address verifications returned as undeliverable after the close of business on the second business day before the county canvass. [*Id.* at Section V(B)].

## STATEMENT OF QUESTION PRESENTED

Whether this Court's entry of the Consent Judgment in *DNC* and *Voto Latino* moots Plaintiffs' claims here.

## ARGUMENT

### I. Standard

A court's subject matter jurisdiction is a threshold issue which must be addressed before considering a claim's merits. *McAdoo v. Univ. of N. Carolina at Chapel Hill*, 248 F. Supp. 3d 705, 709 (M.D.N.C. 2017). A motion to dismiss pursuant to Rule 12(b)(1) may be raised at any point, including *sua sponte* by the court. *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004); Fed. R. Civ. P. 12(h)(3). When a party challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings without converting the motion into one for summary judgment. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991).

Alternatively, reconsideration of an interlocutory order is governed by Rule 54(b) of the Federal Rules of Civil Procedure. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003). The Fourth Circuit has established three circumstances in which an interlocutory order may be reconsidered: "(1) there has been an intervening

5

change in controlling law, (2) new evidence becomes available, or (3) the earlier decision was based on a clear error of law or would result in a manifest injustice." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (citation omitted). "When assessing a Rule 54(b) motion for reconsideration, these standards are not applied with the same strictness as when they are used under Rule 59(e)." *Mobley v. Greensboro City Police Dep't*, No. 1:17-CV-114, 2018 WL 6110997, at *2 (M.D.N.C. Nov. 21, 2018).

## II. Plaintiffs' claims are moot in light of the *DNC* and *Voto Latino* Consent Judgment.

"When a case or controversy ceases to exist, the litigation is moot, and the court's subject matter jurisdiction ceases to exist also." *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015). "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.* (TOC), Inc., 528 U.S. 167, 189 (2000) (citation omitted). When intervening actions effectively grant a party their core relief sought, courts regularly deem any remaining claims moot. *Holloway v. City of Virginia Beach*, 42 F.4th 266, 273-74 (4th Cir. 2022); *ClearOne Advantage, LLC v. Kersen*, 756 F. Supp. 3d 30 (D. Md. 2024).

Plaintiffs' claims are moot due to the Consent Judgment, which permanently enjoins the State Board from enforcing S.B. 747's Undeliverable Mail Provision as written. [Ex. 1 at Section V]. In its place, the State Board must employ a notice and cure process that is the same as the Numbered Memo, for all affected SDR applicants. [*Id.* at Section V(A)]. Also like the Numbered Memo, the State Board may not use the Undeliverable Mail

6

Provision to remove the ballots of SDR applicants who have their mail verifications returned as undeliverable after the close of business on the second business day before the county canvass. [*Id.* at Section V(B)]. These two items strike at the heart of Plaintiffs' claims for relief. *Compare* [D.E. 1 at ¶¶ 100-102, 110-112, Prayer for Relief ¶(f) (alleging that the Undeliverable Mail Provision fails to offer an affected registrant with notice and an opportunity to cure a failed address verification and asking that the provision be enjoined)] *with* [Ex. 1 at Section V(A)-(B) (enjoining the enforcement of the Undeliverable Mail Provision and creating a permanent notice and cure procedure consistent with the Numbered Memo)]. Because the Undeliverable Mail Provision is all Plaintiffs challenge here, and because the Consent Judgment alters the Undeliverable Mail Provision to provide a notice and cure process, Plaintiffs' claims are moot. *Friends of the Earth, Inc.*, 528 U.S. at 189.

Likewise, the Consent Judgment constitutes an intervening change warranting a reconsideration of the Court's prior order denying Defendants' motions to dismiss. Since that order, the State Board is now prohibited from acting in the manner Plaintiffs complain of and must follow the Consent Judgment's procedures. This change in circumstances provides the certainty and finality which this Court found lacking in its order denying the prior motions to dismiss. [D.E. 63 at pp. 7-8]. As such, a reconsideration of that order is warranted both under Rule 54(b) and this Court's inherent discretion to modify its interlocutory orders. *Am. Canoe Ass'n*, 326 F.3d at 515.

