DEMOCRACY NORTH CAROLINA; NORTH CAROLINA BLACK ALLIANCE; LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA,

      *Plaintiffs,*

    v.

ALAN HIRSCH, in his official capacity as CHAIR OF THE STATE BOARD OF ELECTIONS; JEFF CARMON III, in his official capacity as SECRETARY OF THE STATE BOARD OF ELECTIONS; STACY EGGERS IV, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; KEVIN LEWIS, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; SIOBHAN O'DUFFY MILLEN, in her official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as EXECUTIVE DIRECTOR OF THE STATE BOARD OF ELECTIONS; NORTH CAROLINA STATE BOARD OF ELECTIONS,

      *Defendants,*

    and

PHILIP E. BERGER, in his official capacity as PRESIDENT *PRO TEMPORE* OF THE NORTH CAROLINA SENATE; and TIMOTHY K. MOORE, in his official capacity as SPEAKER OF THE NORTH CAROLINA HOUSE OF REPRESENTATIVES,

      *Intervenor Defendants.*

**PLAINTIFFS' OPPOSITION TO LEGISLATIVE DEFENDANTS' MOTION TO DISMISS**

## NATURE OF THE MATTER BEFORE THE COURT

Democracy North Carolina, North Carolina Black Alliance, and League of Women Voters of North Carolina ("Plaintiffs") submit this response in opposition to Legislative Defendants' Motion to Dismiss on mootness grounds (Dkts. 125, 126 ["Mot. __"]).

From the outset of this case, Plaintiffs have sought one thing: a permanent injunction against Senate Bill 747's entire same-day registration scheme. The basis for that requested relief is three distinct causes of action, each of which address a different constitutional infirmity in the challenged law. Now, Legislative Defendants argue that because of partial relief ordered by this Court in two related cases—relief obtained through negotiations with *different* parties on a *different*, narrower set of claims based on a limited pre-discovery record—this case too is resolved. But neither the law nor facts permit that outcome.

First, Legislative Defendants cannot meet the "demanding standard" to establish that this case is moot, for which they carry the burden. *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019). "A case becomes moot *only* when it is impossible for a court to grant *any* effectual relief whatever to the prevailing party." *United States v. Springer*, 715 F.3d 535, 540 (4th Cir. 2013). As long as the parties retain a "concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307-08 (2012) (citation omitted).

Here, the factual record developed over the course of the discovery period—which reveals the continuing disenfranchisement of eligible voters through no fault of their own, an ineffective notice-and-cure process, and strong indicia of intentional discrimination against youth voters—provides sufficient evidence to justify a post-trial remedy that is

1

different and broader than the relief that was brokered in a settlement anchored by this Court's early-stage preliminary injunction order. Potential relief, as requested by Plaintiffs, could range from full invalidation to other court-ordered changes that address the specific character and magnitude of the burdens of S.B. 747. This possibility alone demonstrates the necessary "concrete interest" sufficient to defeat a mootness challenge.

Second, Legislative Defendants overstate the breadth of the Consent Judgment and distort Plaintiffs' claims and prayer for relief. The Consent Judgment was a product of negotiations involving parties and claims not present in this case. As with all brokered settlements, it was a compromise of the parties' interests, resulting in a limited notice-and-cure process applying to future same-day registration under S.B. 747. To say that the partial relief reached under those circumstances captures the "core relief sought" (Dkt. 125 at 1) or the only relief available to Plaintiffs—who have different claims, seek full invalidation, and have pursued the case to trial—is illogical and self-serving.

For these reasons, and those that follow, the motion to dismiss should be denied.

## **STATEMENT OF FACTS**

Plaintiffs filed this action on October 17, 2023, seeking a declaratory judgment that Section 10(a) of Senate Bill 747 ("S.B. 747") is unconstitutional under the First, Fourteenth, and Twenty-Sixth Amendments and a permanent injunction barring Defendants from enforcing the same. Dkt. 1. The Complaint alleges three unique causes of action:

2

- Count One (All Defendants) – Denial of Plaintiffs' Right to Procedural Due Process in violation of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983;

- Count Two (All Defendants) – Undue Burden on the Fundamental Right To Vote in Violation of the First and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983; and

- Count Three (All Defendants) – Intentional Discrimination in Violation of the Twenty Sixth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

Dkt. 1, ¶¶ 94-118. For each enumerated count, the Complaint details the specific constitutional violations and corresponding harm caused by S.B. 747's same-day registration scheme. *Id*.

