# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### Case No. 1:23-cv-00878-TDS-JEP

| | |
|---|---|
| DEMOCRACY NORTH CAROLINA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALAN HIRSCH, et al., <br><br> Defendants, <br><br> and <br><br> PHILIP E. BERGER, et al., <br><br> Intervenor-Defendants. | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO AUTHORIZE ALTERNATIVE SERVICE OF SUBPOENA AND TO COMPEL APPEARANCE** |

Plaintiffs Democracy North Carolina, North Carolina Black Alliance, and League of Women Voters of North Carolina (collectively, "Plaintiffs") submit this Memorandum of Law in support of their Motion to Authorize Alternative Service of Subpoena and to Compel Appearance.

## INTRODUCTION

Plaintiffs seek the appearance of Cleta Mitchell at trial on October 21, 2025, the date that she has indicated via email that she is available. Ms. Mitchell is a previously deposed witness and central figure in proving intent in this action. In the Complaint, Plaintiffs alleged that the drafting and passage of S.B. 747, a law that intentionally discriminates against youth voters, was influenced by Mitchell—a licensed attorney and vocal activist known for spearheading a "crack down" on student voting—and the North

Carolina Election Integrity Team ("NCEIT") —which is the North Carolina chapter of Mitchell's Election Integrity Network. Compl. ¶¶ 39–40. The record developed through discovery shows unequivocally that Mitchell and NCEIT spent months lobbying for the specific restrictions to same-day registration that appeared in the initial version of S.B. 747. *See generally* Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, Dkt. 124 at 2-7; *see also id.* at 3 ("Daniel, the other Senate election chairs, and legal staff met with Womack and Mitchell on May 24, 2023 for two hours…. Womack and Mitchell presented a PowerPoint containing their recommendation to 'eliminate SDR' or 'at least' make all SDR ballots provisional."). The record also includes evidence of youth animus espoused by Mitchell and NCEIT sufficient to create "a genuine dispute of material fact regarding whether the General Assembly enacted SB 747 for a discriminatory purpose." Order, Dkt. 149 at 7; *see also* Dkt. 124 at 7-8 (arguing that NCEIT's SDR proposal was "motivated by anti-youth, anti-student animus").

Though Plaintiffs were able to depose Mitchell in 2024 regarding her involvement in this case, securing that testimony was a monthslong effort necessitating court intervention. Plaintiffs' multiple attempts at service during the discovery period are set forth in detail in their prior moving papers (Dkt. 55) and Magistrate Judge Peake's Order (Dkt. 91) resolving the issue. In short, Plaintiffs attempted to serve Mitchell by process server, USPS Certified Mail, and email, to no avail. Of note, six attempts for in-person service, by two process servers and the Moore County Sheriff's Office, all failed either because Mitchell denied access to her gated community or because she was not home or appeared not to be home when service was attempted. Dkt. 55 at 3-4.

2

Now, once again, Plaintiffs seek court intervention to overcome what appears to be a concerted effort by Mitchell to evade service—this time of a trial subpoena for her live testimony. Over the last month, Plaintiffs have attempted service of a trial subpoena by process server, USPS Certified Mail, and electronically, all the while actively communicating with Mitchell by email in an effort to accommodate her schedule for trial and minimize unnecessary cost and burden relating to the issue of service. But again, Plaintiffs' diligent efforts have been rebuffed. Based on the information set forth herein, Plaintiffs believe that further attempts to personally serve Mitchell will be expensive and ultimately unsuccessful and that the only way to guarantee her appearance at trial is through a court order. Plaintiffs therefore request that the Court approve alternative methods of service on Cleta Mitchell and, if approved, compel her appearance on her requested date, October 21, 2025.

## BACKGROUND

Beginning in June 2025, Plaintiffs reached out to Mitchell's prior counsel in this case, Tyler Brooks, to determine whether he could accept service of the trial subpoena. *See* Exhibit B, 12-13 (email correspondence between Plaintiffs and Mitchell). On June 24, 2025, Mr. Brooks stated that he was no longer representing Mitchell. *Id.* at 10. The next day, Plaintiffs reached out to Mitchell directly about accepting service. *Id.* at 9-10. After no response, Plaintiffs followed up about a week later on July 2, 2025. *Id.* at 8-9. Mitchell responded the same day indicating that this was a "terrible imposition" and that she required "a little more information than what [Plaintiffs'] provided" before agreeing. *Id.* at 8. Plaintiffs attempted to provide this clarity and sought logistics for delivering the trial

