IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:23-cv-00878-TDS-JEP

DEMOCRACY NORTH CAROLINA;
NORTH CAROLINA BLACK ALLIANCE;
LEAGUE OF WOMEN VOTERS OF NORTH
CAROLINA,

    *Plaintiffs,*

  v.

FRANCIS X. DE LUCA, in his official
capacity as CHAIR OF THE STATE BOARD
OF ELECTIONS; et al.,

    *Defendants,*

  and

PHILIP E. BERGER, in his official capacity as
PRESIDENT *PRO TEMPORE* OF THE
NORTH CAROLINA SENATE; et al.,

    *Intervenor Defendants.*

## BRIEF IN SUPPORT OF THE ADMISSION OF IMPEACHMENT TESTIMONY OF JAIMEE SUWALKOWSKI

Democracy North Carolina, North Carolina Black Alliance, and League of Women Voters of North Carolina (collectively "Plaintiffs") submit the following brief in support of their request at trial that the testimony of Jaimee Suwalkowski be permitted for impeachment purposes.

**I. BACKGROUND**

On March 20, 2024, Plaintiffs took the Rule 30(b)(6) deposition of Ms. Susan Rae Hunter-Havens, Director of the New Hanover County Board of Election ("New Hanover CBOE"). During the deposition, Ms. Hunter-Havens testified to a number of matters, including the notice-and-cure process for same-day registrants who failed mail verification. As part of that process, she testified

1

that she, along with other New Hanover CBOE staff, would call voters who provided a phone number on the voter registration form to inform them that their mail verification card had been returned to the New Hanover CBOE office as undeliverable. Ms. Hunter-Havens' testimony has been submitted into the trial record by deposition designation.[1]

Ms. Suwalkowski's personal experience with same-day registration in October 2024 for her first eligible election in New Hanover County directly contradicts Ms. Hunter-Havens' testimony about what the New Hanover CBOE did or did not do when processing the same-day registrations of college student voters. 10/20/2025 Rough Tr. 67:14-23. On October 20, 2025, this Court allowed Plaintiffs to offer Ms. Suwalkowski's testimony "solely for impeachment purposes." Doc. 180 at 1, 19. Plaintiffs then offered Ms. Suwalkowski's testimony for such impeachment. 10/20/2025 Rough Tr. 70:18-19. The Court allowed the testimony but said it would "decide later whether it's permissible or not." 10/20/2025 Rough Tr. 70:20-21.

With the Court's permission, 10/21/2025 Rough Tr. 3:10-16, Plaintiffs now submit this brief identifying the portions of the evidence that Ms. Suwalkowski impeached and the legal foundation for this testimony.

**II. ARGUMENT**

Ms. Suwalkowski's testimony is proper impeachment evidence and may be considered by the Court under its October 16, 2025 Order. Doc. 180 at 1, 19; *see also e.g.,* Fed. R. Civ. P. 26(a)(1)(B) (requiring "initial disclosure" of "all documents, data compilations, and tangible things . . . unless solely for impeachment"). Ms. Suwalkowski's personal experience utilizing same-day

---

[1] Through the pre-trial meet and confer process, the parties agreed to submit joint deposition designations, including the offering party's designations and other parties' counter-designations, for witnesses who are unavailable or otherwise would not testify at trial. Doc. 156 at 2. This included the deposition of Ms. Hunter-Havens. Doc. 156-3.

2

registration in October 2024 for her first eligible election in New Hanover County speaks specifically to, and directly contradicts Ms. Haven-Hunter's testimony, about what the New Hanover CBOE did when processing the same-day registrations of college student voters.

"Impeachment evidence is offered to discredit a witness and reduce the effectiveness of her testimony." *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 435 (D. Md. 2006). Relevant here, impeachment may be conducted through contradiction. *See id.* Impeachment by contradiction is a "traditional method of impeachment," despite not being specifically recognized by the Federal Rules of Evidence. *Behler v. Hanlon*, 199 F.R.D. 553, 557-58 (D. Md. 2001) (citing Weinstein Treatise at § 607.06[1] ("Impeachment by contradiction or specific error is a well-recognized technique used to bring specific errors in testimony to the attention of the trier of fact") and Mueller and Kirkpatrick Treatise, at § 6.58 (a witness may be impeached by contradiction in several ways: "close questioning" to elicit concession of errors in testimony during direct; questioning a witness about the substance or implications of evidence already produced during the case to suggest contradictions; confronting the witness with her or his own contradictory prior statements; and calling another witness or introducing other extrinsic contradicting evidence)).