7

### a. Plaintiffs' Due Process[4] and Undue Burden claims are moot.

In both form and function, the Consent Judgment provides Plaintiffs with the very process they allege the Undeliverable Mail Provision lacks. Specifically, affected SDR registrants are given both notice and an opportunity to cure an address verification failure. [Ex. 1 at Section V(A)-(B)]. They also may not have their ballots removed if their mail verification is returned as undeliverable after the close of the second day before county canvass. [*Id.*]. Ultimately, the Consent Judgment offers Plaintiffs their core requested relief: an injunction prohibiting the use of S.B. 747's Undeliverable Mail Provision in future elections. *Compare* [*id.*] *with* [D.E. 1 at Prayer for Relief ¶ (f)]. Because Plaintiffs allege the same claims of procedural due process violations and undue burden as those brought in *Voto Latino* and *DNC*, the resolution of those claims should dictate the claims here. *Compare* [D.E. 1 at ¶¶100-02, 110] *with Voto Latino*, at D.E. 1 ¶¶88, 90, 96 *and DNC*, at D.E. 1 ¶¶57-58, 69-71. Here there is no further relief which Plaintiffs could receive beyond that which the Consent Judgment provides—a hallmark of mootness. *Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013).

In its order denying Defendants' motions to dismiss, this Court expressly recognized the potential for future actions mooting Plaintiffs' claims. [D.E. 63 at p. 25]. Similarly, the order pointed to the "interim nature" of both the Court's injunction in *Voto Latino* and *DNC*, as well as the potential expiration of the Numbered Memo. [*Id.* at pp. 7-8]. Since that order, the posture of this case has completely changed. The *Voto Latino* and *DNC* temporary

---
[4] *See supra* note 2.

injunctions have effectively been made permanent, and the very same statutory provisions challenged here cannot be enforced as written.

### b. Plaintiffs' Twenty-Sixth Amendment claim is moot.

Setting aside the question of whether Plaintiffs have identified a cognizable Twenty-Sixth Amendment claim, that claim is similarly mooted by the Consent Judgment. Although no party in *Voto Latino* or *DNC* brought a Twenty-Sixth Amendment claim, Plaintiffs' novel theory is, at its core, no different in the relief sought in their other claims because all of Plaintiffs' claims are premised upon the same changes to the Undeliverable Mail Provision. *Compare* [D.E. 1 at ¶118 (complaining of the alleged impacts of S.B. 747's Undeliverable Mail Provision as applied to "young voters")] *with* [*Id.* at ¶¶101-02, 110 (complaining of the exact same Undeliverable Mail Provision in the contexts of procedural safeguards and the right to vote generally)]. Because that challenged provision can no longer be enforced by virtue of the Consent Judgment, there is no justiciable controversy remaining for this Court to resolve. As a result, this Court need not reach the merits of Plaintiffs' third claim for relief, and it should be dismissed.

## III. Alternatively, Rule 54(b) supports dismissing Plaintiffs' claims.

As explained above, Plaintiffs' claims are mooted by the Consent Judgment. Due to the change in circumstances, this Court lacks subject matter jurisdiction and should dismiss Plaintiffs' claims accordingly. Alternatively, the factors identified in *Am. Canoe Ass'n*, 326 F.3d at 515, and reiterated in *Carlson* support reconsideration of the Court's prior order denying Legislative Defendants' Motion to Dismiss. 856 F.3d at 325. Specifically, the intervening change created by the Consent Judgment affords Plaintiffs with the permanent

9

Case 1:23-cv-00878-TDS-JEP    Document 126    Filed 05/13/25    Page 9 of 12

relief this Court previously found lacking, [D.E. 63 at 7-8], and a revised order dismissing Plaintiffs' claims is appropriate.

## CONCLUSION

For the foregoing reasons Plaintiffs' claims are moot and should be dismissed with prejudice.

Respectfully submitted, this the 13th day of May, 2025.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/ Phillip J. Strach
Phillip J. Strach (NCSB # 29456)
Alyssa M. Riggins (NCSB # 52366)
Cassie A. Holt (NCSB # 56505)
Jordan A. Koonts (NCSB #59363)
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3779
phil.strach@nelsonmullins.com
alyssa.riggins@nelsonmullins.com
cassie.holt@nelsonmullins.com
jordan.koonts@nelsonmullins.com

*Counsel for Legislative Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d), I hereby certify that this brief contains 2,429 words as counted by the word count feature of Microsoft Word.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456

11

Case 1:23-cv-00878-TDS-JEP    Document 126    Filed 05/13/25    Page 11 of 12

## CERTIFICATE OF SERVICE

I, Phillip J. Strach, hereby certify that on this day the forgoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will provide electronic notice to all counsel of record.

This the 13th day of May, 2025.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456