Plaintiffs' Prayer for Relief sought a declaration as to each separate claim (*see id*. Prayer for Relief (c), (d), (e)) and an order enjoining "Defendants, their agents, officers, employees, successors, and all persons acting in concert with each or any of them from enforcing Section 10(a) of Senate Bill 747, including enjoining Defendants from conducting any elections utilizing that provision." *Id*. Prayer for Relief (f).

Legal challenges to Senate Bill 747 were also brought in *Voto Latino, et al. v. Hirsch, et al.*, Case No. 1:23-cv-861 (M.D.N.C. 2023) ["*Voto Latino*"] and *Democratic National Committee, et al. v. Hirsch, et al.*, Case No. 1:23-cv-862 (M.D.N.C. 2023) ["*DNC*"]. Though similar, their complaints differ from Plaintiffs' here in critical ways. Each had procedural due process and undue burden claims (*see Voto Latino*, Dkt. 1, ¶¶ 83-98; *DNC*, Dkt. 1, ¶¶ 52-77), but neither had a Twenty-Sixth Amendment claim. Whereas Plaintiffs here seek invalidation of Section 10(a) of Senate Bill 747 in its entirety, *Voto Latino* plaintiffs only challenged sub-part (d) of Section 10(a). *Voto Latino*, Dkt. 1, ¶ 1,

3

Prayer for Relief (c). *DNC* plaintiffs, meanwhile, brought additional state law and statutory claims, and sought the enjoinment of discrete aspects of S.B. 747, including "requiring same-day registrants to produce documentation that other registrants do not need to produce," "denying a same-day registrant's application to register without providing that individual with sufficient notice and an opportunity to be heard," and "rejecting a same-day registrant's application to register based on the return of a single notice by the [USPS] as undeliverable." *DNC*, Dkt. 1, Prayer for Relief (b)(1)-(3). Additionally, unlike the allegations supporting the plaintiffs in *Voto Latino* and *DNC*, Plaintiffs' Complaint emphasizes the particular harm likely to befall youth voters, given the known difficulties they face in exercising the fundamental right to vote and the way in which the new regime would exacerbate those barriers.

Soon after filing, plaintiffs in both *Voto Latino* and *DNC* moved for preliminary injunctions on their claims. *Voto Latino*, Dkt. 44; *DNC*, Dkt. 6. The relief requested tracked the relief cited in their respective complaints. On January 21, 2024, this Court granted in part and denied in part the pending motions. *Voto Latino v. Hirsch*, 712 F. Supp. 3d 637 (M.D.N.C. 2024) ["PI Order"]. Per that order, Defendants were:

> ENJOINED from utilizing the procedures of N.C. Gen. Stat. § 163-82.6B(d) to remove from the official count the votes of the ballot of any voter who has provided contact information in the registration process and whose first notice required under N.C. Gen. Stat. § 163-82.7(c) is returned by the Postal Service as undeliverable before the close of business on the business day before the canvass, without first providing such voter notice and an opportunity to be heard.

4

*Id.* at 684. In all other respects, the motions were denied. *Id.* The PI Order was silent on what form any "notice and an opportunity to be heard" must take to meet constitutional muster.

On January 29, 2024, in response to the PI Order and pursuant to N.C. Gen. Stat. § 163-22.2 which allows for the adoption of interim rules and regulations, the State Board updated Numbered Memo 2023-05 to include a "notice and remedy ('cure') process" for a "same-day registrant whose address verification card is returned as undeliverable." N.C. State Bd. of Elections, *Numbered Memo 2023-05*, at 1 (Jan. 29, 2024), https://s3.amazonaws.com/dl.ncsbe.gov/sboe/numbermemo/2023/Numbered%20Memo%202023-05%20Same-Day%20Registration.pdf; *see also* Dkt. 53-1 [hereinafter "NM 2023-05"]. Per statute, this cure process would expire "60 days after the convening of the next regular session of the General Assembly."[1] Three months after the injunction was entered, *Voto Latino* and *DNC* plaintiffs stipulated to a stay of all proceedings in their matters. *Voto Latino*, Dkt. 87; *DNC*, Dkt. 89. Plaintiffs here were not consulted in any manner in connection with the updating of NM 2023-05 and have never suggested it was an adequate remedy.