3

subpoena to "minimize[] the service burden" for Mitchell. *Id.* at 7. Plaintiffs indicated that once trial dates were certain, they would "do our best to work with your schedule to the greatest degree of flexibility allowed by the Court." *Id.* Mitchell quickly responded that she was "not agreeing to service until I know more. Period. I do not agree to accept service." *Id.* She stated that to accept service, she needed to know the date she would be called, that her witness fees would be paid, and what questions would be asked. *Id.*

When the trial date was extended from August to October, Plaintiffs followed up with Mitchell on July 31, 2025, seeking again to accommodate her schedule. Exh. B, 6. Mitchell did not respond, so Plaintiffs followed up again on August 22, 2025. *Id.* at 5. The next day, Mitchell responded that Plaintiffs "have not explained what you want me to testify about." *Id.* "I'm not answering you until you answer me." *Id.*

Plaintiffs again sought to assuage her concerns on August 24, 2025, when they indicated that they would examine Mitchell "within the same scope" as her deposition. Exh. B, 4. Plaintiffs again indicated they would attempt to work around Mitchell's schedule. *Id.* Mitchell again did not respond, so on September 4, 2025, Plaintiffs sent an email copy of the trial subpoena to Mitchell. *Id.*; *see also* Exh. C. Mitchell again responded the same day and stated that she could not appear due to a "longstanding commitment," and again sought more clarity on the purpose of her testimony. *Id.* at 3. Plaintiffs then indicated that they would need to seek court intervention if Mitchell would not cooperate. *Id.* at 2-3.

Mitchell's correspondence then evolved from curt to contentious, as she labeled Plaintiffs as belonging to "corrupt, anti-integrity forces." Exh. B, 2. Despite this, Mitchell

4

stated she would only be available on October 21, 2025. *Id.* Plaintiffs then sought

Mitchell's agreement to accept a subpoena for that day. *Id.* at 1. When she did not respond

for over a week, Plaintiffs again sought a response on September 14, 2025. *Id.* As of this

date, Mitchell has not responded.

While this email correspondence was ongoing, Plaintiffs made several attempts to

serve Mitchell with the subpoena to appear at trial, including by personal service, USPS

Certified Mail, and email. Plaintiffs also included a check to Mitchell to cover witness

expenses.[1] Specifically, Plaintiffs made two unsuccessful attempts at personal service. On

or about August 29, 2025, Plaintiffs retained process server Erin de la Cruz of the Black

Dog Agency LLC to serve Mitchell at her residence: 139 National Drive, Pinehurst, North

Carolina 28374. Taylor Decl. ¶¶ 3, 5. When de la Cruz attempted service on September 10

and 12, 2025, she was denied access because Mitchell had not granted permission to enter

the community. *Id.* ¶ 6; Exh. F-G. In fact, Mitchell had explicitly instructed that gate

security "not [] give us entry under any circumstances." Exh. E (correspondence with de la

Cruz).

Contemporaneously, Plaintiffs attempted certified mail service twice and both

times, delivery was refused by Mitchell. *See* Taylor Decl. ¶¶ 7-8; Exh. H, I. On September

4 and September 10, 2025, Plaintiffs sent a copy of the subpoena to Mitchell by USPS

Certified Mail. *Id.* The first attempt was immediately returned to sender; the second attempt

was "refused by the addressee." *Id.*

---

[1] A copy of the trial subpoena and a scan of the check for witness fees was included in multiple emails to Mitchell. The trial subpoena is attached as Exhibit A; *see also* Exh. C.

Finally, as set forth above, over the course of the past three months, Plaintiffs have corresponded with Mitchell via email about service to no avail. *See* Taylor Decl. ¶¶ 9-10; Exh. B-D. After attempting email service throughout the monthslong correspondence with Mitchell, Mitchell expressed that she was "not accepting service via email. Nice try." Exh. D.

Plaintiffs have reason to believe that Mitchell is actively evading service and will continue to do so during the final weeks before trial. Plaintiffs therefore respectfully request an order authorizing service on Mitchell by email and/or USPS Priority Mail for appearance at trial and, if approved, an order compelling Mitchell to appear at trial on October 21, 2025, the only date during the trial week she claimed to have availability.