Trial testimony may be properly used to impeach testimony given at a deposition: "The testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted." *City of Huntington v. AmerisourceBergen Drug Corp.*, 2022 WL 468183, at *5 (S.D. W.Va. Feb. 15, 2022) (quoting *Indus. Hard Chrome, LTD v. Hetran, Inc.*, 92 F. Supp. 2d 786, 791 (N.D. Ill. Apr. 18, 2000)); *see also United States v. Shifflett*, 1995 WL 125506, at *5 (4th Cir. Mar. 23, 1995) ("When a witness testifies to a fact . . . the opposing party may impeach the witness with evidence that contradicts that fact.").

Ms. Suwalkowski testified that she included her phone number on her voter registration form. 10/20/2025 Rough Tr. 73:08-10. She testified that she never "receive[d] any call about [her] voter registration . . . before or after [she] voted." *Id.* at 73:11-13. She also testified that she received no communication whatsoever from the New Hanover CBOE. *Id.* at 73:14-16. In fact, Ms. Suwalkowski did not learn that the ballot she cast—her first vote in an election—was not counted and that she had been "unregistered" to vote until contacted for this case. *Id.* at 73:23-25. Ms. Suwalkowski's testimony contradicts Ms. Hunter-Havens testimony that whenever the New Hanover CBOE had the phone number for a same-day registrant who failed mail verification, they would call that voter. Doc. 156-7 84:15-19 ("Hunter-Havens Tr."). Ms. Suwalkowski's testimony goes directly to Ms. Hunter-Havens' testimony that she would have been personally "responsible for making the calls" to "[e]nsure that that could get done." *Id.* at 84:15-85:02.

For the ease of this Court's review, Ms. Suwalkowski's trial testimony contradicts, and therefore properly impeaches, the following excerpts from Ms. Hunter-Havens' deposition:

- Hunter-Havens Tr. 32:10-16:

    A: Then we took the information on the card to [e]nsure that we can update the notice correctly, cross-checking to make sure there's no address mistakes, and then [e]nsuring is there a phone number. We can call the voter. What are the methods of communication that we can use? And then we send that notice out.

- Hunter-Havens Tr. 59:04-07:

    A: I do notice on all the verification cards that came out undeliverable, I rarely had a phone number.

- Hunter-Havens Tr. 84:15-85:02:

    A: If we had a phone number, we would contact them. But, again, it was very rare that we have phone numbers in general.

    Q: Who would have been responsible for making the calls?

4

> A: I would have done it in that case because, again, our registrar had their hands full, as did everybody else, trying to manage different election processes. So I took that on myself to [e]nsure that that could get done.

- Hunter-Havens Tr. 85:16-20:

    > Q: And you mentioned not having phone numbers for many voters. But the ones you did have numbers for, how often did you actually reach someone?
    >
    > A: Very rarely. More often than not, we were leaving message.

- Hunter-Havens Tr. 87:10-15:

    > A: …So if they don't provide a mailing address, if they don't provide a phone number and they don't provide an email, beyond asking them for those identifiers, there's nothing else we can do within the format of that registration process.

- Hunter-Havens Tr. 130:16-17:

    > A: If you share your contact information, if there's an issue, we can reach you.

Ms. Suwalkowski's personal experience is proper impeachment evidence for the Court's consideration.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court consider the testimony of Ms. Jaimee Suwalkowski as proper impeachment evidence.

Dated: October 24, 2025

Rachel M. Cannon
STEPTOE LLP
227 West Monroe Street, Suite 4700
Chicago, IL 60606
Telephone: (312) 577-1300
rcannon@steptoe.com

Laura Niday
STEPTOE LLP
1330 Connecticut Avenue NW
Washington, DC 20036
Telephone: (202) 429-3049
Facsimile: (202) 429-3902
lniday@steptoe.com

Michael Dockterman
Kristin Hendriksen
Laurel Taylor
MCDERMOTT WILL & SCHULTE LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone: (312) 984-7730
Facsimile: (312) 984-7700
mdockterman@mwe.com
khendriksen@mwe.com
ltaylor@mwe.com

Respectfully submitted,

/s/ *Jeffrey Loperfido*

Jeffrey Loperfido (State Bar #52939)
Christopher Shenton (State Bar #60442)
Hilary H. Klein (State Bar #53711)
Lily A. Talerman (State Bar #61131)
Helena C. Abbott (State Bar #62225)
Adrianne M. Spoto (State Bar #63569)
SOUTHERN COALITION FOR SOCIAL JUSTICE
PO Box 51280
Durham, NC 27717
Telephone: 919-794-4213
Facsimile: 919-908-1525
jeffloperfido@scsj.org
chrisshenton@scsj.org
hilaryhklein@scsj.org
lily@scsj.org
helena@scsj.org
adrianne@scsj.org

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH RULE 7.3(d)

Pursuant to Local Rules 7.3(d), I hereby certify that this brief contains less than 6,250 words as counted by the word-count feature of Microsoft Word.

                                                */s/ Jeffrey Loperfido*
                                                  (State Bar #52939)

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all parties of record.

*/s/ Jeffrey Loperfido*
(State Bar #52939)