---

[1] *See* N.C. Gen. Stat. § 163-22.2. The General Assembly convened on January 8, 2025, which means NM 2023-05 is currently "null and void" per statute. *See Senate Calendar*, N.C. General Assembly, https://calendars.ncleg.gov/CalendarDoc/2025/8937/Senate%20Calendar (last visited May 28, 2025); *House Calendar*, N.C. General Assembly, https://calendars.ncleg.gov/CalendarDoc/2025/8939/House%20Calendar (last visited May 28, 2025).

In the meantime, litigation of Plaintiffs' Complaint here continued. On April 2, 2024, this Court denied Defendants' motions to dismiss as to each Count in Plaintiffs' Complaint and deferred a ruling on the legal sufficiency of Count Three until trial. Dkt. 63 at 27-28. In subsequent briefing on issues related to discovery, Plaintiffs stated that they "do not concede that the Numbered Memo is adequate permanent relief" and that "[e]ven if the Numbered Memo were codified, it should not be equated with the broader permanent relief Plaintiffs seek here." Dkt. 87 at 12. Plaintiffs maintained that position in their summary judgment response. Dkt. 124 at 17, 23 n.7.

On April 22, 2025, the parties in *Voto Latino* and *DNC* jointly moved for entry of a consent judgment, which this Court granted on April 28, 2025. *Voto Latino*, Dkt. 101; *DNC*, Dkt. 98 ["Consent Judgment"]. Plaintiffs were not parties to the joint motion nor invited to or involved in the negotiations preceding the filing and proposed settlement. The Consent Judgment was based on the Court's finding "that federal law requires notice and an opportunity to be heard or for cure prior to retrieving a ballot pursuant to the Undeliverable Mail Provision." Consent Judgment at 4 (referencing the PI Order). Under its terms, the State Board will enforce Section 10(a) of S.B. 747, but are enjoined from:

> A. . . .[U]tilizing the procedures of N.C. Gen. Stat. § 163-82.6B(d) to remove from the official count the votes of the ballot of any voter who has provided contact information in the registration process and whose first notice required under N.C. Gen. Stat. § 163-82.7(c) is returned by the Postal Service as undeliverable before the close of business on the second business day before the county canvass, without first providing such voter notice and an opportunity to remedy the address verification failure. Such notice shall be provided to the voter via U.S. mail and, if the voter provided additional contact information, by telephone and email, with one business day of receiving the undeliverable mail notice. Voters must be permitted to remedy the address verification failure with

documentation submitted in person, by mail, by email, or by fax. The documentation must be received by 5 p.m. on the day before county canvass; provided, however, that a voter who is unable to provide the documentation by this deadline may also provide documentation in person at the county canvass, or may address the county board at the county canvass.

B. . . . [U]tilizing the procedures of N.C. Gen. Stat. § 163-82.6B(d) to remove from the official count the votes of the ballot of any voter who has provided contact information in the registration process as a result of that voter's first notice required under N.C. Gen. Stat. § 163-82.7(c) having been returned by the Postal Service as undeliverable after the close of business on the second business day before the county canvass.

Consent Judgment at 7-8.

Legislative Defendants describe the Consent Judgment as requiring a "notice and cure process that is the same as the Numbered Memo" in support of their mootness argument. Mot. 6. This is an overstatement. Not only have Plaintiffs here *never* agreed that NM 2023-05 was a sufficient cure, but the Consent Judgment does not incorporate by reference NM 2023-05 nor fully track its substantive language. Absent from the terms of the Consent Judgment are critical aspects of NM 2023-05, including, for example, the requirement that county boards "Check for Address Errors" and restart the verification process if an error is identified. *See* NM 2023-05 at 7. That requirement, which is an additional step to prevent the rejection of lawfully cast ballots due to poll worker error, prevented over 150 ballots from being wrongfully rejected in the 2024 General Election. Dkts. 124 at 12 (discussing the 172 "registrants flagged as having a mailing address error"), 124-51, ¶¶ 129-138 (Dr. Kevin Quinn Expert Report). Other procedural safeguards from NM 2023-05 are also not included, such as what substance is required in the notice sent to failed-verification voters and what acceptable verification documents are identified. *See*

7

NM 2023-05 at 12-13. Without clarity on what a voter must do to protect their ballot and how to go about doing so, eligible voters are less able to navigate these burdens to ensure their ballots are counted.