ARGUMENT

**A.     The Court Should Authorize Service Via Email and/or USPS Priority Mail.**

The Court should authorize service via email and/or USPS Priority Mail, as Mitchell has made any other attempts unreasonable and unduly burdensome. Federal Rule of Civil Procedure 45(b)(1) provides that "[a]ny person who is at least 18 years old and not a party may serve a subpoena," and that "[s]erving a subpoena requires delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1). Rule 45 "does not expressly require personal in-hand service." *Hall v. Sullivan*, 229 F.R.D. 501, 504 (D. Md. 2005) (noting "that the obvious purpose of Rule 45(b) is to mandate effective notice to the subpoenaed party, rather than slavishly adhere to one particular type of service"). And the growing number

6

of courts that have confirmed methods of service other than personal service are permissible under Rule 45 have cited the following justifications:

> (1) the actual language of [Rule 45] does not require personal service; (2) as Rule 4(e) demonstrates, the drafts of the Federal Rules knew how to require personal service when they wanted it; (3) the cases holding that personal service is required by Rule 45 do not provide meaningful analysis, but instead, simply quote the rule; and (4) there is absolutely no policy distinction that would justify permitting 'lesser' forms of service for a summons and a complaint—which actually commence a lawsuit—but not for a subpoena.

*Id.* at 505 (citing 9 James Wm. Moore et al., Moore's Federal Practice—Civil ¶ 45.03(4)(b)(i)); *see also King v. Crown Plastering Corp.*, 170 F.R.D. 355, 356 (E.D.N.Y.1997) (holding that in-hand delivery is not required under Rule 45 so long as service is made in a manner that reasonably insures actual receipt of the subpoena); *Western Resources, Inc. v. Union Pacific R.R. Co.*, Case No. 00-2043-CM, 2002 WL 1822432 at *8-9 (D. Kan. 2002) (holding that delivery of subpoena via Federal Express was sufficient because effective service under Rule 45 is not limited to personal service); *Bland v. Fairfax Cnty.*, 275 F.R.D. 466, 472 (E.D. Va. 2011) (holding that FRCP 45 allows for service by certified mail); *Doe v. Hersemann*, 155 F.R.D. 630, 630 (N.D. Ind. 1994) (holding that service of a subpoena via certified mail is sufficient under Rule 45, particularly where recipient did not deny actual receipt).

Plaintiffs have attempted personal service on Mitchell numerous times in this case to no avail due to her explicit instruction. And despite the validity of service by USPS Certified Mail, Mitchell has refused to sign for the delivery, and they have been returned to sender. *See N.L.R.B. v. Baker*, 1998 U.S. App. LEXIS 30558, at *12 (4th Cir. 1998)

("readily find[ing] that certified mail provides notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" (cleaned up)).

Plaintiffs have had discussions with Mitchell via email, in which she has acknowledged awareness of the trial, the need for her testimony, and even spoken to her availability, but still refused to accept service. *See* Exh. B, C. Given that Plaintiffs have attempted service on Mitchell by personal service, USPS Certified Mail, and email, Plaintiff seeks authorization to serve the subpoena via email and/or USPS Priority Mail as an alternative means of service.

"[A]lternative means of service—that is, non-personal service—of a subpoena for a deposition [or documents] is allowable: (1) after a party has made diligent efforts to effectuate personal service; and (2) if the alternative means seem likely to reasonably ensure actual receipt of the subpoena." *Jowite Ltd. P'ship v. Fed. Ins. Co.*, Case No. SAG-18-2413, 2019 WL 13251993, at *2 (D. Md. July 17, 2019) (collecting authority). Plaintiffs have diligently attempted to accomplish personal service of Rule 45 trial subpoena on Mitchell without success, as set forth in detail above and attached as Exhibits D-F. Based on this, Plaintiffs have reason to believe that further attempts to personally serve Mitchell or send USPS Certified Mail will be costly and ultimately unsuccessful.