On May 13, 2025, Legislative Defendants filed the instant motion arguing that Plaintiffs' case is moot because of the Consent Judgment. Recognizing that Count One had been addressed by the Consent Judgement, on May 22, 2025, Plaintiffs filed a joint stipulation voluntarily dismissing the Count with prejudice but allowing the remainder of Plaintiffs' claims to proceed. Dkt. 133.

## QUESTION PRESENTED

1.  Have Legislative Defendants carried their heavy burden of showing that it is *impossible* for this Court to grant any effectual relief whatsoever to Plaintiffs?

## LEGAL STANDARD

The mootness doctrine "constitutes a relatively weak constraint on federal judicial power." *Springer*, 715 F.3d at 540. "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)). As long as the plaintiffs retain a "concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox*, 567 U.S. at 307-08; *see also MOAC Mall Holdings LLC v. Transform Holdco LLC,* 598 U.S. 288, 295 (2023) (same). Unlike questions of standing at the outset of a case, the defendant "bears the burden to establish that a once-live case has become moot." *West Virginia v. EPA*, 597 U.S. 697, 719 (2022) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

8

"Since mootness depends on the court's ability to grant effectual relief, it follows that mootness hinges on the type of relief sought." *Lancaster v. Sec'y of the Navy*, 109 F.4th 283, 289 (4th Cir. 2024). "A claim may be mooted 'when the claimant receives the relief he or she sought to obtain through the claim,' because the court no longer 'has [] effective relief to offer.'" *Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013) (citation omitted). In other words, where a litigant has already received "the *precise* relief that petitioners requested in the prayer for relief in their complaint," the case may be rendered moot. *N.Y. State Rifle & Pistol Ass'n. v. City of New York*, 590 U.S. 336, 338-39 (2020) (emphasis added); *Holloway v. City of Va. Beach*, 42 F.4th 266, 275 (4th Cir. 2022) (finding a challenge to an eliminated election scheme mooted because "plaintiffs already have gotten all that they asked for in their amended complaint," and "[t]he only thing a court can add now is an advisory opinion as to the legal status of an effectively defunct electoral system"); *see also Chafin v. Chafin*, 568 U.S. 165, 177 (2013) ("[E]ven the availability of a partial remedy is sufficient to prevent [a] case from being moot.").

## ARGUMENT

Plaintiffs' challenges to S.B. 747 were not mooted by the Consent Judgement entered in the related cases. Plaintiffs' Complaint requested declarations that S.B. 747's same-day registration regime violates the right to procedural due process under the Fourteenth Amendment, violates the First and Fourteenth Amendments as an undue burden on the right to vote, and violates the Twenty-Sixth Amendment. Plaintiffs also requested that the Court permanently enjoin Defendants from enforcing the challenged law. At minimum, the Court could grant effectual relief to Plaintiffs by further enjoining any

9

enforcement of the same-day registration provision of S.B. 747 (even as modified by the Consent Judgment), which is the appropriate remedy for a law passed with a discriminatory purpose as discussed below.

Beyond that, the Consent Judgment has not eliminated the significant risk under the challenged law that a voter who follows all applicable rules can still be disenfranchised through no fault of their own. Ample evidence developed in discovery supports this reality, even where a notice-and-cure process akin to what the Consent Judgment requires was in use. While Plaintiffs' *Anderson-Burdick* claim allows for complete invalidation as a remedy (as Plaintiffs have sought), more targeted relief—but still relief beyond the Consent Judgment—is also possible given the fact-specific inquiry and balancing required under that legal framework. In either case, because more relief is attainable, the case is not moot.