Plaintiffs therefore respectfully request that the Court authorize service on Mitchell by email at cleta@cletamitchell.com and/or USPS Priority Mail. USPS Priority Mail will include a tracking number but will not require a signature that may be refused by the recipient. *See Jowite*, 2019 WL 13251993, at *2 (authorizing service by Federal Express

8

and USPS first-class mail). As courts across the country recognize, the Federal Rules should not be construed "as a shield for a witness who is purposefully attempting to evade service." *See, e.g., Castle v. Nolan*, No. 20-cv-2481, 2021 WL 12298816, at *5 (D. Colo. Dec. 3, 2021) (quoting *E.A. Renfroe & Co. v. Moran*, No. 08-cv-733, 2008 WL 1806200, at *6 (D. Colo. Apr. 21, 2008)); *JKG Fitness, Inc. v. Brown & Brown of Colorado, Inc.*, 2025 WL 2260117, at *1 (D. Nev. Aug. 7, 2025); *Wardak v. Cavanaugh*, No. 5:21-cv-47, 2023 WL 5959594, at *7 n.9 (N.D.N.Y. Sept. 13, 2023); *Toni Brattin & Co. v. Mosaic Int'l, LLC*, No. 15-mc-80090, 2015 WL 1844056, at *3 (N.D. Cal. Apr. 9, 2015); *Juice Creative Group, LLC v. UncommonGood, Inc.*, No. 3:22-cv-1175, 2023 WL 5012192, at *2 (D. Conn. Aug. 7, 2023).

### B. The Court Should Compel Mitchell's Appearance at Trial.

Mitchell has already received an electronic copy of a trial subpoena and indicated her availability for trial on October 21, 2025. *See* Exh. B at 2, C. If alternative service is approved, the Court should also order Mitchell to appear on that date.[2]

It is well-established that this Court has authority to enforce its process, including where a witness fails to appear after being subpoenaed. *See Blackmer v. United States*, 284 U.S. 421, 439-40 (1932); *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."). And "it is essential that courts be able to compel the appearance and testimony of witnesses." *Shillitani*, 384 U.S. at 370; *In re Grand Jury*

---

[2] Compliance with Local Rule 37.1 was not possible given the facts described herein.

*Subpoena (T-112)*, 597 F.3d 189, 194 (4th Cir. 2010) (affirming that a corporation that failed to comply with subpoena could be held in contempt to "induce compliance"). Rule 45(g) expressly allows the Court to hold in contempt a person who fails to obey a subpoena. While Plaintiffs do not seek a contempt order at this time, they seek assurance that Mitchell will comply, as her testimony is critical to Plaintiffs' case, especially given the dueling factual narratives likely to be proffered at trial. *N.C. State Conf. of NAACP v. Hirsch*, 720 F. Supp. 3d 406, 416 (M.D.N.C. 2024) ("[W]hen the disposition of a case turns on a determination of intent . . . the resolution of that issue depends so much on the credibility of the witnesses, which can best be determined by the trier of facts after observation of the demeanor of the witnesses during direct and cross-examination.") (quoting *Morrison v. Nissan Co.*, 601 F.2d 139, 141 (4th Cir. 1979)).

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court enter an order authorizing service on third-party witness Cleta Mitchell by email and/or USPS Priority Mail and, if approved, compelling her appearance at trial on October 21, 2025.


Dated: September 18, 2025          Respectfully submitted,

                                   /s/ *Laurel Taylor*

                                   Jeffrey Loperfido (State Bar #52939)
                                   Christopher Shenton (State Bar #60442)
                                   Hilary H. Klein (State Bar #53711)
                                   **SOUTHERN COALITION FOR SOCIAL JUSTICE**
                                   PO Box 51280
                                   Durham, NC 27717

10

(919) 794-4213
jeffloperfido@scsj.com
chrisshenton@scsj.com
hilaryhklein@scsj.com

Michael Dockterman
Rachel Cannon
Kristin Hendriksen
Laurel Taylor
Wesley B. Ward
**STEPTOE LLP**
227 W. Monroe St.
Suite 4700
Chicago, IL 60606
(312) 577-1300
mdockterman@steptoe.com
rcannon@steptoe.com
khendriksen@steptoe.com
lataylor@steptoe.com
wward@steptoe.com

*Counsel for Plaintiffs*

11

## CERTIFICATE OF COMPLIANCE WITH RULE 7.3(d)

The undersigned counsel certifies that the present filing is in accordance with Local Rule 7.3(d) of the Rules of Practice and Procedure of the United States District Court for the Middle District of North Carolina, including that the body of this brief, headings and footnotes contain no more than 6,250 words as indicated by Microsoft Word, the program used to prepare this brief.

Dated: September 18, 2025

*/s/ Laurel Taylor*

Laurel Taylor
Steptoe LLP

*Counsel for Plaintiffs Democracy North Carolina, North Carolina Black Alliance, and League of Women Voters of North Carolina*