## I. Legislative Defendants Cannot Show that Plaintiffs' Twenty-Sixth Amendment Claim Is Moot

Far from being limited to concerns about the initial law's failure to provide notice and an opportunity to cure, Plaintiffs' Twenty-Sixth Amendment claim instead asserts that the SDR provision was "intended to suppress the number of votes cast by young voters and discriminate on the basis of age" and that the provision "abridge[s] and den[ies] the right to vote for young voters on the basis of their age." Dkt. 1, ¶¶116, 118.[2]

---

[2] Although the Complaint naturally addresses the absence of notice-and-cure procedure in S.B. 747's same-day registration scheme—unsurprising given the extreme burdens imposed by it and the presence of Plaintiffs' due process claim—Plaintiffs did not limit their Twenty-Sixth Amendment claim to the absence of procedural safeguards.

10

When discriminatory intent impermissibly motivates a law's passage, courts often invalidate that law in its entirety. *See, e.g.*, *Hunter* v. *Underwood*, 471 U.S. 222, 231 (1985); *Anderson* v. *Martin*, 375 U.S. 399, 400-04 (1964). After all, "laws passed with discriminatory intent . . . cannot stand." *N.C. State Conference of the NAACP v. McCrory*, 831 F.3d 204, 240 (4th Cir. 2016) (emphasis omitted) (citing *Veasey v. Abbott*, 830 F.3d 216, 268 & n.66 (5th Cir. 2016) (en banc)); *cf. City of Richmond v. United States*, 422 U.S. 358, 378 (1975) (actions with the "purpose of discriminating" have "no legitimacy at all under our Constitution"). This principle holds just as true in the context of the Twenty-Sixth Amendment and similar provisions. *See, e.g.*, *League of Women Voters of Fla. Inc. v. Detzner*, 314 F. Supp. 3d 1205, 1221, 1224-25 (N.D. Fla. 2018) (enjoining the Secretary of State from barring or discouraging early voting on college or university campuses);[3] *Symm v. United States*, 439 U.S. 1105, 1105 (1979) (affirming lower court's injunction of an election administrator's practice of requiring students to answer a supplemental questionnaire in order to vote).

Consistent with this caselaw, through their Twenty-Sixth Amendment claim, Plaintiffs seek a complete invalidation of S.B. 747's same-day registration scheme. Dkt. 1, Prayer for Relief ¶¶(e)-(f). This relief was not provided by the Consent Judgment, which merely appends a notice-and-cure process to the existing law. "It therefore falls short of

---

[3] Notably, the court in *Detzner* later held that the Secretary's rescission of the challenged policy did not moot that case because the Secretary had issued another directive that left it unclear whether college facilities could be used as early voting sites. *League of Women Voters of Fla., Inc. v. Lee*, 2019 U.S. Dist. LEXIS 237608, at *9-11, 13 (N.D. Fla. Apr. 22, 2019).

the remedy that the Supreme Court has consistently applied in cases of" discriminatory intent. *McCrory*, 831 F.3d at 240 (assessing impact of statutory amendment to photo ID requirement and concluding it was not a sufficient remedy).

While Defendants are certain to argue that such relief is not warranted here, whether Plaintiffs are "in fact entitled to the relief [they] seek[]" is a question for trial. *Chafin*, 568 U.S. at 174, 177 (cautioning against "confus[ing] mootness with the merits"). For mootness purposes, it is enough that Plaintiffs seek invalidation and that outcome "is not so implausible that it may be disregarded on the question of jurisdiction." *See id.* ("prospects of success are therefore not pertinent to the mootness inquiry"). Here, this "plausibility" standard is easily met. The summary judgment record shows that S.B. 747's same-day registration scheme is likely to have a harmful and disproportionate impact on young voters, and, in fact, caused that specific harm in the 2024 General Election even with a notice-and-cure procedure similar to the one required by the Consent Judgment. *See* Dkt. 124 at 9-12, 20-23. This impact will continue to frustrate Plaintiffs' core voter engagement missions and cause resource diversions in response to it. *See generally id.* at 13-17 (addressing Plaintiffs' standing).

Accordingly, because it is not "impossible" for this Court "to grant any effectual relief whatever" to Plaintiffs here, Legislative Defendants' mootness arguments must fail. *Springer*, 715 F.3d at 540.[4]

---

[4] Importantly, an order denying Defendants' mootness motion is not a determination that the Consent Judgment is irrelevant to this case. As explained in *McCrory*, at the remedy stage, Legislative Defendants may argue that the Consent Judgment "completely cures the

## II. Legislative Defendants Cannot Show that Plaintiffs' Undue Burden Claim is Moot

Count Two of Plaintiffs' Complaint alleges an undue burden on the fundamental right to vote based on the fact that "[u]nlike voters who register outside of the early-voting period, those registering and voting during early-voting are subject to having their vote disqualified through no fault of their own" with those "barriers disproportionately affect[ing] young and student voters, who heavily rely upon same-day registration when voting." Dkt. 1, ¶ 110.

The *Anderson-Burdick* framework provides for sliding scrutiny on burdens on the fundamental right to vote. If a law imposes a severe burden, strict scrutiny applies. *Fusaro v. Cogan*, 930 F.3d 241, 257-59 (4th Cir. 2019). If the burden is determined to be less than severe, courts balance "the character and magnitude of the burdens imposed against the extent to which the regulations advance the state's interests." *Libertarian Party of Virginia v. Alcorn*, 826 F.3d 708, 716 (4th Cir. 2016). Notably, any burden on the constitutional right to vote—"[h]owever slight [it] may appear"—"must be justified by relevant and legitimate state interests '*sufficiently weighty to justify the limitation*.'" *Crawford v. Marion Cnty. Elec. Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.) (emphasis added). This is typically "a fact-intensive inquiry." *Daunt v. Benson*, 999 F.3d 299, 313 (6th Cir. 2021).

---

harm" or "or otherwise 'eliminate[s] the taint from'" the law "'that was originally enacted with discriminatory intent.'" 831 F.3d at 240.

13

Here, the absence of any notice-and-cure process in S.B. 747's same-day registration scheme was a significant constitutional flaw. The Consent Judgment suggests that all parties across all three cases now agree on that. It is thus no surprise that Plaintiffs' Complaint addresses that issue. But Count One of Plaintiffs' Complaint is the claim that addresses that deficiency squarely: it being the only claim that frames the constitutional injury and potential relief attainable in terms of a requirement for "proper notice" and an "opportunity to be heard." Dkt. 1, ¶¶ 96-98. Because the Consent Judgment provides for notice and an opportunity to be heard, Plaintiffs have stipulated to the voluntary dismissal of Count One with prejudice. *See* Dkt. 133.

Count Two, however, addresses different fundamental rights, based on protections stemming from the First and Fourteenth Amendment. Even if utilizing the same interest balancing framework as the procedural due process claim, as this Court did earlier in the case, relief under Count Two is not exclusively tied to *procedural safeguards* like notice and an opportunity to be heard. That is because the *Anderson-Burdick* framework requires a fact-intensive approach that varies case-by-case, one in which the possible burdens span a wide range of possibilities (as do the potential remedies if those burdens are found unjustified). This Court recognized as much in its PI Order:

> There is no "litmus test for measuring the severity of a burden that state law imposes on . . . an individual voter, or a discrete class of voters." *Id.* at 191. The court must consider both the "character and magnitude" of the alleged burden on voting, *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789), and then "make the 'hard judgment' that our adversary system demands," *Crawford*, 553 U.S. at 190 (Stevens, J.).

14

*Voto Latino v. Hirsch*, 712 F. Supp. 3d at 668; *see also Crawford*, 553 U.S. at 190 ("a court evaluating a constitutional challenge to an election regulation [must] weigh the asserted injury to the right to vote against the precise interests put forward by the State as justifications for the burden imposed by its rule") (cleaned up).

Accordingly, when an undue burden on the right to vote is shown under this fact-dependent inquiry, relief must be shaped to remedy the specific undue burden shown. *See, e.g.*, *Graveline v. Benson*, 992 F.3d 524, 546-47 (6th Cir. 2021) (affirming trial court's remedy for undue burden violation which "addresses the combined effect of the statutory scheme but still accounts for the uncontested evidence [of the State] set forth to defend the necessity of the [challenged election procedure]"); *Green Party of Ga. v. Kemp*, 171 F. Supp. 3d 1340, 1373 (N.D. Ga. 2016) (describing the process for "crafting [a] remedy" that "balance[s] several concerns" including "compl[ying] with the United States Constitution" and the State's concern about "an overcrowded ballot"); *see also McCrory*, 831 F.3d at 239 ("once a plaintiff has established the violation of a constitutional or statutory right in the civil rights area, . . . court[s] ha[ve] broad and flexible equitable powers to fashion a remedy that will fully correct past wrongs").

Here, Count Two is not so limited as to be solely about notice and cure. As described in the Complaint, S.B. 747 overhauled the prior same-day registration process to change "(1) the steps county boards must take to verify the address of a person who registers using same-day registration and (2) the consequence to the voter should that much more restrictive form of address mail verification fail." Dkt. 1, ¶ 73. It also narrowed the types of identifying documentation that "can be utilized to satisfy the 'proof of residence'

15

requirement for same-day registration," eliminating the State Board's authority to approve "other documents and methods" that have assisted students in the past. *Id.*, ¶¶ 76-77. As alleged, this was done to "exacerbate[] the known complexities and challenges of mail verification, particularly on or near college campuses, to prevent young and student voters from having their voices heard at the ballot box." *Id.*, ¶ 7. Summarizing the overall impact as it relates to the state's stated interests, the Complaint explains:

> Prior to S.B. 747, North Carolina election law protected the fundamental right to vote of its qualified citizens by offering, at minimum, a two-mailer notice process before denying a voter registration application and additional intervention points before rejecting a cast ballot, such as a challenge hearing or other opportunities to be heard, regardless of whether the address mail verification process had concluded. These procedures, along with the additional proof requirements for same-day registrants, balanced a qualified voter's right to cast a valid ballot against the state's interest in administering elections efficiently and effectively and ensuring only qualified voters cast a ballot.

> By changing the mail verification process for same-day registrants to a single-mailer, no-notice, ballot rejection scheme, S.B. 747 upends the balance struck by the previous system and targets youth voters and their preferred method of voting. The General Assembly's stated justifications for these additional and significant burdens—election security and administration—are not in fact advanced by S.B. 747.

*Id.* ¶¶ 92-93. The allegations under Count Two reiterate much of this framing, focusing on the various burdens imposed by the challenged law and the state's interests in advancing it. *Id.* ¶¶ 107-113.

Importantly, none of these paragraphs focus or insist on any specific remedy, let alone a procedural one. While the absence of a notice-and-cure process surely heightens the burden placed on a lawful voter, the inclusion of one does not eliminate it. That is because, at its core, the undue burden that the state's interests must be balanced against is

the decision to make the success or failure of a voter's ballot dependent upon matters completely out of their control, utilizing an admittedly-imprecise system of redundant verification that all but guarantees eligible voters will have their ballots disqualified through no fault of their own. That is the constitutional injury at the heart of Plaintiffs' *Anderson-Burdick* claim and one that survives the Consent Judgment.

On this point, the analysis in the PI Order is instructive. There, given the specific arguments advanced by those plaintiffs, the Court framed the issue before it as follows:

> While these State interests justify the use of address verification generally, the question, however, is whether the undeliverable mail provision for SDR voters meets its justifications as a "fail-safe" as to residency sufficient to <u>exclude</u> a ballot <u>without notice and opportunity to be heard</u> where failure is based on reasons entirely outside the control of the voter.

*Voto Latino*, 712 F. Supp. 3d at 675-76 (emphasis in original). Here, the current question, again assuming State interests justify the use of address verification generally, is whether the undeliverable mail provision for SDR voters, now with a limited notice-and-cure process, meets its justification as a "fail-safe" as to residency sufficient to exclude a ballot where failure is based on reasons entirely outside the control of the voter.[5]

---

[5] This is not a question that must be addressed in a new case or an amended pleading, as Defendants contend. Mot. 4. It is instead a natural extension of Plaintiffs' claim and theory of injury. Under the *Anderson-Burdick* framework, the court may take into account the Consent Judgment when employing the "sliding scale approach" of balancing the burden imposed by a challenged law with the importance of the state's justification for it. *See Voto Latino*, 712 F. Supp. 3d at 674 (explaining that the "'rigorousness' of the inquiry into the State's interests will be informed by the substantial burden imposed by the undeliverable mail provision"). If, however, the Court disagrees, it should permit Plaintiffs an opportunity to "amend [or supplement] their pleadings or develop the record more fully" as it relates to the modified law. *See Holloway*, 42 F.4th at 277 (citing *N.Y. State Rifle & Pistol Ass'n*, 140 S.Ct. at 1526) (endorsing Supreme Court practice for when mootness "is

The summary judgment record strongly suggests that these types of no-fault "exclusions" continue to happen despite the notice-and-cure process, that the rate in which they are likely to occur is greater than previously appreciated on the pre-discovery record, and that the state's interests still fail to justify them. *See* Dkt. 124 at 9-12, 23-24. Importantly, this record sheds further light on the magnitude in which the new same-day registration scheme is "inconsistent with [the state's] interest in counting eligible ballots to the extent ballots are rejected for errors unrelated to the voter's actual eligibility," which was a critical factor underlying the Court's PI Order. *Voto Latino*, 712 F. Supp. 3d at 676-77. While the Court need not decide today whether Plaintiffs are meritorious on this record, Plaintiffs clearly continue to have a plausible legal claim that affords the possibility of additional relief broader than what was available on a pre-trial record. *See dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 145 (4th Cir. 2022) ("[T]he district court's preliminary injunction . . . is not final for resolution of the merits . . . and not impervious to modification or adjustment in the event the trial court determines future evidence or judicial rulings so warrant.").

For example, upon consideration of a full trial record, the Court could determine that the state's interests still do not necessitate the substantial burden placed on a same-day registrants' rights to have a ballot counted once it is cast, even when notice and cure is provided. Or the Court could determine that a notice-and-cure process that does not

---

attributable to a change in the legal framework governing the case, and where the plaintiff may have some residual claim under the new framework that was understandably not asserted previously").

mandate a search for and correction of known poll worker errors in address transcription—like the "Check for Address Errors" procedure did under NM 2023-05—does not satisfy constitutional standards. Or the Court could determine that the severe burden of ballot rejection through no fault of the voter requires additional safeguards, such as: (i) an earlier cut-off in the canvass period for when a returned mailer triggers potential rejection, thus allowing the voter more guaranteed time to actually receive notice and potentially cure; (ii) the ability to provide a sworn affidavit in place of additional HAVA documentation during the cure process; (iii) the requirement that receipt of notice is actually confirmed before a ballot is allowed to be rejected, or (iv) the requirement of a formal challenge procedure that requires "affirmative proof" with a "presumption [] that the voter is properly registered," akin to the system used in the pre-S.B. 747 SDR scheme, *see* N.C.G.S §§ 163-89, 163-90.1.

This list is by no means exhaustive. Nor is any specific change or set of changes a necessary requirement of final relief in this case. Instead, these are examples of ways that the Court, in light of the evidentiary record of S.B. 747's burden on the right to vote, could further mitigate those burdens while still affording weight to the justifications offered for the law's passage. Accordingly, because there is additional relief attainable under Plaintiffs' Count Two, this claim is also not moot.

## **CONCLUSION**

For the foregoing reasons, Legislative Defendants' Motion to Dismiss should be denied.

19

Dated: May 30, 2025

/s/ Jeffrey Loperfido

Jeffrey Loperfido (State Bar #52939)
Christopher Shenton (State Bar #60442)
Hilary H. Klein (State Bar #53711)
Mitchell D. Brown (State Bar #56122)
Lily A. Talerman (State Bar #61131)
Helena C. Abbott (State Bar #62225)
Adrianne M. Spoto
SOUTHERN COALITION FOR SOCIAL
JUSTICE
PO Box 51280
Durham, NC 27717
Telephone: 919-794-4213
Facsimile: 919-908-1525
jeffloperfido@scsj.org
chrisshenton@scsj.org
hilaryhklein@scsj.org
mitchellbrown@scsj.org
lily@scsj.org
helena@scsj.org
adrianne@scsj.org

Michael Dockterman
Laurel Taylor
Kristin Hendriksen
Wesley B. Ward
STEPTOE LLP
227 West Monroe Street, Suite 4700
Chicago, IL 60606
Telephone: (312) 577-1300
mdockterman@steptoe.com
lataylor@steptoe.com
khendriksen@steptoe.com
wward@steptoe.com

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 7.3(d), I hereby certify that this brief contains less than 6,250 words as counted by the word-count feature of Microsoft Word.

*/s/ Jeffrey Loperfido*
Jeffrey Loperfido (State Bar #52939)

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all parties of record.

/s/ Jeffrey Loperfido
Jeffrey Loperfido (State Bar #52939)